UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND and NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, by their trustees, FRANK SPENCER, DOUGLAS J. MCCARRON, JOHN BALLANTYNE, PAUL TYZNAR, PAUL O'BRIEN, KEVIN M. O'CALLAGHAN, CATHERINE CONDON, DAVID MEBERG, BRYAN WINTER and JOHN DELOLLIS, | Case No. 11-Civ.-5474 |

Plaintiffs,

-against-

MICHAEL FORDE, JOHN GREANEY, JOSEPH OLIVIERI, BRIAN HAYES, MICHAEL MITCHELL, FINBAR O'NEILL, K.A.F.C.I., MICHAEL BRENNAN, TURBO ENTERPRISES, INC., GERARD MCENTEE, PYRAMID ASSOCIATES CONSTRUCTION CORP., JAMES DUFFY, BRIAN CARSON, JOSEPH RUOCCO, JOHN STAMBERGER and MICHAEL VIVENZIO,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
JOSEPH OLIVIERI'S MOTION TO DISMISS THE COMPLAINT**

SULLIVAN GARDNER PC
Brian Gardner
7 East 20th Street
New York, New York 10003
*Attorneys for Defendant*
*Joseph Olivieri*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………….  1

STATEMENT OF FACTS………………………………………….…………..  4

    Prior Litigation…………………………………...…………….……….  7

LEGAL STANDARD ……………………………………………………….  10

ARGUMENT …………………………………………………………..  11

POINT I
PLAINTIFFS' CLAIMS AGAINST OLIVIERI BASED ON THE
DELINQUENCIES OWED BY ON PAR ARE BARRED BY A
PRIOR SATISFACTION OF JUDGMENT BETWEEN THE
FUNDS AND ON PAR ……………………………………….………...  11

POINT II
PLAINTIFFS' CLAIMS AGAINST OLIVIERI ARE BARRED BY
THE APPLICABLE STATUTES OF LIMITATIONS…………………….  13

  A.  The Civil RICO Conspiracy Claim is Time-Barred ………………………  13

  B.  The ERISA Fiduciary Duty Claim is Time-Barred ……….…………..…  15

POINT III
PLAINTIFFS' SECOND CLAIM FOR RELIEF FAILS TO
STATE A CLAIM...…………………………………………………………...  17

CONCLUSION …………………………………………………………...  20

Defendant Joseph Olivieri submits this memorandum of law in support of his motion to dismiss the First Amended Complaint of Plaintiffs Trustees of the New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Annuity Fund and New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund ("Plaintiffs" or "Funds") dated November 21, 2011 ("Complaint").[1]

## PRELIMINARY STATEMENT

The Plaintiffs' Complaint asserts Thirteen Causes of Action against Twenty Two Defendants.  Only the Second and Seventh Claims for Relief involve the moving defendant herein, Olivieri, and each must be dismissed for failure to state a claim against Olivieri.  The grounds for dismissal are based upon the fact that the claims are barred by a prior settlement and satisfaction of judgment concerning all damages for which Olivieri is alleged to be responsible, as well as the expiration of the statute of limitations.  In addition the Second Claim (asserting a civil RICO conspiracy) must be dismissed for failure to state a claim as to Olivieri.

The Complaint asserts claims concerning various defendants and their involvement with six separate companies allegedly employing workers covered by the collective bargaining agreements of the New York City District Council of Carpenters and its affiliated local unions ("Union").  Of the six companies, five (KAFCI, Turbo Enterprises Inc., Pitcohn Construction Enterprises, Inc., Pyramid Associates Construction Corp. and EMB Contracting) are named Defendants in this action.  The sixth company,

---

[1] A copy of the Complaint is annexed as Exhibit A to the Declaration of Brian Gardner.

On Par Contracting Corp. ("On Par") and its owner James Murray, are not named defendants here, as they had already been sued by the Funds in 2006; a suit which resulted in a July 2007 judgment against On Par, and in favor of the Funds, for all alleged delinquent contributions owed by On Par.  A satisfaction of this judgment was filed in March 2010.

