UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

New York City District Council of Carpenters
Pension Fund, New York City District Council of
Carpenters Welfare Fund, New York City District
Council of Carpenters Annuity Fund, and New York
City District Council of Carpenters Apprenticeship,
Journeyman Retraining, Educational and Industry
Fund, by their Trustees, Frank Spencer, Douglas J.
McCarron, John Ballantyne, Paul Tyznar, Paul
O'Brien, Kevin M. O'Callaghan, Catherine Condon,
David Meberg, Bryan Winter, and John DeLollis,

                            Plaintiffs,

                        -against-

Michael Forde, John Greaney, Joseph Olivieri, Brian
Hayes, Michael Mitchell, Finbar O'Neill, K.A.F.C.I.,
Michael Brennan, Turbo Enterprises, Inc., Terence
Buckley, Pitcohn Construction Enterprises, Inc.,
Gerard McEntee, Pyramid Associates Construction
Corp., James Duffy, EMB Contracting Corp., Michael
Batalias, Elisavet Batalias, Matthew Kelleher, Brian
Carson, Joseph Ruocco, John Stamberger, and
Michael Vivenzio,

                            Defendants.

Index No.  11-5474 (LBS)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANT JOSEPH OLIVIERI, AND MOTION TO DISMISS OF DEFENDANTS
MICHAEL BATALIAS, ELISAVET BATALIAS AND EMB CONTRACTING CORP.**

KAUFF MCGUIRE & MARGOLIS LLP
950 Third Avenue
Fourteenth Floor
New York, NY  10022
(212) 644-1010

*Attorneys for Plaintiffs*

PRELIMINARY STATEMENT ........................................................................ 2

FACTS ............................................................................................................ 2

BACKGROUND ............................................................................................. 2

ALLEGATIONS PERTAINING TO OLIVIERI ............................................ 3

ALLEGATIONS PERTAINING TO EMB DEFENDANTS............................ 4

ARGUMENT .................................................................................................. 5

STANDARD OF REVIEW ............................................................................. 5

OLIVIERI MOTION ....................................................................................... 5

I.     THE ON PAR SETTLEMENT AND RELATED DOCUMENTS DO NOT
       ABSOLVE OLIVIERI FROM HIS JOINT AND SEVERAL LIABILITY TO
       THE FUNDS............................................................................................ 6

       A.     Neither the On Par Settlement Agreement, Satisfaction of Judgment Nor
              Sentencing Statements Should Be Considered On a Motion To Dismiss. ............ 7

       B.     Defendant Olivieri Misconstrues the On Par Settlement Agreement and
              Satisfaction of Judgment Which Do Not Release Olivieri Nor Establish
              That the Funds Have Been Made Whole. ............................................................ 10

       C.     Defendant Olivieri is Jointly and Severally Liable for All Damages
              Arising from Breaches of Fiduciary Duty and the Civil RICO Conspiracy. ........ 12

II.    THE FUNDS' CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST
       OLIVIERI IS NOT BARRED BY THE STATUTE OF LIMITATIONS. ...................... 14

       A.     The Statute of Limitations Did Not Begin to Run Until Plaintiffs
              Discovered Defendant Olivieri's Breaches of Fiduciary Duty ............................. 14

       B.     Even Apart From the Extended "Fraud or Concealment" Statute of
              Limitations, Plaintiffs' Claims Are Timely ........................................................ 19

              1.     Plaintiffs Did Not Have Actual Knowledge of Olivieri's Breach
                     Until After His Indictment Was Unsealed on August 5, 2009. ............... 19

              2.     Olivieri's Last Act Constituting Part of His Breach of Fiduciary
                     Duty Occurred Within Six Years of Plaintiffs' Filing of the
                     Complaint.............................................................................................. 21

III.   THE RICO CONSPIRACY CLAIM AGAINST OLIVIERI IS NOT BARRED
       BY THE STATUTE OF LIMITATIONS....................................................... 23

       A.     Fraudulent Concealment Tolled the Limitations Period. ...................................... 23

              1.     "Wrongful Concealment of Material Facts" By Defendants is
                     Well-Pleaded........................................................................................ 24

              2.     The Concealment That "Prevented Plaintiffs' Discovery of the
                     Nature of the Claim" is Also Well-Pleaded............................................ 28

              3.     "Due Diligence by Plaintiffs" is Well-Pleaded...................................... 31

    B.     Olivieri's Time-Bar Defense is Fact-Based and is not a Basis for a Pleadings Dismissal. ................................................................................. 32

IV.    THE RICO CONSPIRACY CLAIM IS PROPERLY PLED AGAINST OLIVIERI. .......................................................................................................... 33

    A.     Olivieri Participated in a Continuing Conspiracy to Support, Sustain and Conceal the Racketeering. ................................................................. 33

          1.     Olivieri Cites No Law Supporting His Argument That the Plaintiffs' Pleading is Deficient. ............................................... 33

          2.     The FAC Alleges That Olivieri's Conduct Occurred During the Duration of the Conspiracy. ...................................................... 34

    B.     Plaintiffs Have Alleged Facts Satisfying the Broad Definition of an "Agreement" for a RICO Conspiracy. ................................................. 36

EMB MOTION ...................................................................................................... 38

I.    THE FAC PROPERLY PLEADS RICO CONSPIRACY AGAINST THE EMB DEFENDANTS. .................................................................................................. 38

    A.     An "Enterprise" Involving the EMB Defendants is Well-Pleaded ...................... 39

    B.     The EMB Defendants' "Agreement" is Well-Pleaded. ....................................... 41

    C.     "Continuity" is Also Well-Pleaded. ..................................................................... 43

II.    THE FUNDS' CLAIMS AGAINST THE EMB DEFENDANTS ARE NOT BARRED BY *IN PARI DELICTO* .................................................................... 46

    A.     There is no Basis to Apply *In Pari Delicto* ......................................................... 46

    B.     Even if *In Pari Delicto* Applied, the FAC Fits Squarely Within the Adverse Interest Doctrine. ................................................................................. 47

CONCLUSION ........................................................................................................ 48

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Cas. Sur. Co. v. P & B Autobody*,
   43 F.3d 1546 (1st Cir. 1994) ..................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) .......................................................................5

*Bankers Trust Co. v. Rhoades*,
   859 F.2d 1096 (2d Cir. 1988) ..................................................................................24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................5, 38

*Bell v. Hubbert*,
   No. 95 Civ. 10456, 2006 U.S. Dist. Lexis (S.D.N.Y. Jan. 8, 2007) .........................38

*Boyle v. U.S.*,
   556 U.S. 938, 129 S. Ct. 2237 (2009) ...............................................33, 39, 40, 41

*Broga v. Northeast Util.*,
   315 F. Supp. 2d 212 (D. Conn. 2004) ...............................................................17, 20

*Burke v. Bodewes*,
   250 F. Supp. 2d 262 (W.D.N.Y. 2003) ...................................................................17

*Butala v. Agashiwala*,
   No. 95 Civ. 936, 1997 U.S. Dist. LEXIS 1934 (S.D.N.Y. Feb. 24, 1997) ..............24

*Caputo v. Pfizer, Inc.*,
   267 F.3d 181 (2d Cir. 2001).......................................................................... *passim*

*Caravella v. Hearthwood Homes, Inc.*,
   No. 05-1529, 2007 WL 2886507 (N.D.N.Y. Sept. 27, 2007)...................................28

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001).................................................................................................42

*Chechele v. Elstain*,
   No. 11 Civ. 3320, 2012 WL 607448 (S.D.N.Y. Feb. 24, 2012) ................................7

*Chem. Bank v. Stahl*,
   655 N.Y.S.2d 24 (N.Y. App. Div. 1st Dep't 1997) .................................................46

*Chubb & Son Inc. v. Kelleher,*
    Nos. 92 CV 4484, 95 CV 0951, 2010 WL 5978913 (E.D.N.Y. Oct. 22, 2010) ......................13

*City of N.Y. v. Pollock,*
    No. 03 Civ. 0253, 2006 WL 522462 (S.D.N.Y. Mar. 3, 2006) .........................................12, 13

*Conmar Corp. v. Mitsui & Co.,*
    858 F.2d 499 (9th Cir. 1988) ..................................................................................................25

*Connolly v. Dresdner Bank AG,*
    No. 08 Civ. 5018, 2009 WL 1138712 (S.D.N.Y. Apr. 27, 2009)...............................................9

*Diduck v. Kaszycki & Sons Contractors, Inc.,*
    874 F.2d 912 (2d Cir. 1989)....................................................................................................15

*Faiveley Transp. USA, Inc. v. Wabtec Corp.,*
    758 F. Supp. 2d 211 (S.D.N.Y. 2010).......................................................................................7

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004)....................................................................................................45

*First Interregional Advisors Corp. v. Wolff,*
    956 F. Supp. 480 (S.D.N.Y. 1997) .....................................................................................36, 38

*Frulla v. CRA Holdings Inc.,*
    596 F. Supp. 2d 275 (D. Conn. 2009)......................................................................................18

*Fuji Photo Film U.S.A., Inc. v. McNulty,*
    640 F. Supp. 2d 300 (S.D.N.Y. 2009)...........................................................................32, 36, 44

*Giant Group, Ltd. v. Sands,*
    142 F. Supp. 2d 503 (S.D.N.Y. 2001).......................................................................................9

*Global Network Commc'ns, Inc. v. City of N.Y.,*
    458 F.3d 150 (2d Cir. 2007)..................................................................................................8, 9

*H.J. Inc. v. Northwest Bell Tel. Co.,*
    492 U.S. 229 (1989)................................................................................................................45

*Harris v. Finch, Pruyn & Co., Inc.,*
    No. 1:05-CV-951, 2008 WL 2064972 (N.D.N.Y. May 13, 2008) ..........................................17

*Hoy v. Inc. Village of Bayville,*
    765 F. Supp. 2d 158 (E.D.N.Y. 2011) ....................................................................................10

*In re Masters Mates & Pilots Pension Plan,*
    957 F.2d 1020 (2d Cir. 1992)..................................................................................................13

*In re Sumitomo Copper Litig.,*
    120 F. Supp. 2d 328 (S.D.N.Y. 2000)...........................................................................24, 27

*In re Worldcom, Inc. ERISA Litig.,*
    339 F. Supp. 2d 561 (S.D.N.Y. 2004)...........................................................................12, 14

*Int'l Brotherhood of Teamsters v. Carey,*
    163 F. Supp. 2d 271 (S.D.N.Y. 2001)................................................................................45

*Katzenberg v. Lazzari,*
    406 F. App'x 559 (2d Cir. 2011) ......................................................................................17

*Kirschner v. KPMG LLP,*
    14 N.Y.3d 446 (N.Y. 2010) .........................................................................................47, 48

*Leber v. Citigroup, Inc.,*
    No. 07 Civ. 9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ............................................21

*Lenz v. Assoc'd Inns & Rests. Co. of Am.,*
    833 F. Supp. 362 (S.D.N.Y. 1993) ....................................................................................25

*McConnell v. Costigan,*
    No. 00 Civ. 4598, 2002 WL 313528 (S.D.N.Y. Feb. 28, 2002) ..........................................20

*Morrow v. Black,*
    742 F. Supp. 1199 (S.D.N.Y. 1990)...................................................................................37

*N.Y. v. Hendrickson Bros., Inc.,*
    840 F.2d 1065 (2d Cir. 1988)................................................................................... *passim*

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.,*
    165 F. Supp. 2d 514 (S.D.N.Y. 2001)................................................................................39

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,*
    437 F.3d 1145 (11th Cir. 2006) .......................................................................................46

*Pierce v. P&A Admin. Serv., Inc.,*
    No. 09-CV-526A, 2011 WL 2261116 (W.D.N.Y. June 6, 2011) .........................................13

*RD Mgmt. Corp. v. Samuels,*
    No. 02 Civ. 4876, 2003 WL 21254076 (S.D.N.Y. May 28, 2003)....................................38, 39

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993)..........................................................................................................42

*Riddell v. Riddell Washington Corp.,*
    866 F.2d 1480 (D.C. Cir. 1989) ................................................................................24, 25, 26

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994)...................................................................42

*Rotella v. Wood*,
   528 U.S. 549, 120 S. Ct. 1075 (2000)..........................................23, 24

*S.E.C. v. Lee*,
   720 F. Supp. 2d 305 (S.D.N.Y. 2010)........................................46, 47

*Sacher v. Beacon Assocs. Mgmt. Corp.*,
   27 Misc. 3d 1221(A), 2010 WL 1881951 (N.Y. Sup. Ct. Apr. 26, 2010) .........................47, 48

*Salinas v. U.S.*,
   522 U.S. 52, 118 S. Ct. 469 (1997)................................35, 42, 43, 44

*Smith v. Westchester Cnty.*,
   769 F. Supp. 2d 448 (S.D.N.Y. 2011).............................................7, 8

*State Farm Mut. Auto. Ins. Co. v. Kalika*,
   No. 04-CV-4631, 2007 WL 4326920 (E.D.N.Y. Dec. 7, 2007).............................13

*Stavola v. Ne. Util.*,
   453 F. Supp. 2d 584 (D. Conn. 2006)...............................................20

*Symbol Techs., Inc. v. Deloitte & Touche, LLP*,
   888 N.Y.S.2d 538 (N.Y. App. Div. 2nd Dep't 2009) ............................47

