UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND and NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS APPRENTICESHIP,
JOURNEYMAN RETRAINING, EDUCATIONAL
AND INDUSTRY FUND, by their trustees, FRANK
SPENCER, DOUGLAS J. MCCARRON, JOHN
BALLANTYNE, PAUL TYZNAR, PAUL O'BRIEN,
KEVIN M. O'CALLAGHAN, CATHERINE
CONDON, DAVID MEBERG, BRYAN WINTER and
JOHN DELOLLIS,

                              Plaintiffs,

                    -against-

MICHAEL FORDE, JOHN GREANEY, JOSEPH
OLIVIERI, BRIAN HAYES, MICHAEL MITCHELL,
FINBAR O'NEILL, K.A.F.C.I., MICHAEL BRENNAN,
TURBO ENTERPRISES, INC., GERARD MCENTEE,
PYRAMID ASSOCIATES CONSTRUCTION CORP.,
JAMES DUFFY, BRIAN CARSON, JOSEPH RUOCCO,
JOHN STAMBERGER and MICHAEL VIVENZIO,

                              Defendants.

Case No. 11-Civ.-5474

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT JOSEPH OLIVIERI'S MOTION TO DISMISS THE COMPLAINT**

SULLIVAN GARDNER PC
Brian Gardner
7 East 20th Street
New York, New York 10003
*Attorneys for Defendant
Joseph Olivieri*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ………………………………………………. 1

ARGUMENT …………………………………………………………………….. 2

POINT I
PLAINTIFFS FAIL TO STATE A CLAIM AGAINST OLIVIERI
BASED ON THE DELINQUENCIES OWED BY ON PAR……..……... 2

   A. The Documents Offered on the Motion are Properly Considered ………. 2

   B. The 2009 Settlement Agreement and Satisfaction of Judgment …………. 3

   C. The Order of No Criminal Restitution ……………...………………….. 4

   D. Joint and Several Liability is Not Appropriate for the Other Losses…….. 6

POINT II
THE PLAINTIFFS' CLAIMS ARE TIME BARRED ……………………. 6

   A. The Civil RICO Claim is Time Barred as Equitable Tolling
      Does Not Apply Here ………………………………..……………………. 6

   B. The ERISA Fiduciary Duty Claim is Time Barred ……..…………....… 11

POINT III
PLAINTIFFS FAIL TO STATE A CIVIL RICO
CONSPIRACY CLAIM.……………………………………………………... 13

CONCLUSION ……………………………………………………………... 16

Defendant Joseph Olivieri submits this reply memorandum of law in further support of his motion to dismiss the Plaintiffs' First Amended Complaint.[1]

**PRELIMINARY STATEMENT**

By this motion, Olivieri moves to dismiss the Second and Seventh Claims for Relief, the only causes of action asserted against him by Plaintiffs. Both claim damages against Olivieri that arise solely out of the delinquencies allegedly owed by On Par to the Plaintiffs. As the Plaintiffs have already recovered all alleged delinquencies from On Par, and Olivieri is not alleged to have any other basis for liability, the claims must be dismissed as against Olivieri.

In addition, regardless of the sufficiency and propriety of the damages allegations, the claims are both time barred. The Second Claim, asserting civil RICO conspiracy liability is barred by the four year statute of limitations, and is not saved by the Plaintiffs' argument for equitable tolling. For example, Plaintiffs' own representations in the Complaint and in the opposition memorandum are that they were fully aware of all the information they needed to sue in August 2009, well within the original statute of limitations. As such, even if the alleged wrongful concealment had occurred, (which we strongly dispute), it had no effect on Plaintiff's ability to timely file suit. Accordingly, equitable tolling, even were it to apply, does not save the Complaint. The Seventh Claim, asserting an ERISA claim for breach of fiduciary duty is time barred by application of 29 U.S.C. §1113(1), as the last act or omission directed to the Plaintiffs occurred more than six years prior to the filling of this action, and the "fraud or concealment" discovery exception is not applicable.