As part of a separate criminal case against certain of the defendants here, the Funds acknowledged in June 2011 that they had been "made whole" as to the delinquent On Par contributions, but not the five other named defendant entities.  As part of the sentencing process of the various defendants, the PSR found, "the Benefit Funds ha[ve] already been made whole by On Par's payment of $4.5 million to the Funds," which finding was agreed to by the Government and adopted by the court at sentencing and its judgment.[2]

This motion should be granted at the outset as the only allegations against Olivieri in this action improperly seek recovery based on On Par's alleged delinquent contributions.  No other company's alleged delinquencies are attributed to Olivieri.  As a result of the previous settlement and satisfaction of judgment, as well as the acknowledgement in the criminal case, the Funds have been "made whole" as to the On Par contributions.  The Funds cannot seek additional recovery from Olivieri here based on the same delinquencies which the Funds, the Government, and this Court have already found to be satisfied.

In addition, regardless of the effect of the prior judgment and satisfaction, the applicable statutes of limitations preclude Plaintiffs from pursuing the Second and

---

[2] *See* Amended Judgment in *United States v. Forde, et al.*, No. 08-CR-828 (Doc. 313), where no restitution was ordered.

Seventh causes of action against Olivieri.  The Plaintiffs' claims against Olivieri do not include any alleged action occurring later than July 2005, when Olivieri is alleged to have approved a payment plan for On Par, without disclosing his dealings with On Par owner, Jim Murray.

This action was commenced on August 5, 2011, and the First Amended Complaint was filed on November 21, 2011.  The Second cause of action, under the civil RICO statute, has a four year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Associations, Inc.*, 483 U.S. 143, 156 (1987).  Thus, Plaintiffs can only recover for claims accruing after August 5, 2007, and no such conduct is alleged.  Likewise, the Seventh cause of action is time barred.  That claim, for breach of fiduciary duty under ERISA, has a relevant statute of limitation of "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C.A. §1113(2). Thus, if the Plaintiffs had actual knowledge of the alleged conduct prior to August 5, 2008 they cannot pursue their claim.  Here, the Plaintiffs had actual knowledge of the alleged conduct in May 2006 when Olivieri's dealings with James Murray were disclosed and Olivieri announced that he would, and did, abstain from voting with the other Funds trustees on matters concerning On Par or Jim Murray.

Finally, should the Court decline to dismiss the Second cause of action, on either of the above bases, the purported claim for a civil RICO conspiracy must fail against Olivieri because it alleges only conduct occurring after the 2004 end date of the racketeering activity and completely fails to allege any facts regarding an agreement, as is strictly required.  Thus, the Second cause of action should additionally be dismissed for failure to state a claim for civil RICO conspiracy.

Accordingly, for the reasons set forth herein, the Second and Seventh Claims for Relief must be dismissed as against Olivieri.

## STATEMENT OF FACTS

Plaintiffs are trustees of various benefit trust funds of the New York City District Council of Carpenters, (the "Funds").  The Funds administer the employee benefit plans for a number of carpenter labor union locals affiliated with the New York City District Council of Carpenters (the "Union"). Complaint ¶¶5, 6.[3]

Defendant Joseph Olivieri is the former Executive Director of the Association of Wall and Ceiling Contractors ("WCC Association").   As the Executive Director of the WCC he was asked to be  an employer representative on the board of trustees of the Funds.  In that capacity, Olivieri was a trustee of the Funds, but not a member of the Union, and was responsible to the Funds as well as  representing the interests of the employers who hired union members.  In addition, in his capacity as head of the WCC Association, he had a duty to represent the various member companies in matters concerning, *inter alia*, their dealings with the Funds.  This arrangement is required by the Funds' rules and procedures, which dictate that the trustees to be split evenly between union representatives and employer representatives.  These rules further require that the heads of the various employer associations act as the employer representatives on the board of trustees.

Against this backdrop, the Complaint sets forth allegations against Olivieri that are very limited, and entirely conclusory.  The Funds assert two claims against Olivieri:

---

[3] For purposes of the instant motion the allegations of the Complaint are treated as true, except to the extent that they are alleged to be palpably unreasonable or wholly insufficient.

(i) the Second Claim for Relief asserts a claim of civil RICO conspiracy in violation of 18 U.S.C. §1962(d) ("Civil RICO Conspiracy") and (ii) the Seventh Claim for Relief asserts a claim for breach of fiduciary duty under ERISA, 29 U.S.C. §1104(a).