*Tho Dinh Tran v. Alphonse Hotel Corp.*,
   281 F.3d 23 (2d Cir. 2002)..........................................................24, 30

*Travelers Indem. Co. v. Joseph David Inc.*,
   No. 05-CV-870A, 2006 WL 3827430 (W.D.N.Y. Dec. 28, 2006)............................9

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*,
   303 F. Supp. 2d 432 (S.D.N.Y. 2004)..............................................45

*U.S. v. Applins*,
   637 F.3d 59 (2d Cir. 2011)......................................................39, 42, 44

*U.S. v. Rastelli*,
   870 F.2d 822 (2d Cir. 1989)....................................................36, 41, 42

*U.S. v. Turkette*,
   452 U.S. 576 (1981)...............................................................39, 40

*U.S. v. Zichetello*,
   208 F.3d 72 (2d Cir. 2000)....................................................36, 42, 44

*Wasley Prods., Inc. v. Bulakites,*
    2006 WL 3834240 (D. Conn. May 31, 2006) ........................................................18

*Wilson v. Toussi,*
    260 F. Supp. 530 (E.D.N.Y. 2003) .....................................................................48

**STATUTES**

18 U.S.C. § 1621 ...............................................................................................18

18 U.S.C. § 1961(4) .......................................................................................33, 38

18 U.S.C. § 1962(c) ................................................................................... *passim*

18 U.S.C. § 1962(d) ................................................................................... *passim*

29 U.S.C. § 186(c)(5) ...........................................................................................2

29 U.S.C. § 1113 ....................................................................................... *passim*

ERISA ("Employee Retirement Income Security Act of 1974") 29 U.S.C. § 1002 *et seq.* .. *passim*

RICO ("Racketeer Influenced and Corrupt Organizations Act") 18 U.S.C. § 1961 *et seq.* .. *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ......................................................................................38, 39

Fed. R. Civ. P. 9(b) ...........................................................................17, 18, 39, 45

Fed. R. Civ. P. 12(b)(6) ...........................................................................1, 5, 9, 10

Fed. R. Civ. P. 12(d) ............................................................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Annuity Fund, and New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund, by their Trustees, Frank Spencer, Douglas J. McCarron, John Ballantyne, Paul Tyznar, Paul O'Brien, Kevin M. O'Callaghan, Catherine Condon, David Meberg, Bryan Winter, and John DeLollis,<br><br>Plaintiffs,<br><br>-against-<br><br>Michael Forde, John Greaney, Joseph Olivieri, Brian Hayes, Michael Mitchell, Finbar O'Neill, K.A.F.C.I., Michael Brennan, Turbo Enterprises, Inc., Terence Buckley, Pitcohn Construction Enterprises, Inc., Gerard McEntee, Pyramid Associates Construction Corp., James Duffy, EMB Contracting Corp., Michael Batalias, Elisavet Batalias, Matthew Kelleher, Brian Carson, Joseph Ruocco, John Stamberger, and Michael Vivenzio,<br><br>Defendants. | Index No.  11-5474 (LBS)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANT JOSEPH OLIVIERI, AND MOTION TO DISMISS OF DEFENDANTS MICHAEL BATALIAS, ELISAVET BATALIAS AND EMB CONTRACTING CORP.** |

Plaintiffs New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Annuity Fund, and New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund, by their Trustees, by and through their attorneys, Kauff McGuire & Margolis LLP, submit this Memorandum of Law in Opposition to the Motions to Dismiss Plaintiffs' First Amended Complaint filed by Defendant Joseph Olivieri and Defendants Michael Batalias, Elisavet Batalias and EMB Contracting Corp., respectively, pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs (or the "Funds") commenced this action on August 5, 2011, filing a complaint naming 18 defendants, including Defendant Joseph Olivieri ("Olivieri"). On November 21, 2011, Plaintiffs filed a First Amended Complaint (the "FAC"), naming four additional defendants, including Defendants Michael Batalias ("M. Batalias"), Elisavet Batalis ("E. Batalias"), and EMB Contracting Corp. ("EMB") (collectively, the "EMB Defendants.") Subsequently, Olivieri filed a Motion to Dismiss on February 10, 2012 (the "Olivieri Motion"), and the EMB Defendants filed their own Motion to Dismiss on February 13, 2012 (the "EMB Motion")[1]. For the reasons detailed below, both motions should be denied.

## FACTS

### BACKGROUND

Plaintiffs are jointly-administered employee benefit plans established under § 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). (FAC ¶ 5.) On August 5, 2009, criminal indictments against three trustees of the Plaintiff Funds, six additional union officials, and an associate were unsealed in this District. The defendants in this criminal case included Defendant Olivieri and Defendant Hayes. (FAC ¶ 52.) Nine of the defendants plead guilty over the next year, and Defendant Olivieri was found guilty after a jury trial in October 2010. (FAC ¶¶ 52, 86.) As a result of these, and other revelations involving additional defendants in the instant action (FAC ¶¶ 50-57), the Funds came to discover that they had been the victims of a racketeering conspiracy and enterprise that encompassed former trustees of the Funds, union officials, their associates, and a number of contractors. These individuals acted in concert to embezzle the assets of the Funds by carrying out a scheme in which contractors paid bribes to

---

[1] References to the accompanying memoranda of law in support of the Defendants' motions to dismiss shall hereafter be to "Olivieri Br." and "EMB Br.," respectively.

labor representatives, who in exchange for the bribes, failed to enforce applicable collective bargaining agreements and facilitated the contractors' non-payment of required contributions to the Funds. (FAC ¶¶ 1, 47.)  The Funds' discovery of the deep corruption detailed in the FAC was delayed by active concealment undertaken by many defendants, and the inexcusable failure to disclose material facts by three of the Funds' own trustees (Defendants Forde, Greaney and Olivieri), including disclosure of their own participation in the racketeering conspiracy.  (FAC ¶¶ 58-65.)

### ALLEGATIONS PERTAINING TO OLIVIERI

With respect to Defendant Olivieri, the Funds have alleged the following in the FAC:

Olivieri was the Executive Director of the Association of Wall, Ceiling and Carpentry Industries of New York, and from approximately 2000 until approximately August 2009, he served as a trustee of, and, thus, a fiduciary to the Funds. (FAC ¶ 19.)

James Murray ("Murray") was the owner and operator of On Par Masonry ("On Par"), a signatory contractor to a collective bargaining agreement under which it was required to make contributions to the Plaintiff Funds for covered work. (FAC ¶¶ 44-46.) Murray and On Par engaged in a scheme from at least 2000 to 2004 with trustees of the Plaintiff Funds, union officials, and others to exchange bribes for the facilitation of violations of On Par's collective bargaining agreement, such as evading requirements to pay contractual wage rates and make contributions to the Funds. (FAC ¶¶ 111-14.) Murray and On Par continued cheating the Funds out of contributions into at least 2005. (FAC ¶¶ 89-90, 115.)

In January 2005, Murray loaned Olivieri $730,000. (FAC ¶ 88.) Olivieri never disclosed the loan to the Funds despite his fiduciary obligations. (FAC ¶ 93.)

In March 2005, when a court appointed investigator deposed Murray and then served him with a shut-down order, Olivieri aided Murray in having the order withdrawn and allowing On Par to remain open.  (FAC ¶¶ 89, 115.)

In April 2005, Olivieri introduced Murray to Lawrence Cooley, the owner of a defunct contracting company called Commercial Drywall, so that Murray could use Commercial Drywall as a front to continue his operations while avoiding scrutiny.  (FAC ¶¶ 90, 115.)

In July 2005, Olivieri approved a payment plan for On Par to repay $750,000 of its delinquent contributions.  (FAC ¶ 91.)

In March 2006, Murray fled the United States.  (FAC ¶ 115.)

In December 2007, Olivieri gave testimony denying his association with Murray and his involvement in, or knowledge of, Murray's takeover of Commercial Drywall.  (FAC ¶¶ 60, 86, 93.)  In October 2010, Olivieri was convicted of perjury for his false testimony regarding Murray.  (FAC ¶ 86.)

As a result of the above actions, the Funds suffered over $9 million in lost contributions from Murray and On Par.  (FAC ¶ 116.)  Over $5 million of that amount remains unrecovered.  (*Id.*)

<u>ALLEGATIONS PERTAINING TO EMB DEFENDANTS</u>

With respect to the EMB Defendants, the Funds have alleged the following in the FAC:

EMB is a signatory to a collective bargaining agreement under which it was required to make contributions to the Plaintiff Funds for covered work.  (FAC ¶¶ 36-37.)  EMB is owned by M. Batalias and E. Batalias, who also act as the principal executives of company.  (FAC ¶¶ 38-39.)  Matthew Kelleher ("Kelleher") was an employee of EMB.  (FAC ¶ 40.)

The EMB Defendants engaged in a scheme to enrich themselves by paying bribes to union officials to facilitate violations of EMB's collective bargaining agreement, such as evading requirements to make contributions to the Funds.  (FAC ¶ 134.)

Kelleher admitted in a plea allocution that on several occasions in 2007 and 2008, he delivered cash and other things of value to union officials on behalf of his employer, EMB, so that EMB could pay carpenters off the books and not make required contributions to the Funds. (FAC ¶¶ 138-139.)

Among the union officials accepting bribes from the EMB Defendants was Defendant Hayes.  (FAC ¶¶ 99, 135.)  Hayes had also accepted bribes from other contractors, including Defendants Turbo, Pyramid and Pitcohn, and his conduct led to his pleading guilty to violations of 18 U.S.C. § 1962(c) and (d).  (FAC ¶¶ 95, 97, 100.)

## **ARGUMENT**

### STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  To survive a motion to dismiss, a claim must meet only a standard of "plausibility." *Id.* at 564.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  The plausibility standard is not akin to a "'probability requirement.'" *Id.*

### OLIVIERI MOTION

Defendant Olivieri makes four arguments for dismissal of the Funds' claims against him in the FAC: (1) that the Plaintiffs' settlement with Murray requiring payment of a

portion of On Par's liability to the Funds made Funds whole or otherwise released Olivieri; (2) that the ERISA breach of fiduciary duty claim against him is time barred; (3) that the civil RICO conspiracy claim against him is time-barred; and (4) that the civil RICO conspiracy claim fails to allege an agreement or otherwise plead facts sufficient to connect him to it and the substantive civil RICO violation.

## I.   THE ON PAR SETTLEMENT AND RELATED DOCUMENTS DO NOT ABSOLVE OLIVIERI FROM HIS JOINT AND SEVERAL LIABILITY TO THE FUNDS.

Defendant Olivieri mistakenly argues, without citing to a single case for support, that the Funds' claims against him for breach of fiduciary duties under ERISA and RICO conspiracy are barred by (1) a settlement agreement by and among the Funds, On Par and its owner, Murray (the "On Par Settlement Agreement")—an agreement to which Defendant Olivieri is not a party, (2) a satisfaction of judgment related to the On Par Settlement Agreement (the "Satisfaction of Judgment"), and (3) non-party statements made during the sentencing proceedings of various defendants (the "Sentencing Statements") allegedly proving that the Funds have been "made whole" with respect to any damages related to On Par and Murray. Contrary to Defendant Olivieri's arguments, none of the foregoing precludes the Funds' claims against Olivieri for breach of his fiduciary duty and civil RICO conspiracy.

First, neither the On Par Settlement Agreement, the Satisfaction of Judgment nor the Sentencing Statements is properly before the Court on this motion.  Second, Defendant Olivieri has misquoted and misconstrued the On Par Settlement Agreement and Satisfaction of Judgment.  A reading of these plainly worded documents leaves no question that they neither release Olivieri, nor bar the Funds from recovering damages against him.  Furthermore, as a co-fiduciary with former Trustees Forde and Greaney, and a member of a RICO conspiracy, Defendant Olivieri is potentially jointly and severally liable for *all* of the damages arising from

the breaches of fiduciary duty and RICO conspiracy alleged by Plaintiffs, not just the damages related to On Par and Murray's delinquencies.[2]  As such, even if the Funds have been made whole with respect to On Par and Murray, which is not the case, and the Funds have expressly so pled with specificity in the FAC, (FAC ¶ 116), the Funds may still recover other damages from Olivieri.

      A.    <u>Neither the On Par Settlement Agreement, Satisfaction of Judgment Nor Sentencing Statements Should Be Considered On a Motion To Dismiss.</u>

As a preliminary matter, the Court should not consider Defendant Olivieri's argument that the On Par Settlement Agreement, the Satisfaction of Judgment or the Sentencing Statements bars potential recovery against him because such "evidence" is not properly before the Court on a motion to dismiss.  It is well-settled that courts generally cannot consider exhibits on a motion to dismiss, and are "'normally required to look only to the allegations on the face of the complaint.'"  *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 216 (S.D.N.Y. 2010) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  The Court may only consider "'facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [] matters of which judicial notice may be taken.'"  *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 460 (S.D.N.Y. 2011) (quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)).  In addition, if the Court chooses to take judicial notice of a public record, it may do so only to determine what statements the record contains, not for the truth of the matters asserted.  *See, e.g.*, *Chechele v. Elstain*, No. 11 Civ. 3320, 2012 WL 607448, at *1 (S.D.N.Y. Feb. 24, 2012) (citing *Roth*, 489 F.3d at 509).  The documents relied on by Olivieri do not fit into any of the foregoing categories and therefore should not be considered by the Court.