---

[1] Plaintiffs include Trustees of the New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Annuity Fund and New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund ("Plaintiffs" or "Funds"). A copy of the First Amended Complaint dated November 21, 2011 ("Complaint") is annexed as Exhibit A to the Declaration of Brian Gardner submitted with the initial motion papers. All references used herein follow the usage in the initial moving papers.

1

Finally, the Plaintiffs' allegations in the Second Claim for relief are insufficient on their face to state a cause of action for civil RICO conspiracy liability. Accordingly, for the reasons set forth herein and in the initial moving papers, all claims against Olivieri should be dismissed.

## ARGUMENT

I.  **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST OLIVIERI BASED ON THE DELINQUENCIES OWED BY ON PAR**

On its face, the Complaint's allegation of damages arising from On Par delinquencies is directly contradicted by the Plaintiffs' prior legal positions and statements contained in a public documents filed in related cases specifically cited in the Complaint. In response to Olivieri's motion, the Plaintiffs do not contest that these documents are valid but resort to parsing words in an attempt to obscure what is self-evident. The essential fact remains that Plaintiffs have already satisfied their claims for all of On Par's delinquent contributions, and an audit conducted by the Funds own forensic accountant determined that $4,292,487.00 represented the total amount of On Par's fringe benefit liability, which amount was recovered. Any claims against Olivieri arising from alleged On Par delinquencies[2] must be dismissed as the Complaint fails to state a claim for these damages that is plausible on its face.

A.   The Documents Offered on the Motion are Properly Considered

At the outset, Plaintiffs' contention that the documents offered with the motion to dismiss should not be considered by the Court is meritless. All documents referred to were filed in, and integral to, the legal proceedings cited in the Complaint. They are properly considered on this motion to dismiss.

In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), "courts routinely take judicial notice of documents filed in other courts." *Kramer v.*

---

[2] No amount is alleged to be owed by Murray's conduct separate from On Par.

2

*Time Warner*, 937 F.2d 767, 773, 774 (2d Cir. 1991).[3] The 2009 Settlement agreement and Satisfaction of Judgment are part of the On Par Civil Case and the sentencing proceedings are part of the Olivieri Criminal Case, both referenced in the Complaint as involving the same factual underpinnings of this case. The documents and prior proceedings are relied on for their legal effect and not for the truth of the matter asserted therein. It is the fact that the Funds have acknowledged receipt of full payment from On Par in prior litigation that is relied upon. Further, the statements in these other litigation documents are directly contrary to the statements in the Complaint as to the amount due from On Par, rendering such allegations not plausible on their face. The Second Circuit in *Kramer* elaborated on the policy reasons for considering such a document on a motion to dismiss. *Kramer*, 937 F.2d at 774. Speaking of a SEC filing that was alleged to have been legally deficient, the court stated that if they could not consider the publicly filed SEC document, "complaints that quoted only selected and misleading potions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure. Foreclosing resort to such documents might lead to complaints filed solely to extract nuisance settlements." *Id.*

Alternatively, should the court decline to consider these documents, we request that the motion be treated as one for summary judgment, and dismiss the complaint on that basis.

B.    The 2009 Settlement Agreement and Satisfaction of Judgment

Plaintiffs claim that "Defendant Olivieri misquotes and misconstrues the On Par Settlement Agreement," yet the quote included in Defendant's moving memorandum is entirely accurate. The sole basis for the Plaintiffs' argument is that Olivieri used the word "the" instead of the word "an" in describing (but not quoting) the 2009 Settlement. Plaintiffs pursue the

---

[3] Courts may "consider matters of which judicial notice may be taken under Fed.R.Evid. 201." Id. This is done "to determine what the documents stated, and not to prove the truth of their contents." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citing *Kramer*, 937 F.2d at 774) (internal quotation and emphasis omitted).