In the Second Claim For Relief, the Funds claim that Olivieri was a participant in a "conspir[acy] to commit the violations of 18 U.S.C. §1962(c) described in paragraphs 149 through 164 above" and allege that "each of the RICO Conspirators knew about and agreed to, and did, facilitate the scheme alleged in paragraphs 149 to 164 above." Complaint ¶166, 167. The allegations of paragraphs 149 to 164 make up the entire First Claim for Relief, which asserts a direct RICO claim against the "RICO Participants" and does not name Olivieri as a "Participant." The specific racketeering enterprise, alleged in the First Claim, is as follows: "between 1994 and 2004, each of the contractors … made improper payments of money or other things of value to labor representatives including Forde, Greaney, Hayes, Mitchell, and Brennan," and "by paying these bribes, the contractors were permitted to hire non-union and 'off the books' workers and otherwise to avoid reportage of hours worked in covered employment and thereby avoiding paying contractually required wages and contributions to the Funds." Complaint at ¶156, 157.

As Olivieri is not named as a RICO Participant, the allegations in the Second Claim for Relief are entirely dependent on allegations of Olivieri's inchoate, conspiratorial intent concerning the racketeering activity. Olivieri is only specifically addressed in the Second Claim in paragraph 173, where Plaintiff claims: "Olivieri knew about and agreed to, and did, facilitate the scheme … by aiding Murray in avoiding the consequences of an investigation into On Par's conduct and Murray's bribery of union

officials and shop stewards, all in furtherance of a scheme by which Murray embezzled money from the Funds." Complaint at ¶173.

In the Seventh Claim for Relief, Plaintiffs allege that Olivieri breached his fiduciary duties to the Funds by "aidi[ng] and facilitate[ing] the scheme by Murray to cheat the Funds out of monies owed by On Par" and by "fail[ing] to inform his fellow trustees of a material financial conflict of interest, namely a $730,000 loan from Murray, and instead act[ing] on behalf of the trustees when approving a payment plan for On Par." Complaint at ¶203.

Both the Second and Seventh Claims for Relief rely factually only on the Plaintiffs' allegation of Olivieri "aiding Murray" in his efforts to avoid the consequences of the Funds investigation into On Par's conduct and delinquent contributions. Complaint at ¶¶173, 203. This apparently refers to the conduct described in paragraphs 89-91 of the Complaint. There, Plaintiffs allege that: in March 2005, Olivieri "aid[ed]" Murray in "having the stop order withdrawn" which would have shut down On Par, Complaint at ¶89; in April 2005, "Olivieri introduced Murray to Lawrence Cooley … so that Murray could take over an use Commercial Drywall as a front for continuing operations," *Id.* at ¶90; and in July 2005, "Olivieri approved in his capacity as a trustee of the Funds a $750,000 payment plan by which On Par agreed to pay delinquent contributions to the Funds." *Id.* at ¶91.[4] These factual allegatiosn are in direct odds with the conclusory statement that he was part of a conspir[acy] to commit the violations of 18 U.S.C. §1962(c) described in paragraphs 149 through 164 above". Indeed, Olivieri is not

---

[4] Notably, and as set forth below, there is no allegation of any conduct occurring during the "racketeering activity occurring between 1994 and 2004" which is the basis for alleged RICO conspiracy. *Id.* at ¶161.

mentioned as having agreed to or taken part in any way as to the conduct described in those paragraphs.

The harm allegedly claimed in the Second and Seventh Claims for Relief refers only to On Par's delinquencies to the Funds. Olivieri is not alleged to have had any contact with any other contractor defendant or participant in the alleged scheme.