---

[2] Plaintiffs allege losses of at least $9,455,283.17 in required contributions from Murray and On Par, of which at least approximately $5.9 million has not been recovered.  (FAC ¶ 116.)

Neither the On Par Settlement Agreement nor the Satisfaction of Judgment are incorporated by reference or integral to Plaintiffs' FAC. Although Plaintiffs briefly mention the Funds' claim for delinquent contributions against On Par and Murray, the FAC does not make any reference to the On Par Settlement Agreement or the Satisfaction of Judgment. (FAC ¶ 117.) For a document "[t]o be incorporated by reference, the complaint must make a clear, definite and substantial reference to the document[]." *Smith*, 769 F. Supp. 2d at 460 (internal citation omitted). That standard is clearly not met in this case. Nor are the On Par Settlement Agreement and Satisfaction of Judgment "integral" to the FAC—to be "integral" to a complaint, a plaintiff must "rel[y] on the terms and effect of [the] document in drafting the complaint . . .; mere notice or possession is not enough." *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2007) (internal citations omitted). Plaintiffs' single allegation related to the prior litigation against On Par and Murray does not make these documents integral to the FAC. Moreover, as discussed *infra*, Plaintiffs have claims for damages against Olivieri separate and apart from any claims addressed in the On Par Settlement Agreement and Satisfaction of Judgment. Accordingly, neither of these documents should be considered and the Court should reject Defendant Olivieri's arguments relying on them.

In addition, the Sentencing Statements, which, notably, Defendant Olivieri refers to without citation, (Olivieri Br., 9, 12), do not fall into any of the categories of extrinsic documents that may be considered on a motion to dismiss. Although the sentencing proceedings can be considered public records of which the Court may take judicial notice, Defendant Olivieri attempts to cite these records for the truth of the matter asserted, *i.e.*, that the Funds allegedly have been "made whole," which is an impermissible use of such records on a motion to dismiss. *See Global Network Commc'ns,* 458 F.3d at 157 ("A court may take judicial notice of a

document filed in another court not for the truth of the matters asserted in the other litigation, but

rather to establish the fact of such litigation and related filings.") (internal citations omitted);

*Connolly v. Dresdner Bank AG*, No. 08 Civ. 5018, 2009 WL 1138712, at *3-4 (S.D.N.Y. Apr.

27, 2009) (declining to take judicial notice of SEC filings because defendant attempted to use

them to contradict allegations in the complaint and "they cannot be considered for their truth" on

a motion to dismiss).

Finally, if the Court were inclined not to exclude Defendant Olivieri's extrinsic

"evidence," it must first convert Olivieri's motion to dismiss into a motion for summary

judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside

the pleadings are presented to and not excluded by the court, the motion *must* be treated as one

for summary judgment under Rule 56.") (emphasis added); *Global Network Commc'ns,* 458 F.3d

at 156 (finding it reversible error for the district court to have considered trial testimony in an

unrelated criminal proceeding and an agency finding, neither of which were mentioned in the

complaint, without first converting the motion to dismiss into a motion for summary judgment).

Plaintiffs submit that conversion here is not warranted.  Indeed, although the

Court has "complete discretion to determine whether or not to accept the submission of extra-

pleading materials and rely upon it, and thereby convert the Rule 12(b)(6) motion into a Rule 56

summary judgment motion," *Travelers Indem. Co. v. Joseph David Inc.*, No. 05-CV-870A, 2006

WL 3827430, at *3 (W.D.N.Y. Dec. 28, 2006), the instant motion is not appropriate for

conversion because Defendant Olivieri has not answered the FAC and none of the parties have

engaged in any discovery. *See Giant Group, Ltd. v. Sands*, 142 F. Supp. 2d 503, 506 (S.D.N.Y.

2001) ("[e]ven where additional materials are submitted by one party, a trial court should not

transform a 12(b)(6) motion into a summary judgment motion where, as here, the motion has

been filed in lieu of an answer, and the parties have neither completed discovery nor formally

requested that the motion be converted."); *Hoy v. Inc. Village of Bayville*, 765 F. Supp. 2d 158,

164 (E.D.N.Y. 2011) (declining to exercise discretion to convert motion into one for summary

judgment because the plaintiffs should be entitled to discovery before having to oppose a motion

for summary judgment).

 For the foregoing reasons, the Court should not consider Defendant Olivieri's

argument that the On Par Settlement Agreement, Satisfaction of Judgment and Sentencing

Statements bar Plaintiffs' claims against him.

 B. <u>Defendant Olivieri Misconstrues the On Par Settlement Agreement and
Satisfaction of Judgment Which Do Not Release Olivieri Nor Establish That the
Funds Have Been Made Whole</u>.

 Even considering the On Par Settlement Agreement and Satisfaction of Judgment,

Defendant Olivieri's argument that such documents preclude the Funds' claims against him are

misplaced. Defendant Olivieri grossly mischaracterizes the On Par Settlement Agreement in his

motion to dismiss. Olivieri argues that the On Par Settlement Agreement contains an admission

by the Funds that the amount of the settlement, $4,292,487.00, represented the total amount of

the delinquencies owed by On Par and Murray and therefore the Funds have been made whole. [3]

(Olivieri Br., 9, 12.) In fact, however, an accurate reading of the On Par Settlement Agreement

reveals that the settlement amount represented only "an" amount due to the Funds, not the entire

amount of On Par's delinquency. As such, On Par's delinquencies have not been fully recovered

nor satisfied and the Funds may continue to seek damages from Olivieri. (FAC ¶ 116.)

 In particular, Defendant Olivieri misquotes and misconstrues the On Par

Settlement Agreement by stating that "the $4,292,287.00 [settlement amount] represented *the*

---

[3] As noted *supra*, fn. 2, Plaintiffs have unambiguously alleged that they have not been made whole with respect to
Murray's and On Par's delinquencies and are still owed at least approximately $5.9 million. (FAC ¶ 116.) This
allegation must be accepted as true on a motion to dismiss.

'amount of fringe benefit liability reflected in a *compilation of such liability* prepared by the Funds forensic accountant.'" (Olivieri Br., 12.) (emphasis added). In fact, the On Par Settlement Agreement specifically noted that the settlement amount merely represented "*an* amount of fringe benefit liability" and, as emphasized in the preceding sentence, such amount did not represent the ultimate amount owed to the Funds but was only *part* of a *compilation* of such liability. Accordingly, the On Par Settlement Agreement explicitly contradicts Olivieri's assertion that the Funds have been "made whole" with respect to On Par, and Plaintiffs explicitly allege to the contrary. (FAC ¶ 116.)

Second and at least equally important, the On Par Settlement and Satisfaction of Judgment do not bar the Funds' claims against Olivieri because Defendant Olivieri was not a party to the On Par Settlement Agreement. The On Par Settlement Agreement was entered into solely by the Funds, On Par and Murray, and only released claims against On Par, Murray and their heirs, executors, administrators, successors and assigns. (*See* Olivieri Br., Ex. F, at 1, 3.) The Funds never released any claims that the Funds might have against Olivieri. In fact, the On Par Settlement Agreement merely provides that the settlement amount represents "settlement of [the Funds'] claims *against On Par and Murray*" and that the Funds "will not claim any further or additional amounts *from the government* as a victim of restitution in connection with the pending prosecution of Murray." (Olivieri Br. Ex. F, at 3) (emphasis added) The On Par Settlement Agreement does not in any way prevent the Funds from seeking additional recovery from any other parties, including Defendant Olivieri, who was not released as part of the agreement. Furthermore, the Satisfaction of Judgment, which merely documented the On Par Settlement Agreement, also has absolutely no bearing on Olivieri's liability to the Funds. *See, e.g., In re Worldcom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561, 568-69 (S.D.N.Y. 2004)

(approving settlement agreement and concomitant bar order against non-settling defendants and noting that "a plaintiff may satisfy an entire judgment against one of several tortfeasors").

Finally, Defendant Olivieri argues that Judge Victor Marrero found that the Funds had been made whole at Olivieri's criminal sentencing. As discussed *supra*, Olivieri's sentencing proceeding is not properly considered on this motion to dismiss. Notably, moreover, Olivieri provides "quotes" from Judge Victor Marrero without any citation or documentation to support the statements. (Olivieri Br. 12.) In any event, alleged representations made during the sentencing proceedings of the defendants that the Funds have been "made whole," (Olivieri Br. 2), cannot bind the Funds, because they were not parties to those proceedings. *See City of N.Y. v. Pollock*, No. 03 Civ. 0253, 2006 WL 522462, at *14 (S.D.N.Y. Mar. 3, 2006) (noting that "[a]ny asserted oral representations made by the state prosecutor that the payments would constitute 'full restitution,' could not – standing alone – bind the City, an entirely separate party, neither present nor represented during the negotiations or the plea").

C.   Defendant Olivieri is Jointly and Severally Liable for All Damages Arising from Breaches of Fiduciary Duty and the Civil RICO Conspiracy.

Contrary to Defendant Olivieri's argument that his "liability depends on the extent that the Funds are still entitled to recover for On Par's delinquencies," (Olivieri Br. 11), Olivieri is potentially jointly and severally liable to the Funds for *all* damages arising from all the alleged breaches of fiduciary duty and the RICO conspiracy of which he was a member. Plaintiffs have alleged that Olivieri conspired not only with On Par and Murray, but also Forde, Greaney, Hayes, Mitchell, Brennan, KAFCI, O'Neill, Turbo, Buckley, Pitcohn, McEntee, Pyramid, Duffy, EMB, M. Batalias, E. Batalias, Kelleher, Carson, Ruocco, Stamberger and Vivenzio. (FAC ¶¶ 166-76.)

Although the Court of Appeals for the Second Circuit has not explicitly addressed the issue of joint and several liability in *civil* RICO cases, every circuit court to address the issue, as well as a number of district courts within the Circuit, have found defendants to be jointly and severally liable for civil RICO damages. *See, e.g., Pollock*, 2006 WL 522462, at *17 (holding defendants jointly and severally liable); *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04-CV-4631, 2007 WL 4326920, at *9 (E.D.N.Y. Dec. 7, 2007) (collecting cases); *Chubb & Son Inc. v. Kelleher*, Nos. 92 CV 4484, 95 CV 0951, 2010 WL 5978913, at *6 (E.D.N.Y. Oct. 22, 2010), *adopted by* 2011 WL 839553 (E.D.N.Y. Mar. 7, 2011). Specifically, the case law confirms that a RICO conspirator may be liable for damages arising from *all* acts done in furtherance of the conspiracy, even those in which the individual conspirator was not personally involved. *See Kelleher*, 2010 WL 5978913, at *6 (finding defendant jointly and severally liable for all fraudulent claims); *Kalika*, 2007 WL 4326920, at *9 (finding "ample authority" to hold defendant jointly and severally liable for damages caused by "all of the defendants involved in the conspiracy"); *see also Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1562 (1st Cir. 1994) ("A defendant who does not know the 'entire conspiratorial sweep' is nevertheless jointly and severally liable, in the civil context, for all acts in furtherance of the conspiracy.").

Furthermore, Olivieri is potentially jointly and severally liable for any damages caused by Defendant Forde's and Defendant Greaney's breach of their fiduciary duty, because "[u]nder ERISA, breaching fiduciaries are jointly and severally liable." *In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1023 (2d Cir. 1992) (citing 29 U.S.C. § 1105(a)(2)); *see also Pierce v. P&A Admin. Serv., Inc.*, No. 09-CV-526A, 2011 WL 2261116, ay *12 (W.D.N.Y. Jun. 6, 2011) (declining to dismiss claims against one defendant because such defendant "may also be jointly and severally liable for P&A's fiduciary breaches of its duties . . ."); *In re*

*Worldcom, Inc.*, 339 F. Supp. 2d at 568 (noting that "ERISA imposes joint and several liability on defendants" and that "a plaintiff may satisfy an entire judgment against one of several tortfeasors").

Therefore, even if Olivieri is correct that the On Par Settlement Agreement, Satisfaction of Judgment and Sentencing Statements preclude the Funds claims against Olivieri related to On Par's delinquencies, which he is not, the Funds' claims against him still survive because Olivieri is jointly and severally liable for all damages arising out of the alleged breaches of fiduciary duty and the civil RICO conspiracy.

## II.     THE FUNDS' CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST OLIVIERI IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

Without citing to a single case and failing to address a critical portion of the relevant statute, Defendant Olivieri argues that the Funds' claim against him for breach of fiduciary duty is untimely. Defendant Olivieri's argument fails, first and foremost, because he inexplicably ignores the portion of the statute extending the limitations period in cases of fraud or concealment—an essential part of the allegations against him at bar. Moreover, even applying, *arguendo,* the statute without the extending language, Plaintiffs' claims are still timely as Plaintiffs have alleged, and indeed discovered, breaches of fiduciary duty within the statutory time period. In arguing to the contrary, Defendant Olivieri misconstrues both the established case law of this Circuit regarding when plaintiffs are deemed to have "actual knowledge" of such breaches and the last date on which Olivieri breached his fiduciary duty to the Plaintiff Funds.

### A.     The Statute of Limitations Did Not Begin to Run Until Plaintiffs Discovered Defendant Olivieri's Breaches of Fiduciary Duty.