3

dubious explanation that the forensic accountant's findings relied on in the Settlement, "did not represent the ultimate amount owed to the Funds but was only a *part* of a *compilation* of such liability." Opp. Memo at 11 (emphasis in original).  The implication proposed by Plaintiffs is that some additional amount of On Par's liability existed.[4]  However, a Satisfaction of Judgment was given for the Settlement amount, no other explanation is offered by Plaintiffs for the contradiction.

We submit that the compilation is exactly as Defendants describe: a compilation of different employers' delinquent accounts.[5]  The $4,292,487.00 amount cited and acknowledged as true by the Funds in the Settlement Agreement, and for which a Satisfaction of Judgment was provided, represents <u>the</u> "amount of fringe benefit liability" owed by On Par to the Funds, and there is no dispute that this amount has been paid in full.  Any claim based on additional amounts is not plausible on its face and must be dismissed.  Defendants are forced to resort to requesting that the Court ignore the undisputed reality in favor of vague implications in the Complaint.

C.     The Order of No Criminal Restitution

The Plaintiffs' contend that the failure to order restitution does not establish that the funds have been made whole as to the delinquent contributions from On Par.  The Plaintiffs are incorrect.  While the PSR is filed under seal and cannot be released in full in this proceeding, the fact that no restitution was ordered in the federal criminal case does in fact establish that the Funds have recouped their actual losses from On Par.  Pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. §3663A ("MVRA"), the court "shall order restitution of each victim

---

[4] While Defendants are accused of misquoting the Settlement Agreement, we note that the settlement amount is never referred to as only a "part" of On Par's liability.

[5] The Settlement Agreement described the On Par delinquency of $4,292,487.00 as being "reflected in a compilation of such liability," meaning a list of delinquent accounts of various different employers, and the different amounts each owed to the Funds.  Plaintiffs give no alternative explanation of to the use of the term "compilation" in the Settlement Agreement. Despite being in possession of this information, Plaintiffs offer no alternative explanation, but merely vague implications that the term "compilation" somehow implies additional liability on the part of On Par.  If this was the case, as the Funds are in possession of the referenced compilation itself, the Plaintiffs would have said so explicitly, without hedging or implication or parsing words.

4

in the full amount of each victim's losses as determined by the court." Exhibit A, *infra* at 2; *see also* 18 U.S.C. §3663A; *United States v. Coriaty*, 300 F.3d 244, 253 (2d Cir. 2002) ("the statutory focus on the victim's losses and upon making victim's whole"). In the Olivieri Criminal Case, the court determined loss amounts as to all defendants using the MVRA, based on the racketeering convictions that were obtained against Olivieri's original co-defendants. The Court relied on the Government, and its incorporation of the Funds representation that it had no remaining loss as to On Par, in determining that the Funds had already recouped all of their losses arising out of On Par. Pursuant to the MVRA, if any losses did still remain, it was mandatory for the court to order such payment. The Plaintiff's citation to the case *City of NY v. Pollack*, 03-Civ.-0253, 2006 WL 522462 (S.D.N.Y. Mar. 3, 2006), is unavailing as it related to a state prosecutor's statement, as opposed to a mandatory loss calculation under the MVRA.

      Here, the quotes referred to in the initial moving papers were taken from a presentence report, which findings were undisputedly adopted by Judge Marrero. The Funds take issue with the lack of documentation produced (which is due to the confidential nature of the presentence reports), but do not dispute the circumstances asserted. Regardless, we now attach to the Gardner Declaration, a publically filed sentencing memorandum provided by the Government in the Olivieri Criminal Case. The Government's memorandum cites the mandatory loss calculation that must be done under the MVRA and finds specific loss amounts arising out of certain delinquent employers, but concludes as to On Par that: "no restitution has been imposed on any defendant in this case relating to losses to the Benefit Funds cause by On Par, because the Funds reached a settlement agreement with On Par in or about 2009, pursuant to which On Par paid the Funds $4.5 million <u>to resolve all outstanding loss claims</u>." Gardner Decl. Exhibit A at 7 (emphasis added). This position was then adopted and found by the Court. *United States v.*

5

*Forde, et al.*, No. 08-Cr.-828 (Doc. No. 313). The Funds did not make a request under the MVRA for restitution as to On Par, as none was owed.