Prior Litigation

The Complaint references several prior cases concerning the Plaintiffs' allegations here. The most relevant to this motion are: (i) the prior civil case brought by the Funds against On Par and Murray for collection of delinquent contributions, *New York District Council of Carpenters Pension Fund, et al. v. On Par Contracting Corp., et al.*, No. 06-CV-5643 (filed July 26, 2006, S.D.N.Y.) ("On Par Civil Case"); *see also* Complaint at ¶117, (ii) the prior criminal case against Murray ("Murray Criminal Case"), *United Stated v. Murray*, No. 06-CR-443 (filed May 24, 2006, S.D.N.Y.), *see also* Complaint at ¶50, 118, and (iii) the prior criminal case against Olivieri and certain other Defendants here ("Olivieri Criminal Case"), *United States v. Forde, et al.*, No. 08-CR-828 (filed July 23, 2009, S.D.N.Y.),[5] *see also* Complaint at ¶52, 86. These cases are significant because each addressed recovery by the Funds of delinquent contributions owed by On Par, and it is because of these cases that On Par and Murray are not Defendants in the instant matter. The cases are all concluded and, based on the recovery of a judgment against On Par in the On Par Civil Case, the Funds have now been "made

---

[5] The Defendants in *United States v Forde* were: Michael Forde, John Greaney, Brian Hayes, Michael Brennan, Finbar O'Neill, Joseph Olivieri, Brian Carson, Joseph Ruocco, John Stamberger, and Michael Vivenzio. Every defendant, except Olivieri, plead guilty and was convicted of a substantive fraud or labor related offense. Olivieri went to trial and was only convicted on one count of perjury.

whole" as to its claimed delinquencies from On Par.  The Plaintiffs' cannot seek additional recovery here for these same delinquencies.

In the On Par Civil Case, the Funds sued On Par and Murray for delinquent contributions based on the same conduct, and in the same amount, as is alleged in the Complaint here.[6]  A copy of the Complaint in the On Par Civil Case is annexed as Exhibit B (Case No. 06-cv-5643, Doc. 1).  The On Par Civil Case initially resulted in a default judgment against On Par, granted on October 31, 2006 by Judge Alvin K. Hellerstein of this court.  In granting the default judgment, Judge Hellerstein relied on an audit submitted by the Funds that showed an amount of $9,455,283.17 was due in delinquent contributions and entered judgment on that amount plus interest, damages and costs. Thereafter, On Par appeared and sought to vacate the judgment.   On April 26, 2007, Judge Hellerstein denied On Par's motion and directed the parties to confer and submit a joint letter concerning the crediting of amounts paid under the $750,000 payment plan (described above) to the total amount owed.[7]  Pursuant to a decision dated June 25, 2007, Judge Hellerstein confirmed denial of the motion to vacate, and only altered the judgment so as to apply the $750,000 payment to reduce interest on the delinquent contributions. An amended default judgment was entered against On Par on July 5, 2007. A copy of the court's June 25, 2007 decision is annexed as Exhibit C (Case No. 06-cv-5643, Doc. 33), and the amended default judgment is annexed as Exhibit D (Case No. 06-cv-5643, Doc. 34).

---

[6] Both the Complaint in this action and the Funds filings in the On Par Civil Action describe a delinquency in the amount of $9,455,283.17.
[7] We note that while the Plaintiffs here claim that because a default was obtained the Funds were unable to obtain additional information, Murray and On Par did in fact appear and submitted papers disputing the Funds allegations.

On March 15, 2010, the Funds filed a Satisfaction of Judgment concerning the amended default judgment in the On Par Civil Case.  A copy of the Satisfaction of Judgment is annexed as Exhibit E (Case No. 06-cv-5643, Doc. 36).  The satisfaction of judgment followed a settlement whereby the Funds accepted $4,292,487.00 in full satisfaction of On Par's delinquencies ("2009 Settlement").  The Settlement itself was based on a representation by the Funds, and confirmed by its own forensic accountant, that the total delinquency amount was $4,929,487.00, not the $9,455,283.17 amount reflected in the prior judgment and now alleged in the instant Complaint.  A copy of the Agreement and General Release in the 2009 Settlement is annexed as Exhibit F.

As a result of the 2009 Settlement and the March 15, 2010 Satisfaction of Judgment, the Funds judgment for the alleged $9,455,283.17 in principal delinquent contributions from On Par has been fully satisfied.  Consequently, as argued below, the Plaintiffs are barred from claiming as damages in this case that "the Funds were deprived of required contributions amounting to at least $9,455,283.17," Complaint ¶116, because all of On Par's delinquencies have previously been fully recovered and satisfied.