Contrary to Defendant Olivieri's argument, the proper statute of limitations for Plaintiffs' breach of fiduciary claim against him is six years from the date of Plaintiffs' discovery

of the breach because Plaintiffs' claim against Olivieri involves both fraud and concealment.

Specifically, Section 413 of ERISA provides that

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty or obligation under this part, or with respect to a violation of this part, after the earlier of—
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>>
>> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation
>
> *except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.*

29 U.S.C. § 1113 (emphasis added).  Defendant Olivieri neither addresses this plainly applicable "fraud or concealment" language in his brief (*see* Olivieri Br. 15), nor the compelling facts of concealment pled by Plaintiffs, or the applicable case law pursuant to which the six-year fraud-or-concealment limitations period applies to Plaintiffs' claim.

In fact, courts in this Circuit have consistently and definitively held that where a plaintiff alleges a breach of fiduciary duty that involves either fraud or concealment, the plaintiff shall get the benefit of the six-year statute of limitations which runs from the date of discovery of the breach. "For a breach of fiduciary duty involving fraud or concealment, the three-year exception for actual knowledge does not apply, and a party has six years from the time it discovers the breach to bring an action." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 919-20 (2d Cir. 1989) (finding the six-year statute of limitations applied to claims that former trustee's breach of fiduciary duty involved "a scheme or artifice to defraud the Funds . . . and concealing and failing to disclose the true amount of [an employer's] employees and their total wages"); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001) (noting that the

"fraud or concealment" provision of § 413 "does not 'toll' the otherwise applicable six or three-year statute of limitations established in 413(1) or (2); rather, it prescribes a separate statute of limitations of six years from the date of discovery.")

The definitive case in the Second Circuit involving the application of the six-year "fraud or concealment" limitations period is *Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001). In *Caputo*, the Second Circuit noted that, although many circuits have conflated "fraud or concealment" into a singular concept of "fraudulent concealment," the terms are distinct and are listed in the statute disjunctively.  *See id*. at 189-90.  Specifically, "fraud" is defined as "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment" and "concealment" is defined as "the act of refraining from disclosure; especially an act by which one prevents or hinders the discovery of something."  *Id*. at 189-90 (citing *Black's Law Dictionary* (7th ed. 1999)).  The *Caputo* Court therefore held that "the six-year statute of limitations should be applied to cases in which a fiduciary:  (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; *or* (2) engaged in acts to hinder the discovery of a breach of fiduciary duty."  *Id*. at 190 (emphasis in original).

Defendant Olivieri's failure to disclose his relationship with Murray and subsequent perjury fall squarely into the second category delineated by the *Caputo* Court. Plaintiffs have expressly alleged that Olivieri wrongfully concealed and affirmatively prevented Plaintiffs from discovering his breaches of fiduciary duties by, among other things, giving false testimony. (*See* FAC ¶¶ 58-61.)  Plaintiffs have also alleged that they exercised due diligence in attempting to pursue the claims asserted in the FAC but were prevented from doing so due to Defendants' *active concealment*.  (FAC ¶ 62.)  Plaintiffs are therefore clearly entitled to take

advantage of the longer six-year statute of limitations from the date of their discovery of Olivieri's breach. *See also Caputo*, 267 F.3d at 190 ("Congress intended to provide a lengthier statute of limitations where the fiduciary breached its duty by misrepresenting or failing to disclose a material fact that ERISA required the fiduciary to disclose, most likely because such violations would be difficult to discover."). The nature of Defendant Olivieri's breach of fiduciary duty—particularly, his failure to disclose material information to the Funds (FAC ¶¶ 65, 92-94, 202-04)—surely had the effect of concealing and preventing discovery of the scope, nature and purpose of his involvement with Murray from other trustees, and is therefore perfectly appropriate for the six-year statute of limitations pursuant to *Caputo*. Plaintiffs, indeed, did not discover Olivieri's breach of fiduciary duties until after his indictment was unsealed on August 5, 2009. (FAC ¶¶ 52-53.) By instituting this action just two years later, the Funds are well within the applicable six year statute of limitations.[4]

Furthermore, Plaintiffs have met this Circuit's requirements for pleading fraud with the particularity necessary to take advantage of the six-year discovery limitations period. To satisfy the requirement of pleading fraud with particularity under Fed. R. Civ. P. 9(b), a plaintiff must "specify the time, place, speaker and content of the alleged misrepresentations" and "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a

---

[4] *See also Katzenberg v. Lazzari*, 406 F. App'x 559, 562 (2d Cir. 2011) (noting it is "well settled that fraud and concealment are distinct concepts with respect to 29 U.S.C. § 1113" and holding that a fiduciary's knowing misrepresentation of the value of the plan and removal of assets without authority qualified for six-year discovery limitations period); *Burke v. Bodewes*, 250 F. Supp. 2d 262, 268-69 (W.D.N.Y. 2003) (finding plaintiffs pleaded sufficient facts to bring their claims within the six-year fraud or concealment provision where plaintiffs alleged that defendants had knowledge of, yet failed to disclose, the failing financial condition of the fund and granting plaintiffs leave to replead fraud with particularity); *Broga v. Northeast Util.*, 315 F. Supp. 2d 212, 222-24 (D. Conn. 2004) (finding plaintiffs may pursue claims under the six-year statute of limitations because they properly alleged fraud or concealment); *Harris v. Finch, Pruyn & Co., Inc.*, No. 1:05-CV-951, 2008 WL 2064972, at *4 (N.D.N.Y. May 13, 2008) (finding plaintiffs' claims timely under the six-year "fraud or concealment" statute where defendants made alleged misrepresentations knowingly, intentionally or recklessly).

reckless disregard for the truth." *Caputo*, 267 F.3d at 191 (internal citations omitted). In the FAC, Plaintiffs unambiguously identify Defendant Olivieri's misrepresentation: on or about December 18, 2007, Defendant Olivieri gave false testimony when he denied his relationship with Murray (FAC ¶¶ 60, 93), for which Olivieri was convicted after a jury trial for perjury. (FAC ¶ 52.) *See* 18 U.S.C. § 1621 ("Whoever . . . having taken an oath . . . that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury . . ."). Accordingly, Plaintiffs have identified the time, place, speaker and content of the misrepresentation and, through his conviction for perjury, it is clear that Defendant Olivieri's misrepresentation was in fact fraudulent and he had knowledge of its falsity.[5] *See also Frulla v. CRA Holdings Inc.*, 596 F. Supp. 2d 275, 288 (D. Conn. 2009) (finding that plaintiff met the standard of pleading fraud with particularity so as to come under six-year discovery statute of limitations where plaintiff "adequately pled fraud in the form of knowing omissions of material facts" and "[f]or each alleged breach of fiduciary duty . . . [plaintiff] alleged the defendant's knowledge, his failure to speak, the context in which he failed to speak, and the content that he was allegedly responsible for disclosing . . .").

> Based on the foregoing, it is clear Olivieri's statute of limitations argument is without merit.

---

[5] Even if, however, the Court finds that the allegations in the FAC fail to plead fraud with the requisite particularity, Plaintiffs respectfully request leave to further amend the Complaint. *See Caputo*, 267 F.3d at 191 (finding it an abuse of discretion to deny a request for leave to amend where the plaintiff specifically requests "leave to amend in the event that the court is inclined to dismiss on Rule 9(b) grounds . . . unless the plaintiff has acted in bad faith and the amendment would be futile."); *see also Wasley Prods., Inc. v. Bulakites*, 2006 WL 3834240, at *6 (D. Conn. May 31, 2006) (granting leave to file a second amended complaint pursuant to discovery provision of fraud or concealment limitations period where plaintiffs alleged they did not discover fraudulent conduct until later and nature of defendants' misconduct concealed itself).

B.   Even Apart From the Extended "Fraud or Concealment" Statute of Limitations, Plaintiffs' Claims Are Timely.

Even assuming, *arguendo*, that Plaintiffs are not entitled to the benefit of the six-year statute of limitations for fraud or concealment, Plaintiffs' claim against Olivieri for breach of fiduciary duty still falls within the statute of limitations.  Contrary to Defendant Olivieri's assertions, Plaintiffs did not have "actual knowledge"—as that term has been interpreted by the Second Circuit—of Defendant Olivieri's breach of fiduciary duty until after Olivieri's indictment was unsealed on August 5, 2009.  (FAC ¶ 52.)  Moreover, the last action by Olivieri that was part of his breach occurred in December 2007, the date on which he committed perjury.  (FAC ¶¶ 60, 92-94.)  In either case, therefore, whether calculated six years from the last action constituting part of the breach or three years from Plaintiffs' actual discovery, Plaintiffs' claim, which was filed on August 5, 2011, is clearly timely pursuant to Section 413 of ERISA.

1.   Plaintiffs Did Not Have Actual Knowledge of Olivieri's Breach Until After His Indictment Was Unsealed on August 5, 2009.

Olivieri incorrectly and unconvincingly argues that Plaintiffs had knowledge of Defendant Olivieri's breach of fiduciary duty in May 2006 because his "dealings with James Murray were disclosed" when he abstained from a vote regarding On Par and Murray.  (Olivieri Br. 3, 16.)  Olivieri fails to cite any legal support for his assertion that this constituted "actual knowledge" of Olivieri's breach of fiduciary duty.  Olivieri fails, moreover, to allege (and if he did so it would be false) that at any point during or outside the meeting he disclosed the details or extent of his dealings with Murray, which in fact form the basis of the Funds' claim against him for breach of fiduciary duty.  In addition, the extrinsic evidence that Olivieri proffers in support of his argument (which, as discussed *supra*, pp. 7-10, should not be considered by the Court on a motion to dismiss) is unavailing.  Olivieri attaches a portion of the testimony of Stuart GraBois

to his motion, mistakenly claiming that it demonstrates the Funds had actual knowledge of Olivieri's relationship with Murray. (*See* Olivieri Br. 16; Ex. G.) The excerpted testimony, however, reveals that Olivieri abstained from the vote but did not provide any reason as to why he was abstaining. (*See* Ex. G 158:12-14.) This type of "disclosure," if one can even call it that, does not come close to the "actual knowledge" required to trigger the three-year statute of limitations.

In the Second Circuit, a plaintiff has "actual knowledge" of a breach or violation only "when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo*, 267 F.3d at 193. In fact, "[i]t is not enough that plaintiffs had notice that something was awry; plaintiffs must have had specific knowledge of the actual breach of duty upon which [they sued]." *Id.* (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987)). By merely abstaining from a vote, and neither explaining why nor ever disclosing to the other trustees the full extent of his relationship with Murray, Olivieri never disclosed the facts necessary to give Plaintiffs actual knowledge of his breach of fiduciary duty. *See also McConnell v. Costigan*, No. 00 Civ. 4598, 2002 WL 313528, at *7 (S.D.N.Y. Feb. 28, 2002) ("Defendants must . . . show that plaintiffs knew not only of the relevant events that occurred, but also that those events supported a claim for breach of fiduciary duty or violation under ERISA."); *Broga v. Ne. Util.*, 315 F. Supp. 2d 212, 222 (D. Conn. 2004) (finding plaintiffs, who did not bring claims until they read about similar claims against the same fiduciaries in the newspaper, did not have "actual knowledge" until they had specific knowledge that elevated their suspicion to actual knowledge); *Stavola v. Ne. Util.*, 453 F. Supp. 2d 584, 590 (D. Conn. 2006) (explaining that to prove an affirmative defense of statute of limitations under the actual knowledge provision, defendants must show that plaintiff "knew

not only of the relevant event that occurred, but also that those events supported a claim for breach of fiduciary duty or violation under ERISA";constructive knowledge should be rejected under *Caputo*).

Most importantly, the Funds have properly alleged that they did not have "actual knowledge" of Olivieri's fiduciary breaches until after his indictment was unsealed on August 5, 2009, when it was apparent that Olivieri had lied about his relationship with Murray. (FAC ¶ 53.) Taking the allegations in the FAC as true, which the Court must on a motion to dismiss, by filing this claim on August 5, 2011, Plaintiffs fall well within the three year statute of limitations period running from their actual knowledge of the facts constituting the breach. *See Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2010 WL 935442, at *8 (S.D.N.Y. Mar. 16, 2010) (refusing to dismiss claim on statute of limitations on a Rule 12(b) motion where plaintiffs plead their knowledge of the facts underlying their claims was acquired within the three-year window allowed by ERISA).

      2.    <u>Olivieri's Last Act Constituting Part of His Breach of Fiduciary Duty Occurred Within Six Years of Plaintiffs' Filing of the Complaint.</u>

Contrary to Olivieri's contention that his last breach of fiduciary duty occurred no later than July 2005 (and therefore that Plaintiffs' claim filed after July 2011—on August 5, 2011—is untimely), Plaintiffs have clearly alleged that Olivieri's perjury in December 2007 was part, a significant part in fact, of his breach of fiduciary duty. (FAC ¶¶ 65, 86, 93-94.) Thus, Plaintiffs undoubtedly satisfy the six year statute measured from the date of the last breach or opportunity to cure an omission. *See* 29 U.S.C. § 1113.