D.     Joint and Several Liability is Not Appropriate for the Other Losses

The Plaintiffs argument for joint and several liability under the civil RICO conspiracy and ERISA fiduciary claims is likewise unavailing.  The Plaintiffs are correct in acknowledging that the Second Circuit has not spoken on the availability of joint and several liability in civil RICO suits.  However, where such liability is available, it only extends to those portions of the conspiracy that defendant knew or reasonably should have known he was joining. *See U.S. v. Fruchter*, 411 F.3d 377, 384 (2d Cir. 2005).  Olivieri's conduct is specified to involve solely Murray and On Par, any allegation that he knew about or participated in any other aspect of the alleged civil RICO conspiracy is purely conclusory, without any attempt to clarify or provide any specific allegation.  Further, the allegations of fiduciary breach are alleged against Olivieri wholly separate from the other fiduciary defendants.  There is simply no allegation that Olivieri knew or should have known about the other defendants' alleged fiduciary breaches.  It is apparent from the Complaint that the only liability attributed to Olivieri arose from On Par.

**II.     THE PLAINTIFFS' CLAIMS ARE TIME BARRED**

A.     The Civil RICO Claim is Time Barred as Equitable Tolling Does Not Apply Here

As to the civil RICO claim, the Plaintiffs do not contest that the four year statute of limitations has run, *Agency Holding Corp. v. Malley-Duff & Associations, Inc.*, 483 U.S. 143, 156 (1987), but instead Plaintiffs rely solely on an argument that equitable tolling applies in an attempt to save their untimely claim.

It is well settled that civil RICO claims accrue at the time of "discovery of the injury, not discovery of the other elements of the claim." *Rotella v. Wood*, 528 U.S. 549, 555 (2000);

*Frankel v. Cole*, 313 Fed. Appx. 418 419-20 (2d. Cir. 2009).[6] The court recognized that "a racketeering pattern … might well be complex, concealed or fraudulent, and involve harm to parties wholly unrelated to an injured plaintiff," but found that such considerations did not disturb the injury discovery rule. *Id.* at 559.[7] As the initial Complaint was filed on August 5, 2011, only damages for injuries discovered after August 5, 2007 may be recovered by Plaintiffs. There is no dispute that the injury, On Par delinquencies, was discovered prior to August 5, 2007.

In an attempt to save their claim, the Plaintiffs assert the limited exception of equitable tolling. "In exceptional circumstances, equitable tolling doctrines such as the doctrine of fraudulent concealment may provide some relief from *Rotella*'s stringent injury discovery rule." *Nat'l Group for Communications & Computers Ltd. v. Lucent Technologies Inc.*, 420 F.Supp.2d 253, 264 (S.D.N.Y. 2006). However, the doctrine is extremely limited, and "the burden of demonstrating the appropriateness of equitable tolling lies with the plaintiff." *Id.* at 265.

A plaintiff asserting an equitable tolling argument must show that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) the plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 30 (2d. Cir. 2002). A Plaintiff must "plead each of these elements with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure." *Nat'l Group*, 420 F.Supp.2d at 265

"Equitable tolling arguments are only successful if the fraudulent concealment succeeds in depriving plaintiffs of notice; otherwise every fraudulent concealment claim would result in

---

[6] Describing the reasoning behind an injury discovery rule, the Court stated that "we have been emphatic that the justification for a discovery rule does not extend beyond the injury." *Rotella*, 528 U.S. at 555.
[7] Relying on the investigatory purpose of the statutory civil RICO claim, the Court found that "[a] pattern discovery rule would patently disserve the congressional objective of a civil enforcement scheme parallel to the Clayton Act regime, aimed at rewarding the swift who undertake litigation in the public good." *Id.*