Subsequent to the settlement and satisfaction of judgment in the On Par Civil Case, the Murray Criminal Case was resolved.  There, the Government did not require Murray to pay restitution to the Funds, on account of the prior settlement of the On Par Civil Case, which satisfied the Funds' loss arising from the conduct. Based on the 2009 Settlement and satisfaction of judgment, the Funds agreed that they had recovered all they were entitled to arising out of On Par's delinquencies.

This fact was again recognized in the Olivieri Criminal Case, where likewise no restitution was ordered.  There, the Government, the Funds and the Court agreed that the

Funds had been "made whole" by the prior settlement payment and satisfaction of judgment.  Accordingly, the Court determined that payment arising from On Par's delinquencies was "not an issue" for Olivieri, or any other defendant alleged to be responsible for such delinquencies.

As set forth herein, the Plaintiffs' claims against Olivieri must be dismissed based on the fact that all damaged allegedly cause by Olivieri arise out of On Par delinquencies, that all claims against Olivieri are untimely, and that the Second Claim must be dismissed for failure to state a claim.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed prior to service of responsive pleading if it fails to state a claim upon which relief can be granted.  A motion pursuant to Rule 12(b)(6) should be granted where the plaintiff has failed to provide a "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citing Fed R. Civ. Pro. 8(a)).  In assessing a sufficiency of the complaint, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.*  "[A] formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  "Factual allegations must be enough to raise a right to relief above the speculative level" *Id.*  A Complaint must be dismissed where the plaintiff has not "nudged [its] claims … across

the line from conceivable to plausible" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009)

(quoting *Twombly*, 550 U.S. at 570).  "[L]egal conclusions … must be supported by

factual allegations" and "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements … are not entitled to the assumption of truth."

*Ashcroft*, 129 S. Ct. at 1949-50.


## ARGUMENT

### I. PLAINTIFFS' CLAIMS AGAINST OLIVIERI BASED ON THE DELINQUENCIES OWED BY ON PAR ARE BARRED BY A PRIOR SATISFACTION OF JUDGMENT BETWEEN THE FUNDS AND ON PAR

Plaintiff asserts two claims against Olivieri, each involves allegations concerning

only On Par and Murray, and neither includes any other alleged source of damages.  In

the Second Claim for Relief, Plaintiffs allege that Olivieri was a co-conspirator in a

RICO conspiracy based on his involvement with On Par and Murray.  In the Seventh

Claim for Relief, Plaintiffs allege that Olivieri breached a fiduciary duty under ERISA to

the Funds in connection with his dealings with Murray.  The damages alleged in both

instances arise out of On Par's delinquencies to the Funds.  In both cases, Olivieri's

liability depends on the extent that the Funds are still entitled to recover for On Par's

delinquencies.  As the Funds have already obtained a judgment against On Par, and filed

a satisfaction of such judgment, Plaintiffs cannot claim that unpaid contributions are still

owed.  Without the ability to claim On Par has outstanding, unpaid contributions,

Plaintiffs cannot allege any claim for damages against Olivieri.  There can be no loss is

this situation, and without a loss based on On Par delinquencies, there is no liability for

Olivieri.

As set forth above, on March 15, 2010, the Funds filed a Satisfaction of Judgment concerning the amended default judgment in the On Par Civil Case.  Exhibit E.  As a result of the Satisfaction of Judgment, the Funds judgment concerning the alleged $9,455,283.17 in principal delinquent contributions has been satisfied.  The Satisfaction of Judgment was filed following a settlement in which the Funds accepted $4,292,487.00 in full satisfaction of On Par's delinquencies.  Pursuant to the settlement Agreement and General Release signed by the Funds, the $4,292,487.00 amount represented the "amount of fringe benefit liability reflected in a compilation of such liability prepared by the Funds forensic accountant." Exhibit F at p.3.  Consequently, the Plaintiffs have acknowledged that the actual amount owed by On Par is $4,292,287.00, and have filed satisfaction of their prior judgment.  As a result, the Plaintiffs are barred from claiming as damages here that "the Funds were deprived of required contributions amounting to at least $9,455,283.17" based on On Par delinquencies. Complaint ¶116.  In short, the Plaintiffs cannot allege that any outstanding delinquencies exist arising from On Par and Murray.