A review of Defendant Olivieri's papers reveals how he misconstrues the dates of his breaches of fiduciary duty in an attempt to argue that the Funds' claim is untimely. Specifically, Defendant Olivieri asserts that his last breach of fiduciary duty occurred in July

2005 when he approved the On Par payment plan without disclosing his financial relationship with Murray (namely that Olivieri had an outstanding loan to Murray of $730,000). (Olivieri Br. 15.) However, as Plaintiffs have alleged and Defendant Olivieri ignores, he remained a trustee of the Funds and continued to owe the Funds an ongoing fiduciary duty until August 2009. (FAC ¶ 19.) As part of his fiduciary duties to the Funds, Defendant Olivieri was required to provide accurate and truthful information to the Funds, including any information regarding any acts of malfeasance or nonfeasance. (FAC ¶ 65.) Olivieri violated this duty when he committed perjury on December 18, 2007, by denying his association with Murray (and thereby again concealing his involvement and financial relationship with Murray), and by denying knowledge of and his involvement in Murray's efforts to continue operating his business through another contractor. By his perjured testimony, for which he was ultimately convicted, Olivieri blatantly deprived the Funds of information regarding his and Murray's conduct, in violation of his fiduciary obligations. (FAC ¶¶ 60, 92-94.)

Because Olivieri's false testimony in December 2007 could be considered either "the last action which constituted a part of the breach or violation" or "the latest date on which [he] could have cured the breach or violation" (*i.e.*, his earlier failure to disclose his relationship and involvement with Murray), the Funds' claim for breach of fiduciary duty filed on August 5, 2011 is well within the six year statute of limitations. *See* 29 U.S.C. § 1113(1).

III.   **THE RICO CONSPIRACY CLAIM AGAINST OLIVIERI IS NOT BARRED BY THE STATUTE OF LIMITATIONS.**

Olivieri also argues that the Plaintiffs' RICO conspiracy claim against him is untimely. His sole contention is that prior to August 5, 2007, Plaintiffs "were aware of the injury, namely losses due to On Par's delinquent contributions," since they had sued On Par and Murray in July 2006 for delinquencies and since Murray was indicted in May 2006 for "his and On Par's embezzlement." (Olivieri Br. 14.) Olivieri therefore argues that the FAC should be dismissed – as a matter of law at the pleading stage – because the four-year RICO limitations period supposedly began in 2006 and expired before Plaintiffs sued in 2011. But this argument ignores the well-settled law that a statute of limitations will be *tolled* when a defendant's concealment of material facts precludes the plaintiff from discovering the nature of his claim. Here, the FAC pleads that Olivieri and his co-conspirators prevented the Funds from discovering their secret racketeering conspiracy, the crimes in furtherance of it, and the full scope of the resulting injury.

A.   Fraudulent Concealment Tolled the Limitations Period.

In *Rotella v. Wood*, 528 U.S. 549, 120 S. Ct. 1075 (2000), the Supreme Court held that the start of the limitations period for a civil RICO claim is determined by the "injury discovery" rule, so that the claim accrues "[when] a plaintiff knew or should have known of his injury." *Id.* at 553. However, the *Rotella* Court emphasized that "we do not unsettle the understanding that federal statutes of limitations are generally subject to principles of tolling, and where a pattern [of racketeering acts] remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty." *Id.* at 560-561 (internal citations omitted.)

Since *Rotella,* the Second Circuit has confirmed that the civil RICO statute of limitations will be equitably tolled where the plaintiff establishes fraudulent concealment. *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 30 (2d Cir. 2002). To do so, the plaintiff must show that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) the plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Id.* at 36-37. Plaintiffs have well-pleaded facts to establish these elements.

        1.    "Wrongful Concealment of Material Facts" By Defendants is Well-Pleaded.

A plaintiff can establish wrongful concealment "by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim . . . or that the wrong itself was of such a nature as to be self-concealing." *N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988).[6] Moreover, "[u]nder the doctrine of fraudulent concealment, the statute of limitations will be tolled if the plaintiff pleads, with particularity, either active concealment or passive concealment." *Butala v. Agashiwala*, No. 95 Civ. 936, 1997 U.S. Dist. LEXIS 1934, at *16 (S.D.N.Y. Feb. 24, 1997).

Here, Plaintiffs have properly pled both active and passive concealment. Acts of active concealment by Olivieri alleged by Plaintiffs include that (1) Olivieri secretly aided the racketeering conspiracy by introducing Murray to Lawrence Cooley in April 2005, so that

---

[6] *Hendrickson* is an antitrust case, but because equitable tolling is a federal common law doctrine, courts in this and other Circuits have relied on *Hendrickson* in applying fraudulent concealment to the limitations period on RICO claims. *See, e.g., Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) (citing *Hendrickson* and holding that standard tolling exceptions apply to the RICO statute of limitations); *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 346-47 (S.D.N.Y. 2000) (citing *Hendrickson* in holding that RICO plaintiff adequately pled fraudulent concealment by alleging a self-concealing wrong); *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989) (citing *Hendrickson* for proposition that acts of concealment may be imputed to each co-conspirator in analyzing fraudulent concealment of a RICO claim).

Murray could take control of Cooley's company and continue operating while On Par was under investigation (FAC ¶¶ 90, 115); (2) Olivieri lied under oath in December 2007 to conceal his association with Murray and On Par and his participation in Murray's effort to continue operating his business by taking control of another contractor (FAC ¶¶ 60(c), 86); and (3) Olivieri approved a payment plan for On Par in July 2005, knowing that Murray was seeking to take control of another contractor to continue his fraudulent operation (FAC ¶ 91). These are all specific acts of active concealment by Olivieri of both his own and Murray's wrongdoing – essentially, concealing his involvement and participation in Murray's efforts to continue the embezzlement and bribery scheme (see FAC ¶¶ 50, 87) and avoid the consequences of this criminal activity. Had Olivieri not affirmatively concealed this conduct, Plaintiffs could have discovered his participation in facilitating and hiding Murray's wrongdoing within the limitations period.

Plaintiffs have also pled passive concealment by Olivieri. As a long-time trustee of the Funds, Olivieri was their fiduciary. (FAC ¶ 19.) Under the federal common law of equitable tolling, fraudulent concealment "wields special power where, as here, a fiduciary relationship binds plaintiff and defendant . . . ." *Lenz v. Assoc'd Inns & Rests. Co. of Am.,* 833 F. Supp. 362, 372 (S.D.N.Y. 1993). Thus, "when the parties are engaged in a fiduciary relationship, the complaining party can claim the benefit of the fraudulent concealment doctrine even absent an affirmative misrepresentation by the party under the fiduciary duty . . . [i]n such a relationship, fraudulent concealment occurs if the party under the fiduciary duty fails to meet its obligation to inform [the other party] of facts underlying the claim." *Id.*[7] As a trustee, Olivieri

---

[7] Other circuits have also held that a failure to disclose material information tolls the statute of limitations where there is a fiduciary relationship between the parties. *See Conmar Corp. v. Mitsui & Co.,* 858 F.2d 499, 505 (9th Cir. 1988) ("Passive concealment of information is not enough to toll the statute of limitations, unless the defendant had a fiduciary duty to disclose information to the plaintiff.") (citations omitted); *Riddell,* 866 F.2d at 1496 ("where

had a duty to disclose to the Funds whatever he knew about Murray's efforts to evade On Par's obligations to pay contributions to the Funds, as well as his conflict-of-interest financial relationship with Murray and Murray's efforts to continue operating through a front company. (FAC ¶¶ 65, 88, 92, 203.)  Olivieri failed to disclose any of these matters to the Funds, thereby depriving them of material information about a contractor that was cheating the Funds out of millions of dollars.  (FAC ¶¶ 65, 92.)  Olivieri's telling silence in the face of his fiduciary duty to disclose constitutes passive concealment and supports the time-limitations, thereby defeating Olivieri's motion.

Moreover, it is well-settled that where conspiracy is asserted, "affirmative acts of concealment by [one defendant are] attributable to the other defendants as well." *Hendrickson*, 840 F.2d at 1083 (upholding jury verdict rejecting statute of limitations defense due to fraudulent concealment, because certain defendants' acts were admissible against other defendants). *Accord Riddell*, 866 F.2d at 1493 (applying rule "that, at least where the original conspiracy contemplates concealment, or where the concealment is in furtherance of that conspiracy, affirmative acts of concealment by one or more of the conspirators can be imputed to their co-conspirators for purposes of tolling the statute of limitations").

Here, the FAC alleges that numerous defendants, as part of the conspiracy and in an effort to cover it up, engaged in multiple acts of concealment that prevented Plaintiffs from discovering the racketeering conspiracy within the limitations period.  (FAC ¶ 60.)  Perhaps most strikingly, Murray actually *fled the United States* in March 2006 shortly before being indicted (and both he and On Par initially defaulted when the Funds sued them in July 2006 for delinquent contributions).  (FAC ¶¶ 50, 115, 117.)  It is hard to imagine a more obvious endeavor

---

there is a fiduciary duty to disclose information on a particular matter, failure to do so will constitute fraud or fraudulent concealment that tolls the statute of limitations" if the information is material).

to conceal wrongdoing than this flight, and had Murray instead responded to the Funds' collections action, his and On Par's wrongdoing (and Olivieri's participation in it) should have been revealed.  Other co-conspirators also engaged in active concealment.  Defendant Mitchell testified falsely about On Par, (FAC ¶¶ 60(e), 102), and Olivieri's fellow trustees, Defendants Forde and Greaney, and a union official, Defendant Hayes each testified falsely when questioned about other wrongdoing (FAC ¶¶ 60(a), (b), (d), 66, 80, 95, 96).  While the perjury by Forde, Greaney and Hayes related directly to contractors other than On Par, it had the effect of preventing Plaintiffs from discovering the nature of the broad conspiracy and consequently, On Par's involvement in it.  Similarly, Defendant Brennan destroyed documents to conceal wrongdoing related to Murray's participation in the bribery scheme.  (FAC ¶¶ 60(f), 109.)

The cumulative effect of these acts of concealment was to prevent Plaintiffs from discovering material facts about the RICO conspiracy until after indictments were unsealed on and after August 5, 2009.  (FAC ¶ 63.)  And because these acts of concealment were crimes by co-conspirators in furtherance of the conspiracy (and to cover it up), they are imputed to Olivieri to establish fraudulent concealment.  *Hendrickson,* 840 F.2d at 1083.

Finally, the FAC pleads a self-concealing wrong.  As emphasized in *Hendrickson,* "the purpose of the fraudulent-concealment doctrine is to prevent a defendant from 'concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.'"  840 F.2d at 1083 (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349 (1874)); *see also In re Sumitomo Copper Litig.*, 120 F. Supp. 2d at 346-47 (citing *Hendrickson* in holding that RICO plaintiff adequately pled fraudulent concealment by alleging a self-concealing wrong).  Self-concealment is particularly evident where "the enterprise is designed to endure over a period of time" because

"[i]n order to endure, it must remain concealed from the victim." *Hendrickson*, 840 F.2d at 1084.

The FAC sets forth well-pleaded allegations of a racketeering conspiracy designed to deprive the Plaintiffs of contributions for as long as possible through a pattern of bribery, falsification and destruction of records, and perjury. (FAC ¶¶ 47, 49, 58, 60.) Clearly, as the FAC describes, this wide-ranging racketeering conspiracy was intended to endure and, therefore, necessarily remain hidden from the Funds' trustees who were not part of it. Such a scheme does not need to be elaborate in order to be found self-concealing. *See, e.g., Caravella v. Hearthwood Homes, Inc.*, No. 05-1529, 2007 WL 2886507, at *4 (N.D.N.Y. Sept. 27, 2007) (group of homeowners asserted RICO claim against builders for committing fraud in part by improperly installing wells on their properties; court found that the scheme to defraud was self-concealing "because the well was underground and its defects were not readily apparent"). In sum, the Defendants' secret bribes, falsification and destruction of documents and perjury (FAC *passim*) all served to conceal their scheme from the Funds, and leave no apparent evidence of their wrongdoing.

### 2. The Concealment That "Prevented Plaintiffs' Discovery of the Nature of the Claim" is Also Well-Pleaded.

The Defendants' active and passive of concealment, as above described, prevented Plaintiffs from discovering the nature of their RICO conspiracy claim. Plaintiffs' particularized factual allegations establish that the concealment by Olivieri and his co-conspirators, including other Funds trustees, union officials and the bribe-giving employers, had a two-fold effect. First, the concealment prevented Plaintiffs from discovering that the injuries they suffered resulted not merely from certain employers' garden variety evasions of their contribution obligations under collective bargaining agreements, but rather from a pervasive

pattern of bribery by those employers in a scheme with corrupt union officials and Plaintiffs' own trustees. Indeed, as the FAC sets forth in detail, the concealment prevented Plaintiffs from beginning to discover the full breadth of the 22-defendant racketeering conspiracy until its existence and many of the underlying plethora of criminal acts were first revealed in August 2009. (FAC ¶¶ 50-57.) Only when these facts came to light could Plaintiffs have known of the massive injury caused by an unlawful scheme accomplished through the criminal acts of many individuals – including trustees like Olivieri who also disregarded their fiduciary obligations to the Plaintiffs.

Second, with regard to Olivieri himself, the concealment prevented Plaintiffs from learning of *his* illicit role. As described, Plaintiffs could not have known that Olivieri (while personally indebted to Murray), (FAC ¶ 88), had enabled Murray to continue his criminal conduct and participation in the conspiracy. For example, when Murray was in danger of having On Par shut down and Murray could see that his and On Par's liability for cheating the Funds might be ferreted out, Olivieri secretly facilitated Murray's desire to sustain his operation through a concealed takeover of Commercial Drywall. (FAC ¶ 115.) Olivieri's multiple acts of active and passive concealment, in combination with the concealment effectuated by numerous other defendants as pled in the FAC, prevented Plaintiffs from knowing of the criminal acts that form the basis of their RICO claims, including their RICO conspiracy claim against Olivieri.