7

tolling." *Koch v. Christie's International PLC*, 785 F.Supp.2d 105, 117 (S.D.N.Y. 2011). "The key inquiry is not whether the plaintiff had all the information available to him, but whether the plaintiff knew enough to sue," *id.*, "within the limitations period." *Tho Dinh Tran 281F.3dat 30.*

The Plaintiffs argument must fail because they affirmatively state that they were on notice of the alleged racketeering acts prior to the expiration of the statute of limitations period. Specifically, Plaintiffs argue that "[t]he cumulative effect of these acts of concealment was to prevent Plaintiffs from discovering material facts about the RICO conspiracy until after indictments were unsealed on and after August 5, 2009." Opp Memo at 27. As the original civil RICO statute of limitations began to run when Plaintiffs discovered the injury in May and June of 2006, and the Plaintiffs concede they had all of the information they needed to sue three years later, they could have, but did not, file a timely suit. Therefore, there can be no dispute that whatever alleged wrongful concealment occurred, it did not "prevent[] plaintiff's discovery of the nature of the claim within the limitations period." *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36-37 (2d Cir. 2002). As such, equitable tolling cannot save the Plaintiffs.

In *Koch*, the court rejected application of equitable tolling where the "Plaintiff has plead no facts to allege that he did not have enough information to sue before [expiration of the statute of limitations in] 2004." *Koch*, 785 F.Supp.2d at 117. Here, the Plaintiffs have affirmatively stated that they knew enough information to sue in August 2009, which was undisputedly prior to the expiration of the 4 year civil RICO statute of limitation, (under any of the proposed limitation calculations). Regardless of the sufficiently of the Plaintiffs' allegations as to wrongful concealment on Olivieri's part, Plaintiff's agree it had no effect on the Plaintiffs' ability to file a timely action. Thus, Plaintiffs undisputedly fail to meet the second required element of equitable tolling, namely: "(2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period." *Tran*, 281 F.3d at 36-37.

8

Moreover, the alleged wrongful concealment by Olivieri does not suffice to trigger application of equitable tolling doctrine in this case. As *Rotella* recognized that by their very nature racketeering enterprises and conspiracies are often "concealed or fraudulent," *Rotella*, 528 U.S. at 555, 559, application of equitable tolling must rely on something more than the alleged wrongful actions constituting the claim. *See Koch v. Christie's International PLC*, 785 F.Supp.2d 105, 117 (S.D.N.Y. 2011) (fraudulent concealment must be directed at plaintiff's notice of the underlying claim, "otherwise every fraudulent concealment claim would result in tolling'"); *see also Nat'l Group*, 420 F.Supp.2d at 267, n. 20 (distinguishing the notion of "self-concealing" wrongs stated in *NY v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988), cited by Plaintiffs here, as pre-dating *Rotella* and not involving civil RICO claims).

The civil RICO conspiracy claim against Olivieri involves an allegation that "Olivieri knew about and agreed to, and did, facilitate the scheme … <u>by aiding Murray in avoiding the consequences of an investigation into On Par's conduct and Murray's bribery</u> of union officials and shop stewards, all in furtherance of a scheme by which Murray embezzled money from the Funds." Complaint at ¶173 (emphasis added). The only instances of alleged fraudulent concealment that the Plaintiffs reference are the exact same conduct that is alleged to constitute the basis for the cause of action itself. Specifically, Plaintiffs allege that Olivieri introduced Murray to Cooley and his company Commercial Drywall, approved a payment plan for On Par, and failed to disclose his separate commercial relationship with Murray, both actively though perjured testimony and passively though non-disclosure. This conduct by Olivieri is not a concealment of other actionable conduct by Olivieri, but rather is the alleged actionable conduct itself. The alleged conspiracy itself arises out of claims of fraudulent concealment. There must be some secondary conduct (after the actionable fraudulent concealment conduct) directed at the

9

plaintiffs for the purpose of preventing plaintiffs from bringing the claims at issue, "otherwise every fraudulent concealment claim would result in tolling." *Koch*, 785 F.Supp.2d at 117.