This result was confirmed by the Judge Victor Marrero at Olivieri's criminal sentencing.  There, the Court reviewed and calculated the loss amount regarding On Par. The court did not order any restitution and recognized that the Funds were "made whole" by way of the 2009 Settlement.  The court recognized that the prior 2009 Settlement resolved all issues of the Funds losses arising out of On Par delinquencies.  While a restitution finding does not necessarily preclude subsequent civil suits, the court's recognition that "restitution is not an issue" and that the Funds had been "made whole"

confirms that the prior 2009 Settlement foreclosed further recovery by the Funds arising out of the On Par delinquencies, regardless of from whom the recovery was sought.

Accordingly, based on the prior settlement and satisfaction of the Funds claims and judgment for all of the alleged On Par delinquencies, the claims against Olivieri arising out of damages calculated by these delinquencies must be dismissed.

## II.   PLAINTIFFS' CLAIMS AGAINST OLIVIERI ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS

Plaintiffs assert two claims against Olivieri, both arising under federal law.  In the Second Claim for Relief, Plaintiffs allege that Olivieri was a co-conspirator in a RICO conspiracy involving On Par and Murray, pursuant to 18 U.S.C. §1962(d).  In the Seventh Claim for Relief, Plaintiffs allege that Olivieri breached a fiduciary duty under ERISA to the Funds in connection with his dealings with Murray.  Both claims are time barred and must be dismissed.

### A.   The Civil RICO Conspiracy Claim is Time-Barred

The statute of limitations for a claim pursuant to RICO's civil enforcement provision is four years.  *Agency Holding Corp. v. Malley-Duff & Associations, Inc.*, 483 U.S. 143, 156 (1987); *In re Merrill Lynch Ltd. Partnership Litigation*, 154 F.3d 56, 58 (2d Cir. 1998).  "The statute of limitations is triggered when the plaintiffs discover or should have discovered their RICO injury, not when they discover or should have discovered the underlying pattern of racketeering activity." *Frankel v. Cole*, 313 Fed. Appx. 418, 419-20 (2d Cir. 2009) (citing *Rotella v. Wood*, 528 U.S. 549, 554 (2000).

This action was commenced on August 5, 2011, and the First Amended Complaint was filed on November 21, 2011.  Thus, under the four year statute of limitations, Plaintiffs can only recover for claims accruing after August 5, 2007.  More

specifically, the Plaintiffs cannot maintain a civil RICO claim against Olivieri that resulted in injuries that Plaintiffs knew of, or should have discovered, prior to August 5, 2007.

The only damages attributed to Olivieri arise out of On Par's delinquent contributions.  As such, it is beyond dispute that the Plaintiffs were aware of the injury, namely losses due to On Par's delinquent contributions, prior to August 5, 2007.  In paragraph 117 of the Complaint, the Plaintiffs reference the Funds prior suit against On Par and Murray ("On Par Civil Litigation"), which was filed on July 26, 2006.  This suit sought $10,000,000 in damages based on alleged On Par delinquencies.  *See* Exhibit B (On Par Civil Case Complaint).  Further, in October 2006, Plaintiffs submitted an audit of alleged On Par delinquencies, claiming that a specific amount ($9,455,283.17) was due.  Clearly, at this point, the Funds could have made the allegation that the $750,000 payment plan approved by Olivieri was insufficient.[8]  The claim had no doubt accrued.

Similarly, in paragraph 50 of the Complaint, the Plaintiffs reference the criminal indictment of Murray ("Murray Criminal Case"), which they acknowledge alleged "his and On Par's embezzlement of money rightfully belonging to the Funds."  Murray was indicted for these crimes on May 24, 2006. *See United Stated v. Murray*, No. 06-CR-443 (filed May 24, 2006, S.D.N.Y.).  While the Plaintiffs claim that since the plea was only unsealed in July of 2011, they were not aware of "the particulars of his criminal participation," they certainly where aware of the indictment and the criminal investigation surrounding Murray's conduct and On Par's delinquencies.  The Plaintiffs

---

[8] We by no means imply that there was any impropriety is approving the payment plan, and maintain that such an action was entirely proper, and indeed routine.  However, since the allegation is the basis for the Plaintiffs' claims, we refer to is solely for purposes of demonstrating the untimely nature of such claims, whatever their ultimate merit.

cannot claim to have been unaware of the On Par delinquencies until after August 5,

2007, and as such cannot claim to have been unaware of the injury allegedly caused by

Olivieri.