As noted, Olivieri argues that the RICO conspiracy claim should be found untimely because Plaintiffs brought an ERISA collections action against On Par and Murray in 2006 (FAC ¶ 117), which supposedly establishes that Plaintiffs knew or should have known of their injuries then. This contention is unavailing. The pertinent inquiry is not whether Plaintiffs knew (or should have known) in 2006 of some injury sustained by the Funds, but rather whether

the FAC adequately pleads a limitations-period toll because defendants fraudulently concealed

their RICO-based conspiracy. *See, e.g., Tho Dinh Tran,* 281 F.3d at 36 ("statute of limitations

can be tolled if the plaintiff establishes . . . that there was 'fraudulent concealment' *of the*

*violation.*") (emphasis added).

Moreover, Plaintiffs' collections action against On Par and Murray was far

different than the instant RICO case.  That action, essentially a collections claim brought

pursuant to ERISA against a delinquent employer, alleged relatively straightforward breach of

contract and fraud claims premised on On Par's failure to remit contributions required under the

CBA, and its submission of false reports to help it evade those contractual obligations. (*See*

Declaration of Brian Gardner, dated Feb. 10, 2012, Ex. B.)  The collections action did not allege

the far-reaching criminal conspiracy involving many defendants, and a multitude of criminal

predicate acts, that are the basis for the RICO conspiracy claim asserted here.  Put simply, the

collections action case does not establish as a matter of law that Plaintiffs knew, or should have

known, of the nature of their RICO claims.  Indeed, because Murray fled the country and initially

failed to respond in the collections case, the Plaintiffs were deprived of any opportunity to obtain

discovery from him and thereby possibly learn of facts that might have revealed the RICO

violations.  (FAC ¶ 117.)[8]  Thus, while Plaintiffs had adequate information in 2006 to sue On Par

(and other contributing employers) for defaulting on contractual obligations, the conspirators'

concealment – including Olivieri's – prevented Plaintiffs from learning that this nonpayment was

rooted in a RICO conspiracy entailing bribery and other predicate acts.  Nor could Plaintiffs

---

[8] Olivieri offhandedly disputes the allegation that Plaintiffs were denied the opportunity to obtain information in the collections case, arguing that Murray and On Par belatedly appeared and submitted papers.  (Olivieri Br. at 8, fn. 7) Even putting aside that Plaintiffs' allegations must be taken as true at this juncture, Murray and On Par's "defense" consisted of challenging the entry of a default judgment.  This hardly afforded Plaintiffs an opportunity to discover their RICO claim against Olivieri.

possibly have known of the actual roles played by the co-conspirator defendants in the RICO violations.

Olivieri's additional contention that Plaintiffs "should have known" of the RICO claims once Murray was indicted in May 2006, (FAC ¶ 50), is likewise wrong. The indictment set forth only Murray's criminal conduct, and then, only some of it. Tellingly, Olivieri now does not assert (as he cannot) that the 2006 charges against Murray revealed the bribery of union officials or Plaintiffs' trustees; nor does he contend that it alleged the broad racketeering conspiracy that subsequently came to light involving Olivieri and 21 other defendants that are the basis of the RICO violations. Indeed, Olivieri makes no showing, as would be pertinent here, that Murray's indictment set forth allegations concerning his takeover of Commercial Drywall – or, as the FAC alleges, that *Olivieri* facilitated that takeover. (In fact, Olivieri's name does not even appear in the indictment.)[9] Murray's indictment is not sufficient to find as a matter of law that Plaintiffs should have discovered their RICO claims – and, particularly, Olivieri's role in the RICO conspiracy – in 2006.

       3.    "Due Diligence by Plaintiffs" is Well-Pleaded.

Furthermore, the FAC's allegations establishing active and passive concealment both support tolling because Plaintiffs have adequately pled their due diligence. In particular, Plaintiffs caused audits to be performed, and they brought ERISA collections actions. (FAC ¶¶ 62, 117, 128, 133.) In those actions, Plaintiffs deposed principals of the contractors, where those principals were available to give testimony (Murray was not available, as he had fled the

---

[9] *See* Indictment, *United States v. Murray*, No. 06-443 (S.D.N.Y. May 24, 2006) (Silverstein Declaration, dated March 21, 2012 ("Silverstein Decl.") Ex. 1). The Indictment, unlike the documents attached to the Olivieri Motion, is incorporated by specific reference in the FAC. (FAC ¶¶ 50.) Notably, the Indictment did not charge Murray with bribing union officials and shop stewards, and attempting to influence a trustee of the Funds; these allegations were first set forth in a superseding information filed in January 2009. *See* S2 Information, *United States v. Murray*, No. 06-443 (S.D.N.Y. Jan. 13, 2009) (Silverstein Decl. Ex. 2) (unsealed by court order on July 22, 2011) (similarly incorporated by reference in the FAC at ¶ 50).

country).  (FAC ¶¶ 128, 133.)  Even in hindsight, it is difficult to give any credence to an argument that undertaking audits and filing and prosecuting lawsuits based on then-known information was other than a diligent pursuit by the Funds of perceived claims.  But despite these efforts, the defendants' concerted concealments, including as detailed above and further below, prevented Plaintiffs from learning the true scope and nature of the unlawful conduct now alleged here.

Most significantly with respect to the instant motion, even as Plaintiffs considered and then commenced a collections action against Murray, Olivieri never disclosed to his fellow trustees that he had borrowed more than $700,000 from Murray and aided Murray by facilitating his transfer of operations to a front company.  (FAC ¶¶ 88, 92.)  Compounding the concealment, Plaintiffs (as noted) were unable to take discovery from On Par and Murray due to Murray's flight.  (FAC ¶¶ 117.)  Similarly, as aforementioned, other Defendants frustrated Plaintiffs' ability, despite their diligence, to learn of the scheme.  Forde, Greaney, Hayes and Mitchell each gave false testimony in various contexts, all, except Mitchell, when deposed in the Funds' collections actions (FAC ¶ 60), and contractors who did not flee the country (*i.e.,* the owners of Pyramid and Pitcohn) took the Fifth when deposed by the Funds.  (FAC ¶¶ 128, 133.)  As a consequence, despite their well-pleaded diligent efforts to pursue remedies, Plaintiffs were unable to learn of the RICO violations within the statutory period.

      B.      Olivieri's Time-Bar Defense is Fact-Based and is not a Basis for a Pleadings Dismissal.

Finally, because a statute of limitations defense involving fraudulent concealment is fact intensive, it is particularly ill-suited for resolution on a motion to dismiss, where the allegations are, of course, accepted as true.  *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 320 n.149 (S.D.N.Y. 2009) ("Because this [statute of limitations/fraudulent

concealment] dispute raises an issue of fact, it cannot be resolved at the motion to dismiss stage."). The FAC's detailed factual allegations sufficiently establish fraudulent concealment to toll the statute of limitations at the pleading stage, and Olivieri cannot prevail on his statute of limitations defense as a matter of law at this juncture.

## IV.     THE RICO CONSPIRACY CLAIM IS PROPERLY PLED AGAINST OLIVIERI.

Olivieri further argues that the RICO conspiracy claim against him is deficient because (1) the facts alleged regarding his participation in the conspiracy supposedly occurred "after the racketeering activities had concluded," and (2) his "agreement" to participate in the conspiracy is not adequately alleged. Neither of these contentions withstands a review of the actual content of the FAC, nor finds support in applicable law.

### A.     Olivieri Participated In a Continuing Conspiracy To Support, Sustain and Conceal The Racketeering.

#### 1.     Olivieri Cites No Case Law Supporting His Argument That the Plaintiffs' Pleading is Deficient.

As an initial matter, Defendant Olivieri cites no case law in support of his argument that the claim must be dismissed because it "alleges only conduct occurring after the alleged racketeering activities" of the other defendants occurred. (Olivieri Br. 17.) Olivieri offers no reason why and no authority even suggesting that the Court must dismiss the FAC if the conduct alleged against Olivieri did not occur concurrently with the conduct of his co-conspirators. Olivieri's argument, moreover, flies in the face of Supreme Court authority. *See Boyle v. U.S.*, 556 U.S. 938, 129 S. Ct. 2237, 2245 (2009) ("[m]embers of [an association-in-fact enterprise] need not have fixed roles; different members may perform different roles at different times.").

2.    The FAC Alleges That Olivieri's Conduct Occurred During the Duration of the Conspiracy.

Olivieri argues that there "is no allegation of any conduct 'during the racketeering activity between 1994 and 2004' which is the basis for alleged [sic] RICO conspiracy" (Olivieri Br. 18), citing to paragraph 161 of the FAC.  That paragraph summarizes the allegations of Plaintiffs' substantive RICO violation against certain defendants, described as the "RICO Participants," under § 1962(c) ("[t]he acts, practices and conduct alleged in paragraphs 156 through 160 above involve numerous acts of racketeering activity occurring between 1994 and 2004 and constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(4)").  However, the RICO *conspiracy* claim under § 1962(d), brought against Olivieri and others, is not limited to that time period; rather, it alleges conduct during the time period and afterwards, designed to perpetuate and cover up the underlying racketeering activities.

The FAC alleges that the RICO conspiracy extended to at least 2007 with respect to Murray, On Par and Olivieri.  (Indeed, as examined further below, it extended even into 2008 with respect to the EMB Defendants and their co-conspirators.)  Thus, the FAC alleges with specificity several actions taken by Olivieri after 2004 intended to support and conceal the wrongdoing by Murray and On Par: (1) in March 2005, Olivieri arranged to keep On Par operating in the face of a shutdown order (FAC ¶ 89); (2) in April 2005, Olivieri introduced Murray to Lawrence Cooley so that Murray could exploit Cooley's dormant company (Commercial Drywall) to continue his illicit activities and complete jobs on which On Par was cheating Plaintiffs out of contributions (FAC ¶¶ 90, 115) (which in fact was ongoing until March 2006 when Murray fled the country (FAC ¶ 115)); and (3) in July 2005, Olivieri approved a payment plan for On Par (FAC ¶ 91), which likewise supported Murray's wrongdoing.  In addition, the FAC alleges that Olivieri, while taking these actions to benefit Murray, accepted a

$730,000 loan from Murray in January 2005 (FAC ¶ 88); and, tellingly, that Olivieri lied at a deposition in December 2007 to cover-up his knowledge of, and involvement in, Murray's takeover of Commercial Drywall  (FAC ¶¶ 60(c), 86.)

As the Supreme Court has held, "[i]f conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." *Salinas v. U.S.,* 522 U.S. 52, 64, 118 S. Ct. 469 (1997).  And, "so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators. *Id.*  Here, the FAC alleges in detail facts showing that Olivieri participated in a conspiracy through the end of 2007 that supported, and furthered, the underlying wrongdoing by Murray and On Par, including by committing perjury when the conspiracy was in danger of being revealed.

Moreover, the FAC flatly contradicts Olivieri's evident contention that his actions are not culpable because they supposedly occurred only after On Par's wrongdoing in cheating Plaintiffs out of contributions.  The FAC alleges that Murray sought Olivieri's aid in the takeover of Commercial Drywall so that jobs on which Murray had been cheating the Funds *at that time* could be completed (FAC ¶¶ 90, 115); thus, it plausibly follows that Olivieri's  introduction to Lawrence Cooley and Commercial Drywall as a front happened in connection with Murray's ongoing criminal activity.  Similarly, the FAC specifically alleges that Olivieri took other steps to ensure that On Par and Murray could continue operating through 2005.  (FAC ¶¶ 89, 90, 115.)

As noted above, Olivieri has – improperly in Plaintiffs' view – premised arguments for dismissal on testimony from Olivieri's criminal case, even though it is outside of the FAC. (*supra*, pp. 7-10, 19-20)  In the event the Court considers that testimony, it might also consider other testimony from Olivieri's criminal case that refutes his present argument.  For example, Murray testified there that he continued to pay carpenters cash without benefits in

2005, concurrently with his furtive operation of Commercial Drywall, making clear that his

racketeering activity coincided with Olivieri's conduct as alleged here.  (Olivieri Trial Tr.,

Silverstein Decl. Ex. 3, at 554-55, 608-09).  In addition, Murray testified that he continued

operating On Par into 2006 and that he bribed Defendant Michael Forde through 2005.  (*Id.* at p.

464-66).[10]  This testimony confirms that Olivieri's conduct alleged here was part of a conspiracy

to continue, support and conceal Murray's racketeering wrongdoing.

B.   <u>Plaintiffs Have Alleged Facts Satisfying the Broad Definition of an "Agreement"<br>For a RICO Conspiracy.</u>

The Second Circuit has long endorsed a broad definition of the "agreement"

element of a RICO conspiracy.

> Assuming that a RICO enterprise exists, the [plaintiffs] must prove only that the
> defendants . . . know the general nature of the conspiracy and that the conspiracy extends
> beyond [their] roles.  In applying this analysis, we need inquire only whether an alleged
> conspirator knew what the other conspirators 'were up to' *or* whether the situation would
> logically lead an alleged conspirator to suspect he was part of a larger enterprise.