Furthermore, the Plaintiffs have failed to state any facts as to how the alleged wrongful concealment affected or misdirect the Plaintiffs in their ability to investigate the On Par delinquency.  In particular, they do not claim that the 2007 deposition, conducted as part of a U.S. Attorney's Office investigation, was relied on by them, let alone even known about by them.  Without any affirmative statement that the alleged wrongful concealment was directed at Plaintiffs and actually did prevent Plaintiff's from discovering the nature of their claims, the equitable tolling exception does not apply.

Finally, The Plaintiffs must show that they exercised due diligence "*throughout* the period to be equitably tolled." *Nat'l Group*, 420 F.Supp.2d at 268 (emphasis in original) (citing *Tran*, 281 F.3d at 37).  On this point, the Plaintiffs argue simply that the fact that they sued On Par in 2006 and the fact that they conducted audits constituted due diligence.  Yet, both the audits and the suit against On Par relate only to Murray and On Par, and cannot qualify as due diligence to determine whether any claim existed beyond a standard employer delinquency to the Funds.  Surely, when it was revealed that On Par had several million dollars in delinquent contributions and further that the principal was under indictment, it should have triggered a further investigation of how such a delinquency came about.

Accordingly, the Plaintiffs have not carried their burden, and there is no basis for application of equitable tolling as to Olivieri.  As the Plaintiffs do not dispute that the applicable four year statute of limitations has run their civil RICO conspiracy claim against Olivieri, without the benefit of equitable tolling, the claim must be dismissed.

B.     The ERISA Fiduciary Duty Claim is Time Barred

The Plaintiffs' argument with respect to its ERISA fiduciary duty claim is similar to its argument concerning equitable tolling of its civil RICO claim. It is also similarly unavailing. Plaintiffs argue that an exception to the ERISA fiduciary duty statute of limitations, set forth in 29 U.S.C. §1113 should apply based on Olivieri's alleged "fraud or concealment" of his claimed fiduciary breach.

The Plaintiffs cause of action against Olivieri is premised on the allegation that he breached his fiduciary duty to the Funds when he "failed to inform his fellow trustees" of his involvement with Murray and thereafter aided Murray in his defending the Funds investigation and approving a payment plan for on Par. Complaint at ¶203. By the very nature of the allegations, Olivieri's alleged breaches are grounded in claimed actions taken, coupled with alleged omissions of his involvement with Murray, when he had an alleged obligation to disclose. [8] The relevant actions and omissions alleged in the Complaint occurred in March, April and July of 2005; no further conduct is alleged constituting a breached obligation to the Funds.

Plaintiffs argue in opposition to this motion that Olivieri's deposition testimony in 2007 was the "last act which constituted a part of the breach" or the "latest date on which [he] could have cured the breach or violation." 29 U.S.C. §1113(1). However, the Plaintiffs do not allege any facts or basis as to why this conduct constituted a breach to the Funds. The deposition was taken by the U.S. Attorney's Office as part of an investigation conducted by it. The alleged omissions in the deposition, thereby, were not omissions withheld from, or misrepresentation made to, the Funds. As such, the conduct at the deposition cannot constitute a breach of a fiduciary duty to disclose information to the Funds.

---

[8] Were it not for Olivieri's claimed omission of his involvement with Murray, his actions in defending a member of the Wall and Ceiling Association (of which he was the Executive Director) and approving an initial payment plan, would not be claimed to constitute any alleged actionable breach. It is the action coupled with the omission that constitutes the alleged breach.

11

Accordingly, based on the 29 U.S.C. §1113(1), the Plaintiffs' claims accrued at the latest in July 2005, i.e., on the date of the last alleged action constituting a fiduciary breach (approving the payment plan) under §1113(1)(A), and the last date on which Olivieri could have cured his alleged breach (by disclosing his involvement with Murray prior to the On Par payment plan) under §1113(1)(B).  As this lawsuit was initially filed on August 5, 2011, the Plaintiffs' claims are asserted more than six years after July 2005 and untimely under §1113(1).