As such, the Plaintiffs' Second Claim for Relief is time-barred and must be

dismissed as against Olivieri.

B.      The ERISA Fiduciary Duty Claim is Time-Barred

Likewise, the Seventh cause of action is time barred.  That claim, for breach of

fiduciary duty under ERISA, has a relevant statute of limitation of:

> the earlier of –
> (1) six years after (A) the date of the last action which constituted a part of
> the breach or violation, or (B) in the case of an omission the latest date on
> which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual
> knowledge of the breach or violation; except that in the case of fraud or
> concealment, such action may be commenced not later than six years after
> the date of discovery of such breach or violation.

29 U.S.C. §1113.

The Plaintiffs allege that Olivieri breached his fiduciary duty to the Funds when

he "aided and facilitated the scheme of Murray to cheat the Funds out of monies owed by

On Par," and when he "acted on behalf of the trustees when approving a payment plan for

on Par" without first informing "his fellow trustees of a material financial conflict of

interest." Complaint at ¶203.  As described in paragraphs 89-91, these alleged breaches

occurred in March, April and July of 2005, and no further conduct is alleged.  As this

Complaint was initially filed on August 5, 2011, the Plaintiffs claims are asserted more

than six years after July 2005.  Pursuant to 29 U.S.C. §1113(1), the complaint is untimely

as being filed more than "six years after the date of the last action which constituted a

part of the breach or violation."[9]  Since the section is written using the language "earlier of," if either subsection (1) or (2) renders the claim untimely, the claim must be dismissed.  On this basis alone, the Seventh Claim for Relief is time-barred.

In any event, for the sake of completeness, we address subsection (2) concerning the time when Plaintiffs had knowledge or discovered the alleged breach.  Under subsection (2), the Plaintiffs' claim would be timely if the Plaintiffs did not discover the alleged breach until after August 5, 2008 – three years prior to commencing this action.  Under this subsection, the Plaintiffs' claims must still fail as untimely.

Here, the Plaintiffs clearly had actual knowledge of the alleged breaches prior to August 5, 2008, because Olivieri's dealings with Murray were disclosed prior to that time.  Specifically, in May 2006, Olivieri abstained from a vote of the trustees concerning approval of an On Par settlement because he had dealings with Murray.  At Olivieri's criminal trial, Stuart Grabois, the Funds' Executive Director, testified that Olivieri abstained from the vote on the On Par settlement approval at the May 2006 meeting of the Funds trustees.  A copy of the relevant section of the transcript of Grabois' testimony is annexed as Exhibit G.

Indeed, following the approval of the July 2005 payment plan, Olivieri abstained or recused himself from all decisions concerning On Par and Murray.  Based on this disclosure and the recusal of Olivieri from On Par related decisions, the Funds had actual

---

[9] Additionally, under subsection (1)(B) (assuming arguendo that the breach alleged constitutes an "omission") the claim is also time barred.  The alleged omission of a financial conflict of interest is only relevant in the context of Olivieri approving a payment plan.  Once Olivieri approved the payment plan in July 2005 the alleged breach had concluded, and as such there was no longer a way to cure the prior omission of the financial interest.  Thus, "the latest date on which the fiduciary could have cured the breach" was the same day that Olivieri signed the payment plan.

knowledge and were on notice of the fact that Olivieri had financially dealt with Murray. Thus, in addition to the fact that the only alleged time period when such dealings were the source of an alleged fiduciary breach occurred more than six years prior to the commencement of this action, the Funds were on notice more than three years prior to the commencement of this action.

Accordingly, the Seventh Claim for Relief is time barred and must be dismissed.

## III.   PLAINTIFFS' SECOND CLAIM FOR RELIEF FAILS TO STATE A CLAIM

Alternatively, should the Court decline to dismiss the Second Claim for relief on either of the grounds set forth above, the claim must be dismissed because (i) alleges only conduct occurring after the alleged racketeering activities had concluded and (ii) it completely fails to allege any facts constituting an agreement.