*U.S. v. Zichetello*, 208 F.3d 72, 99 (2d Cir. 2000) (citations and quotation marks omitted)

(emphasis added).  Furthermore, "[t]o be convicted as a conspirator, one must be shown to have

possessed knowledge of only the general contours of the conspiracy."  *Id.* at 100.  Thus, "[t]he

[plaintiff] need not prove that a [RICO] conspirator-defendant agreed with every other

conspirator, or knew all the other conspirators, or had full knowledge of all the details of the

conspiracy."  *U.S. v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989).  Importantly, a defendant's

consent to join a conspiracy may be inferred from circumstantial evidence of the defendant's

status in the enterprise or knowledge of the wrongdoing.  *See Fuji Photo Film U.S.A., Inc.*, 640

F. Supp. 2d at 312 n.85 (S.D.N.Y. 2009) (citing *First Interregional Advisors Corp. v. Wolff*, 956

F. Supp. 480, 488 (S.D.N.Y. 1997)).  The FAC easily meets these requirements.

---

[10] *See also*, S2 Information (Silverstein Decl. Ex. 2, at 1-4) (charging Murray with embezzlement of assets of the
Plaintiff Funds and bribery of union officials through 2005).

The FAC alleges that, while Murray and On Par were under investigation for cheating the Funds and therefore in danger of being shut down, Olivieri took steps to facilitate Murray's continued illicit operations. Specifically, it alleges that Olivieri was aware that Murray was under investigation by an investigator appointed by the Court pursuant to a consent decree targeted at rooting out corruption in the Union (FAC ¶¶ 87, 92, 115); and that Murray approached Olivieri first for relief from that investigator's shutdown order, (FAC ¶¶ 89, 115), and then for Olivieri's aid in acquiring control over another corporate entity not under the investigator's scrutiny to enable Murray to continue the improper activities by using that entity. (FAC ¶¶ 90, 115.) Thereafter, when deposed in 2007, Olivieri committed perjury rather than admit to his association with or actions on behalf of Murray. (FAC  ¶¶ 60(c), 86.)

These allegations are strong circumstantial evidence, and the FAC so alleges, that Olivieri was aware of wrongdoing by Murray. (FAC ¶ 87). Taken together, they support an inference that Olivieri not only knew Murray had been bribing the union to avoid contributions to the Funds, but that Olivieri knew of Murray's intentions to continue doing so while operating deceitfully through a front company, and acted to support that purpose. (FAC ¶¶ 90, 115.) The pattern that emerges imputes an improper motive to each individual action taken by Olivieri. That Olivieri was willing to perjure himself is additional evidence that he knew his own actions constituted wrongdoing.

In short, these allegations compel the plausible inference that Olivieri, despite being Plaintiffs' trustee, joined in a conspiracy that furthered Murray's bribery and embezzlement of Plaintiffs' assets. At a minimum, Plaintiffs' allegations certainly suggest that Olivieri knew what Murray "was up to," which therefore amounts to a knowing consent to participate in the conspiracy. *See Morrow v. Black,* 742 F. Supp. 1199, 1208 (S.D.N.Y. 1990)

(holding that where plaintiff identified circumstances indicating conscious behavior by the defendant, it constituted sufficient circumstantial evidence to infer an agreement to violate the RICO statute).

## EMB MOTION

The EMB Defendants make essentially two arguments for dismissal of the Funds' civil RICO conspiracy claim against them: (1) the FAC is deficient because it fails to allege an enterprise in which they were involved or to allege a connection to the conspiracy engaged in by their co-defendants, and is also deficient in regard to RICO's continuity requirement; and (2) the Funds' claim is barred by the doctrine of *in pari delicto*.

## I.   THE FAC PROPERLY PLEADS RICO CONSPIRACY AGAINST THE EMB DEFENDANTS.

The EMB Defendants' arguments on the sufficiency of Plaintiff Funds' RICO conspiracy claim misconstrue the FAC – both as to the RICO-based conspiracy scheme generally, and as to the factual allegations asserted against the EMB Defendants specifically – and their motion is undermined by applicable case law.  As an initial matter, the EMB Defendants claim that "this Court has stricter than normal pleading requirements for RICO claims." (EMB Br. 5.)  To the contrary, case law holds that Plaintiffs need only satisfy Fed. R. Civ. P. 8(a). *First Interregional Advisors Corp.*, 956 F. Supp. at 488 ("notwithstanding the [defendants'] claims to the contrary, the pleading of a [§ 1962(d) conspiracy claim] . . . is measured under the standards of Fed. R. Civ. P. 8(a),"); *RD Mgmt. Corp. v. Samuels*, No. 02 Civ. 4876, 2003 WL 21254076, at *5 (S.D.N.Y. May 28, 2003) ("In pleading the element of 'enterprise,' the plaintiff need satisfy only the notice pleading requirements" of Fed. R. Civ. P. 8(a).).  While the detailed allegations contained in the FAC would satisfy even the EMB

Defendants' erroneously claimed "stricter" requirements, the FAC readily meets the governing Rule 8(a) standard.[11]

A.     An "Enterprise" Involving the EMB Defendants is Well-Pleaded.

The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Courts in [the Second] Circuit construe the enterprise element of RICO liberally." *RD Mgmt. Corp.*, 2003 WL 21254076, at *5 (citing *U.S. v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir. 1989)). Notably, moreover, for a RICO *conspiracy* under § 1962(d), the Second Circuit has held recently that "the establishment of an enterprise is not an element of the RICO conspiracy offense." *U.S. v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011). In any event, as the FAC does here, establishing an enterprise is often the basis for showing a conspiracy. *See id.* at 75 n.4. As demonstrated here, the FAC's allegations establishing an association-in-fact enterprise including the EMB Defendants shows their involvement in the RICO conspiracy pled against them.

As the Supreme Court has stated, "an association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. U.S.*, 556 U.S. 938, 129 S. Ct. 2237, 2244 (2009) (citing *U.S. v. Turkette,* 452 U.S. 576, 583 (1981)) (internal quotations omitted). Generally, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."

---

[11] The EMB Defendants cite *Bell v. Hubbert*, No. 95 Civ. 10456, 2006 U.S. Dist. Lexis, 94547 (S.D.N.Y. Jan. 8, 2007), and *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514 (S.D.N.Y. 2001) to support their contention. (EMB Br. 5.) Neither decision holds that RICO claims are generally subject to "stricter than normal pleading requirements." In *Bell*, the Court dismissed a *pro se* pleading by a serial plaintiff for failing to allege acts constituting "racketeering activity" within the definition of the RICO statute and failing to allege a cognizable injury. In *Nasik*, the Court applied the stricter pleading standard of Fed. R. Civ. P. 9(b) because the plaintiff alleged predicate acts of mail and wire fraud. Here, in contrast, the EMB Defendants fail to identify any requirement to plead with Rule 9(b) particularity, or explain why Plaintiffs fail to meet the standard.

*Boyle*, 129 S. Ct. at 2244.  "As we said in *Turkette*, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose . . . [m]embers of [such a] group need not have fixed roles; different members may perform different roles at different times . . . nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence."  *Id.* at 2245.

Here, Plaintiffs have alleged that "[f]rom approximately 1994 to 2004 and as recently as 2007-2008, [all 22 defendants in this action] were active participants in unlawful racketeering conspiracies and criminal acts that unlawfully defrauded the Funds of millions of dollars in contributions owed by contractors under their CBAs." (FAC ¶ 47.)  The racketeering conspiracies and criminal acts included contractors paying bribes to union officials in order to facilitate the non-payment of required contributions to the Funds under the applicable CBAs. (FAC ¶ 47.)  The FAC therefore describes an enterprise with longevity that existed for the purpose of enriching the contractors paying the bribes (like the EMB Defendants) and the union officials/trustees who received them, accomplished through these corrupt relationships, and at the expense of the Funds which were denied the contractually-required contributions.  All of these defendants were part of the association-in-fact enterprise.

For the EMB Defendants in particular, the FAC alleges that Defendant Brian Hayes accepted bribes from an EMB employee (co-defendant Matthew Kelleher) paid on their behalf.  (FAC ¶¶ 99, 134, 135, 138, 139.)  This conduct was precisely the same as the alleged bribes paid to Hayes by other, similar contractors and their principals (such as Turbo Enterprises, Pitcohn Construction Enterprises, and Pyramid Construction Associates).  (FAC ¶¶ 95, 100, 135.)  Indeed, the FAC, taken as a whole, alleges a far-reaching scheme where numerous union officials were corrupted by similar contractors operating in a discrete industry (Turbo, Pyramid,

On Par, Pitcohn, EMB) to violate similar requirements in their respective CBAs through the same course of illicit conduct undertaken over a long time period.

In addition, the FAC properly sets forth the requirements for an association-in-fact enterprise: first, there was a purpose, shared generally by the conspirators, to facilitate the evasion of contractors' obligations under their CBAs through bribery of union officials and other crimes (FAC ¶¶ 1, 47); second, as to the EMB Defendants themselves, the FAC alleges a relationship among the EMB Defendants and Hayes (FAC ¶¶ 99, 134, 135, 138); and third, the enterprise persisted long enough to permit the EMB Defendants to bribe Hayes repeatedly. (*Id.*) Moreover, Hayes is alleged – for a common purpose – to have had similar relationships with numerous other defendants who also were associates of the enterprise, (FAC ¶¶ 95, 100), a fact that the EMB Defendants need not have known to be members of the association-in-fact enterprise. *See Rastelli*, 870 F. 2d at 828. In short, the FAC's allegations properly establish the EMB Defendants' role in an enterprise for Plaintiffs' RICO conspiracy claim.[12]

B.      The EMB Defendants' "Agreement" Is Well-Pleaded.

The EMB Defendants' terse contention that the claim against them fails because their "agreement" with co-defendants is not pleaded is also unavailing. As noted previously, a plaintiff need not prove that a RICO defendant conspirator "agreed with every other conspirator, or knew all the other conspirators, or had full knowledge of all the details of the conspiracy," and a defendant's consent to join a conspiracy may be inferred from circumstantial evidence of knowledge of the wrongdoing. (*Supra,* pp. 36 citing cases)

---

[12] The time period of the EMB Defendants' alleged conduct, which occurred later than the bribery involving other contractors, does not contradict their participation in the enterprise. As the Supreme Court has emphasized, "different members [of a RICO enterprise] may perform different roles *at different times*[.]" *Boyle*, 129 S. Ct. at 2245 (emphasis added).

Nonetheless, the EMB Defendants argue, relying solely on one case, that a RICO conspiracy violation requires "an agreement to commit the predicate acts." (EMB Br. 6.) However, the Supreme Court has since rejected the argument that § 1962(d) requires the commission of, or agreement to commit, two predicate acts by the defendant. *See Salinas*, 522 U.S. at 63. In fact, in reviewing the contemporary understanding of conspiracy law, the Court observed that "[o]ne can be a conspirator by agreeing to facilitate only some of the acts leading to a substantive offense." *Id.* at 65. In *Salinas,* the Court found that there was ample evidence to support a § 1962(d) conviction when the defendant "knew about and agreed to facilitate [a] scheme" whereby his boss accepted numerous bribes, even if the defendant himself did not accept or agree to accept two bribes. *Id.* at 66.

Here, the FAC alleges sufficient facts to establish that the EMB Defendants knew about and agreed to facilitate the scheme to pay bribes to Hayes in order to evade their contribution obligations under their CBA, a scheme for their benefit, carried out by their own employee, Kelleher.[13] (*See* FAC ¶ 99, 134, 135, 138.) That the EMB Defendants may have been unaware that other contractors had also bribed Hayes (and other union officials) for the same purpose does not make them any less a part of the conspiracy. *See Rastelli*, 870 F. 2d at 828.[14]

---

[13] In particular, Plaintiffs have alleged facts clearly indicating that, as owners and principals of EMB, M. Batalias and E. Batalias knew that their agent and employee Kelleher bribed Hayes on their behalf to allow EMB to pay carpenters off the books, and thereby cheat the Funds, for their personal enrichment. (*See* FAC ¶ 99, 134, 135, 138.)

[14] The EMB Defendants assert that a plaintiff must plead participation in the "operation or management" of the enterprise. That contention misstates the law. While a criminal conviction for a substantive RICO violation under § 1962(c) requires that the defendant have taken some part in directing the enterprise's affairs, *see Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), "[n]o such requirement exists under *Section 1962(d).*" *U.S. v. Zichetello*, 208 F.3d 72, 99 (2d Cir. 2000) (emphasis in original). Equally unavailing is the EMB Defendants' assertion that "section 1962(c) speaks separately" of a RICO "person" being distinct from the enterprise. (EMB Br. 5 n.2.) Aside from the fact that an "enterprise" is not even an element of a § 1962(d) claim (*see Applins*, 637 F. 3d at 75), the only case the EMB Defendants cite, *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994), involved a claim under § 1962(c) claim, not a § 1962(d) claim for RICO conspiracy. In any event, the Supreme Court has substantially narrowed *Riverwoods*, explaining that "circumstances in which a corporate employee, acting within the scope of his authority, allegedly conducts the corporation's affairs in a RICO-forbidden way" satisfies the distinctness rule. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). The FAC surely meets this distinctness requirement. (FAC ¶¶ 99, 134, 135, 136, 138.)