Plaintiffs attempt to save their untimely claim by relying on language in §1113 which creates an exception to basic statute of limitations calculation set forth above.  The provision states that the regular calculation applies, "except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. §1113.[9]  The court in *Murphy v. International Business Machines Corp.* recently explained the limited application of this provision, stating: "The ERISA 'discovery' exception for fraud and concealment only applies where a defendant either 'breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/ beneficiary to act to his detriment' or 'engaged in acts to hinder the discovery of a breach of fiduciary duty.'" *Murphy*, Case No. 10-Civ-6055(LAP), 2012 WL 566091, *5 (S.D.N.Y. Feb. 21, 2012) (citing *Caputo*, 267 F.3d at 190).  Further, the *Caputo* court held that "[t]o get the advantage of the six year statute of limitations, the plaintiffs must plead fraud with the requisite particularity." *Caputo*, 267 F.3d at 191 (citing Fed.R.Civ.P. 9(b)).  Plaintiff must "(1) specify the time, place, speaker, and content of the alleged misrepresentations, (2) explain how the misrepresentations were fraudulent, and (3) plead those events which give rise to a strong inference that the defendant had an intent to defraud." *Murphy*, 2012 WL 566091 at *5.

---

[9] The Plaintiffs cite to *Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001), for an interpretation of this provision.  In *Caputo*, the Second Circuit found other Circuit's interpretation unpersuasive and held that instead of encompassing only "fraudulent concealment," the language "fraud or concealment" should be construed "to apply in cases of fraud or fraudulent concealment."

12

Here, the Plaintiffs do not allege any "fraud or fraudulent concealment" on the part of Olivieri with respect to the alleged breaches of fiduciary duty. The Plaintiffs argue that "Olivieri's failure to disclose his relationship with Murray and subsequent perjury" supports application of the discovery exception. However, the failure to disclose his relationship to the Funds is the very breach that is alleged, and thus, is not an action concealing such. Additionally, the deposition testimony consisted of statements that were not made to the Funds, and therefore cannot amount to an omission or misrepresentation to the Funds. To the extent the Plaintiffs have plead fraud with sufficient particularity (which they have not), they have alleged only a misrepresentation to the U.S. Attorney's Office, which resulted in the perjury charge, and not a misrepresentation or omission directed to the Funds with an intent to defraud. Furthermore, as set forth above, there is no indication that the Plaintiffs were even aware of the topics or contents of the deposition at the time it was taken in December 2007, without such knowledge and reliance alleged, the discovery exception cannot be supported by the 2007 deposition. *Id.*

Accordingly, the ERISA fiduciary duty claim is time barred, and without the application of the discovery exception, the Plaintiffs' breach of fiduciary duty claim must be dismissed.

## III. PLAINTIFFS FAIL TO STATE A CIVIL RICO CONSPIRACY CLAIM

The civil RICO conspiracy claim against Olivieri, must also be dismissed because it: (i) alleges only conduct occurring after the alleged racketeering activities had concluded; and (ii) completely fails to allege any facts constituting an agreement. "To establish a RICO conspiracy claim pursuant to § 1962(d), a plaintiff must demonstrate that each defendant 'knew about and agreed to facilitate' a pattern of racketeering activity." *Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*, No. 11 Civ. 7801(PAE), 2012 WL 1231775, *8 (S.D.N.Y. Apr. 12, 2012) (quoting *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir.2003)). "To satisfy this standard, plaintiffs must establish as to each alleged co-conspirator: (1) an agreement to join the

13

conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same." *Continental Petroleum Corp.*, 2012 WL 1231775 at *8 (internal citations omitted); *U.S. v. Snype*, 441 F.3d 119, 142 (2d Cir. 2006)

All of the allegations of Olivieri's conduct occur in March, April and July of 2005, and there is no allegation of any conduct occurring during the "racketeering activity occurring between 1994 and 2004" forming the basis for alleged RICO conspiracy. *Id*. at ¶161. As such, the Complaint alleges a RICO conspiracy claim against Olivieri based on actions occurring after the racketeering activity had ceased, and not based in any way on the underlying bribery activity alleged against the RICO Participants. Thus, all three elements are missing as to Olivieri as plead. If the alleged agreement is after the racketeering activity, then it cannot be "to commit" the act, and one cannot take "an overt act in furtherance." *Snype*, 441 F.3d at 142.