The Second Claim for Relief alleges that Olivieri violated 18 U.S.C. 1962(d) by engaging in a "conspir[acy] to commit the violations of 18 U.S.C. §1962(c) described in paragraphs 149 through 164 above" and alleges that "each of the RICO Conspirators knew about and agreed to, and did, facilitate the scheme alleged in paragraphs 149 to 164 above."  As set forth above, the allegations of paragraphs 149 to 164 make up the entire First Claim for Relief, which asserts a direct RICO claim against the "RICO Participants" and does not name Olivieri as a "Participant."  The specific racketeering enterprise, alleged in the First Claim, is as follows: "between 1994 and 2004, each of the contractors … made improper payments of money or other things of value to labor representatives including Forde, Greaney, Hayes, Mitchell, and Brennan," and "by paying these bribes, the contractors were permitted to hire non-union and 'off the books' workers and otherwise to avoid reportage of hours worked in covered employment and thereby

17

avoiding paying contractually required wages and contributions to the Funds." Complaint at ¶156, 157.  As Olivieri is not named as a RICO Participant, the allegations in the Second Claim for Relief are entirely dependent on allegations of Olivieri's inchoate, conspiratorial intent concerning the particular racketeering activity described in the First Claim.

Olivieri is only specifically addressed in the Second Claim in paragraph 173, where Plaintiff claims: "Olivieri knew about and agreed to, and did, facilitate the scheme … by <u>aiding Murray in avoiding the consequences of an investigation into On Par's conduct</u> and Murray's bribery of union officials and shop stewards, all in furtherance of a scheme by which Murray embezzled money from the Funds." Complaint at ¶173 (emphasis added).  Thus, the claim against Olivieri is extremely limited, in that it concerns only "aiding Murray in avoiding the consequences of an investigation into On Par's conduct." *Id.*  This conduct is described in paragraphs 89-91 of the Complaint as: in March 2005, Olivieri "aid[ed]" Murray in "having the stop order withdrawn" which would have shut down On Par, Complaint at ¶89; in April 2005, "Olivieri introduced Murray to Lawrence Cooley … so that Murray could take over an use Commercial Drywall as a front for continuing operations," *Id.* at ¶90; and in July 2005, "Olivieri approved in his capacity as a trustee of the Funds a $750,000 payment plan by which On Par agreed to pay delinquent contributions to the Funds." *Id.* at ¶91.

All of the allegations of Olivieri's conduct occur in March, April and July of 2005.  There is no allegation of any conduct occurring during the "racketeering activity occurring between 1994 and 2004" which is the basis for alleged RICO conspiracy. *Id.* at ¶161.

As such, the Complaint alleges a RICO conspiracy claim against Olivieri based on actions occurring after the racketeering activity had ceased, and not based in any way on the underlying bribery and 'off the books' contractor activity.

Furthermore, it is well settled that a plaintiff asserting a civil RICO conspiracy must specifically plead facts constituting an agreement. *Hecht v. Commerce Clearing House Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) ("Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement").  In addition, "a plaintiff must show that the defendants understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses." *Morin v. Trupin*, 711 F.Supp. 97, 111 (S.D.N.Y. 1989) (quoted in *In re Refco Inc. Securities Litigation*, No. 08 Civ. 7416, 2011 WL 1219265 at *48 (S.D.N.Y. Mar. 30, 2011)).

Here, the Plaintiff completely fails to allege any facts constituting, or even implying an agreement by Olivieri to join in a conspiracy to commit the RICO violations alleged in the First Claim.  Indeed, there are no facts alleging that he was even aware of the racketeering conduct described in the First Claim.  Plaintiffs' conclusory allegation that "Olivieri knew about and agreed to" the RICO conspiracy is all that is offered, and is entirely insufficient. *Morin v. Trupin*, 711 F.Supp. at 111.

Accordingly, the Second Claim for Relief must be dismissed for failure to state a claim for RICO conspiracy against Olivieri.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendant respectfully request that the Complaint be dismissed in its entirety as against Olivieri, and that the Court order such other and further relief as it deems just and proper.

Dated: New York, New York
      February 10, 2012

                              SULLIVAN GARDNER PC

                         By: __*/s/ Brian Gardner*_____
                         Brian Gardner
                         *Attorneys for Defendants*
                         7 East 20th Street
                         New York, New York 10003
                         (212) 687-5900
                         (212) 687-4060 (fax)
                         bg@sullivangardner.net