C.    "Continuity" is Also Well-Pleaded.

Finally, the EMB Defendants argue that the FAC fails to allege a sufficient

pattern of racketeering to state a RICO claim against them because the alleged conduct lacks

"continuity." There is no dispute that the FAC alleges (a) a pattern of racketeering, premised on

numerous related predicate acts, spanning more than a decade, which unquestionably satisfies the

continuity requirement of § 1962(c), and (b) a conspiracy to carry out and further the

racketeering activity, in violation of § 1962(d). (FAC *passim.*) The FAC alleges, with regard to

the EMB Defendants particularly, their involvement in the enterprise and conspiracy, and their

consent to participate in it (FAC ¶¶ 134-37). Pursuant to Supreme Court authority and decisional

law in this Circuit, co-conspirators who did not commit sufficient predicate acts to be included in

the § 1962(c) violation are not entitled to dismissal from the § 1962(d) claim.

Significantly, the Supreme Court in *Salinas* emphasized the broad scope of a

RICO conspiracy claim under § 1962(d). *Salinas* rejected a defendant's argument that his RICO

conspiracy conviction should be reversed because the jury was not instructed that "he must have

committed or agreed to commit two predicate acts himself." 522 U.S. at 63. Relying on the

statutory language, the Court emphasized that § 1962(d) contains "no requirement of some overt

act or specific act." *Id.* The Court held:

> It makes no difference that the substantive offense under § 1962(c) requires two or more
> predicate acts. The interplay between subsections (c) and (d) does not permit us to
> excuse from the reach of the conspiracy provision an actor who does not himself commit
> or agree to commit the two or more predicate acts requisite to the underlying offense.

*Id.* at 65. Thus, while allegations of conduct over 2 years may be required to establish continuity

in the pattern of racketeering to state a § 1962(c) claim, the *Salinas* court repeatedly emphasizes

that "[a] person . . . may be liable for conspiracy even though he was incapable of committing

the substantive offense[,]" and that "one can be a conspirator by agreeing to facilitate only some

of the acts leading to the substantive offense." *Id.* at 64-65. The Defendant's RICO conspiracy conviction in *Salinas* was upheld because, even though he did not commit the underlying offense, "he knew about and agreed to facilitate the scheme." *Id.* at 65.

Similarly, in *Zichetello*, this Circuit, in dispensing with the "operation or management" requirement for § 1962(d) claim, reiterated that "[a] defendant can be guilty of conspiring to violate a law even if he is not among the class of persons who could commit the crime directly." 208 F.3d at 99. Finally, this Circuit in *Applins* emphasized that "a RICO conspiracy charge need not specify the predicate or racketeering acts that the defendants agreed would be committed." 637 F.3d at 81. Thus, the EMB Defendants' argument that the FAC failed to properly plead continuity as to the predicate acts by the EMB Defendants because they occurred in 2007-2008, (EMB Br. 8), rings hollow – if specific predicate acts do not need be pled to sustain a § 1962(d) RICO conspiracy, it necessarily follows that pleading continuity of predicate acts is not necessary.[15]

The EMB Defendants' argument is particularly weak given the FAC's allegations that the EMB Defendants and their employee and agent Kelleher conspired with Hayes, who also took bribes from a number of contractors over a number of years as a member of the racketeering enterprise and conspiracy. (FAC ¶¶ 99, 100, 134, 135, 138.) Thus, Hayes engaged in the substantive § 1962(c) violation, and the EMB Defendants are alleged to have conspired, and committed, acts which support that substantive offense, thereby meeting the broad standard enunciated in *Salinas* and *Zichetello*. In addition, the EMB Defendants' acts served the same purpose and had the same victim as the conduct alleged against other contractors who bribed

---

[15] It is important to note that the requirements to establish a § 1962(d) claim continue to evolve 14 years after *Salinas*, with courts continuing to find that certain formal requirements of a § 1962(c) claim do not apply to a conspiracy claim. *See, e.g., Applins*, 637 F. 3d at 75.

Hayes, namely to enrich themselves by depriving the Funds of required contributions. (FAC ¶¶ 95-98, 100.)

*Fuji Photo Film U.S.A., Inc. v. McNulty* is also instructive and illustrative. 640 F. Supp. 2d 300 (S.D.N.Y. 2009). The Court there dismissed plaintiff's substantive RICO claim against certain defendants because continuity was not sufficiently alleged. However, that failure did not result in complete dismissal for those defendants because "the Complaint still alleges that [these defendants] engaged in a RICO conspiracy in violation of 18 U.S.C. § 1962(d)" and the substantive RICO claims "[were] not dismissed as to all defendants." *Id.* at 319-20 & n.147.

The EMB Defendants ignore this evolving body of RICO law, and rely principally on a prior Supreme Court decision, *H.J. Inc. v. Northwest Bell Tel. Co.,* 492 U.S. 229 (1989). Their reliance is misplaced. In *H.J.,* the Supreme Court held only that the plaintiff had adequately pled continuity where the plaintiff alleged that the defendant corporation (through its employees and officers) had paid numerous bribes and other things of value to multiple defendant utility commissioners over a period of six years. The Court did not establish a minimum requisite period of continuity, and in fact reversed and remanded a lower court decision dismissing all defendants by looking to whether continuity was properly alleged with respect to the conduct of only certain defendants. *H.J.,* 492 U.S. at 250.[16]

---

[16] The few other cases the EMB Defendants cite also do not support their contention. (EMB Br. 7-8.) For example, in *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.,* 303 F. Supp. 2d 432, 448 (S.D.N.Y. 2004), both substantive RICO claims and a § 1962(d) claim were dismissed against two defendants because the only claims against them were mail and wire fraud that failed to meet Rule 9(b) requirements; the dismissal was not based on lack of continuity to the racketeering pattern. In both *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 180-81 (2d Cir. 2004), and *Int'l Brotherhood of Teamsters v. Carey,* 163 F. Supp. 2d 271, 280-81 (S.D.N.Y. 2001), the court dismissed the § 1962(c) claims against *all* defendants because the plaintiffs did not establish continuity for those claims against any defendant, and then the § 1962(d) claims were dismissed since no substantive claim remained against any defendant. Here, as noted, the substantive RICO claim is, without dispute, well-pleaded against numerous defendants, including Hayes who is specifically linked in a pattern of racketeering to the EMB Defendants and others. (FAC ¶¶ 47, 95-100.)

**II.    THE FUNDS' CLAIMS AGAINST THE EMB DEFENDANTS ARE NOT
         BARRED BY *IN PARI DELICTO*.**

          Contrary to the EMB Defendants' meager argument, the Plaintiff Funds' claims

against the EMB Defendants for civil conspiracy under RICO are not barred by the doctrine of *in

pari delicto*.  The EMB Defendants fail to point to any specific wrongdoing by any of the

Plaintiffs, and even if they had done so, Plaintiffs have alleged sufficient facts to bring

themselves within the "adverse interest" exception *in pari delicto*, making dismissal at this stage

of the proceedings patently inappropriate.

          A.      There is no Basis to Apply *In Pari Delicto*.

          To successfully apply *in pari delicto* to bar Plaintiffs' claims, the EMB

Defendants must show that Plaintiffs were active, voluntary participants in the RICO conspiracy

and that Plaintiffs' wrongdoing with respect to the conspiracy is at least equal to their own.  *See,

e.g.*, *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 332 (S.D.N.Y. 2010) (citing *BrandAid Mktg. Corp. v.

Bliss*, 462 F.3d 216, 218 (2d Cir. 2006)); *see also Chem. Bank v. Stahl*, 655 N.Y.S.2d 24, 25

(N.Y. App. Div. 1st Dep't 1997) (affirming lower court's refusal to dismiss claim on the basis of

*in pari delicto* "which requires immoral or unconscionable conduct that makes the wrongdoing

of the party against which it is asserted at least equal to that of the party asserting it").

          The EMB Defendants have failed to identify any specific wrongdoing on the part

of Plaintiffs related to Plaintiffs' RICO conspiracy claim against them; rather, they have just

summarily and vaguely alleged that the District Council of Carpenters, which, in fact, is not a

Plaintiff in this action, has "historically been characterized" by "systematic fraud and

malfeasance." (EMB Br. 9.)  *In pari delicto* only applies when the plaintiffs' alleged

wrongdoing is equal to the defendants with respect to the *same transaction*.  *Cf. Official Comm.

of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1154-55 (11th Cir. 2006)

(holding that the application of *in pari delicto* to federal statutes depends in part on "the plaintiffs' active participation in the violation *vel non*" and finding that trustee of bankruptcy estate could not bring RICO claim against other members of the RICO conspiracy where the allegations in the complaint made it clear that the estate was an active participant, if not the leader, in the RICO enterprise). Here, putting any unrelated past wrongdoing aside, as required by the doctrine, the FAC repeatedly pleads that the Plaintiffs were not participants in and did not know of the racketeering conspiracy at issue, and that the Funds were, in fact, an enterprise (as defined by RICO) hijacked by the defendant, former trustees to carry out their criminal scheme. (FAC ¶¶ 53-65.)

      B.     <u>Even If *In Pari Delicto* Applied, the FAC Fits Squarely Within the Adverse Interest Doctrine.</u>

Furthermore, even if the EMB Defendants were able to show that Plaintiffs were active participants in the instant RICO conspiracy, which they cannot, under New York law, the doctrine of *in pari delicto* is subject to an adverse interest exception in cases where an agent defrauds the principal for his or her own benefit and to the detriment of the principal. *See Lee*, 720 F. Supp. 2d at 332; *Symbol Techs., Inc. v. Deloitte & Touche, LLP*, 888 N.Y.S.2d 538, 543-44 (N.Y. App. Div. 2nd Dep't 2009) (reversing lower court's dismissal of claim on *in pari delicto* grounds where the amended complaint contained sufficient allegations that members of the corporation's senior management committed accounting fraud for their own benefit "thereby triggering the adverse interest exception"). Specifically, "[u]nder New York law, the doctrine of *in pari delicto* is subject to the 'adverse interest' exception" which is a "method by which a plaintiff corporation can demonstrate that its agent's actions should not be imputed to it. " *Symbol Techs.*, 888 N.Y.S.2d at 542. Although the adverse interest exception to *in pari delicto* is narrow, it is fully applicable "where the insider's misconduct benefits only himself or a third

party; i.e., where the fraud is committed *against* a corporation rather than on its behalf."

*Kirschner v. KPMG LLP*, 14 N.Y.3d 446, 466-67 (N.Y. 2010) (emphasis added). Accordingly,

involvement by the Funds' former trustees (Defendants Forde, Greaney and Olivieri) in the civil

RICO conspiracy cannot be imputed to the Plaintiffs in this case as the conspiracy's main

objective was to embezzle money from the Funds for the benefit of the conspirators.[17]

Finally, the EMB Defendants argue that the Funds' claim can be dismissed when

"the application of the *in pari delicto* doctrine is plain on the face of the pleadings." (EMB Br.

9.) In actuality, however, the opposite is plain on the face of the pleadings here as Plaintiffs have

specifically pled that they were uninvolved in the RICO conspiracy and that it enriched only the

defendant-conspirators, at the expense of the Funds. (FAC ¶¶ 53-65.) As such, Plaintiffs' claim

against the EMB Defendants cannot be dismissed at this stage of the proceedings. *See, e.g.*,

*Wilson v. Toussi*, 260 F. Supp. 530, 539-40 (E.D.N.Y. 2003) (noting that it is "unclear whether

[*in pari delicto*] may properly be applied to civil RICO claims" and that based on a 12(b)(6)

standard the Court cannot conclude "at this point in the litigation that the actions of any portion

of the named [p]laintiffs or asserted class warrant application of . . . *in pari delicto*" where

certain allegations in the amended complaint indicated that plaintiffs were not aware of various

fraudulent documents produced in connection with the alleged conspiracy).

## CONCLUSION

For the reasons detailed above, the Plaintiff Funds respectfully submit that the

Olivieri and EMB Motions should be denied in their entirety. To the extent, if any, that the

Court determines to dismiss any claim in the FAC against Defendant Olivieri or the EMB

---

[17] *See also Kirschner*, 14 N.Y.3d at 466 (holding that there is a legal presumption that agents communicate information to their principals "except where the corporation is actually the agent's intended victim"); *Sacher v. Beacon Assocs. Mgmt. Corp.*, 27 Misc. 3d 1221(A), 2010 WL 1881951, *14 (N.Y. Sup. Ct. Apr. 26, 2010) (denying motion to dismiss claim for *in pari delicto* because "there is an exception to the rule of imputed knowledge when the agent is engaged in a scheme to defraud the principal.").

Defendants, the Plaintiff Funds respectfully request, and the Court should grant, Plaintiffs leave to amend the FAC.

Dated:  New York, New York.
       March 21, 2012

                  Respectfully submitted,

                  KAUFF MCGUIRE & MARGOLIS LLP

By:  _____
        Harlan J. Silverstein (HJS-4114)
        Raymond G. McGuire (RGM-7626)
        Elizabeth O'Leary (EO-9323)

950 Third Avenue
Fourteenth Floor
New York, NY  10022
(212) 644-1010

- and -

STILLMAN & FRIEDMAN, P.C.
425 Park Avenue
New York, NY
212-223-0200

Of Counsel: Scott Himes