To be convicted as a co-conspirator under RICO section 1962(d), the defendant must have at least known "the general contours of the conspiracy" and have "know[ledge] of, and agree to, the general criminal objective of a jointly undertaken scheme." *U.S. v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011). Here, the Complaint does not allege that Olivieri ever knew of the alleged racketeering activity occurring between 1998 to 2004. As such, he cannot be liable in an alleged conspiracy to undertake the scheme. *Snype*, 441 F.3d at 142 (distinguishing a co-conspirator from an accessory after the fact). The timing alleged makes this an impossibility.

As to the lack of an agreement, "[t]o establish a RICO conspiracy claim pursuant to § 1962(d), a plaintiff must demonstrate that each defendant 'knew about and agreed to facilitate' a pattern of racketeering activity." *Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*, No. 11 Civ. 7801(PAE), 2012 WL 1231775, *8 (S.D.N.Y. Apr. 12, 2012) (quoting *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir.2003)). A plaintiff asserting a civil RICO

conspiracy "must allege specifically" facts constituting an agreement. *Hecht v. Commerce Clearing House Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).[10]

The Plaintiff completely fails to allege any facts constituting an agreement by Olivieri to join in a conspiracy to commit the RICO violations alleged in the First Claim. The Plaintiffs discuss case law regarding circumstantial evidence of an agreement, Opp. Memo at 36, but then argue here that there is a "plausible inference" of an agreement. This is not the standard to allege an agreement, and they can cite no case law in support of it. Further, they specifically differentiate between alleging that circumstantial evidence exists regarding Olivieri's awareness of Murray's wrongdoing, and the existence of an agreement, of which at most they claim a "plausible inference". Indeed, there are no facts alleging that Olivieri was even aware of the racketeering conduct described in the First Claim. Plaintiffs' conclusory allegation that "Olivieri knew about and agreed to" the RICO conspiracy is all that is offered, and is an entirely insufficient pleading. As in *Nasik*, the allegations are "devoid of factual assertions concerning the existence and nature of an agreement," and fail to state a claim. 165 F.Supp.2d at 541.

Accordingly, the Second Claim for Relief must be dismissed for failure to state a claim for RICO conspiracy against Olivieri.[11]

---

[10] In opposition, the Plaintiffs cite to *U.S. v. Zichetello*, 208 F.3d 72, 99 (2d Cir. 2000), for the proposition that "one must be shown to have possessed knowledge of only the general contours of the conspiracy." Yet, "mere knowledge of a scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy." *Nasik Breeding & Research Farm v. Merck & Co. Inc.*, 165 F.Supp.2d 514, 541 (S.D.N.Y. 2001); *see also Baisch*, 346 F.3d at 377.

[11] Furthermore, we note that should the motion by the EMB Defendants be granted, the lack of continuity alleged with the RICO Participant Defendants (in which neither the EMB Defendants nor Olivieri are included) and the equitable bar of in pari deleicto would apply equally to Olivieri and form an alternative grounds for dismissal of the Plaintiffs.

## **CONCLUSION**

For all the foregoing reasons, we respectfully request that the Complaint be dismissed in its entirety as against Olivieri, and that the Court order such other and further relief as it deems just and proper.

Dated: New York, New York
April 25, 2012

SULLIVAN GARDNER PC

By: __/s/ Brian Gardner_____
Brian Gardner
*Attorneys for Defendant*
7 East 20th Street
New York, New York 10003
(212) 687-5900
(212) 687-4060 (fax)
bg@sullivangardner.net

16