UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

New York City District Council of Carpenters
Pension Fund, New York City District Council of
Carpenters Welfare Fund, New York City District
Council of Carpenters Annuity Fund, and New York
City District Council of Carpenters Apprenticeship,
Journeyman Retraining, Educational and Industry
Fund, by their Trustees, Frank Spencer, Douglas J.
McCarron, John Ballantyne, Paul Tyznar, Paul
O'Brien, Kevin M. O'Callaghan, Catherine Condon,
David Meberg, Bryan Winter, and John DeLollis,

                            Plaintiffs,

                        -against-

Michael Forde, John Greaney, Joseph Olivieri, Brian
Hayes, Michael Mitchell, Finbar O'Neill, K.A.F.C.I.,
Michael Brennan, Turbo Enterprises, Inc., Terence
Buckley, Pitcohn Construction Enterprises, Inc.,
Gerard McEntee, Pyramid Associates Construction
Corp., James Duffy, EMB Contracting Corp., Michael
Batalias, Elisavet Batalias, Matthew Kelleher, Brian
Carson, Joseph Ruocco, John Stamberger, and
Michael Vivenzio,

                            Defendants.

Index No.  11-5474 (LBS)

ECF Case

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MICHAEL BRENNAN'S MOTION TO DISMISS AND MOTION TO STRIKE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT................................................................................1

FACTS..................................................................................................................1

    BACKGROUND................................................................................................1

    ALLEGATIONS PERTAINING TO BRENNAN .................................................. 2

ARGUMENT .........................................................................................................6

    MOTION TO DISMISS ........................................................................................ 6

       I.      STANDARD OF REVIEW................................................................. 6

      II.     THE ON PAR SETTLEMENT AND RELATED DOCUMENTS DO NOT ABSOLVE BRENNAN FROM HIS JOINT AND SEVERAL LIABILITY TO THE PLAINTIFFS.................................. 6

            A.    Neither the On Par Settlement Agreement nor the Satisfaction of Judgment Should Be Considered On a Motion To Dismiss. ...........................................................7

            B.    Defendant Brennan Misconstrues the On Par Settlement Agreement and Satisfaction of Judgment Which Do Not Release Brennan Nor Establish That The Funds Have Been Made Whole. ..................................... 8

            C.    A Court's Failure to Order Restitution in a Criminal Case Under the Mandatory Victims Restitution Act Does Not Preclude a Separate Award of Civil Damages For Plaintiffs. ......................................................... 9

            D.    Defendant Brennan is Jointly and Severally Liable for All Damages Arising from the Civil RICO Conspiracy......... 11

      III.    THE RICO CONSPIRACY CLAIM AGAINST BRENNAN IS NOT BARRED BY THE STATUTE OF LIMITATIONS. .................12

            A.    Fraudulent Concealment Tolled the Limitations Period....................................................................................12

                 1.    "Wrongful Concealment of Material Facts" By Defendants is Well-Pleaded. .....................................13

                 2.    The Concealment That "Prevented Plaintiffs' Discovery of the Nature of the Claim" is Also Well-Pleaded.............................................................. 17

                 3.    "Due Diligence by Plaintiffs" is Well-Pleaded...........19

             B.    Brennan's Time-Bar Defense is Fact-Based and is not a Basis for a Pleadings Dismissal. ..................................... 20

IV.   THE RICO CONSPIRACY CLAIM IS PROPERLY PLEADED
      AGAINST BRENNAN. ................................................................... 20

      A.   Brennan's Conduct Occurred During the Course of the
           Alleged Racketeering Activities. .......................................... 21

      B.   Plaintiffs Have Alleged Facts Satisfying the Broad
           Definition of an "Agreement" For a RICO Conspiracy. ...... 22

V.    THE FUNDS' CLAIM AGAINST BRENNAN FOR COMMON
      LAW FRAUD IS WELL-PLEADED AND BRENNAN'S
      MOTION TO DISMISS IS MERITLESS. ........................................ 24

MOTION TO STRIKE ........................................................................... 28

VI.   DEFENDANT BRENNAN'S BASELESS MOTION TO
      STRIKE MUST BE DENIED. ........................................................ 28

CONCLUSION ..................................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*,
  957 F. Supp. 2d 1308 (S.D.N.Y. 1997)..........................................................................26, 27

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009)........................................................................6

*Bailey v. Glover*,
  88 U.S. (21 Wall.) 342, 349 (1874) ............................................................................16

*Bankers Trust Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988)........................................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................6

*Berk v. Tradewell, Inc.*,
  No. 01 Civ. 0935, 2003 WL 21664679 (S.D.N.Y. Jul. 16, 2003) ...........................................26

*Butala v. Agashiwala*,
  No. 95 Civ. 936, 1997 U.S. Dist. LEXIS 1934 (S.D.N.Y. Feb. 24, 1997) ..............................13

*Caravella v. Hearthwood Homes, Inc.*,
  No. 05-1529, 2007 WL 2886507 (N.D.N.Y. Sept. 27, 2007)..................................................16

*City of N.Y. v. Pollock*,
  No. 03 Civ. 0253, 2006 WL 522462 (S.D.N.Y. Mar. 3, 2006) ...............................................11

*First Interregional Advisors Corp. v. Wolff*,
  956 F. Supp. 480, 488 (S.D.N.Y. 1997).......................................................................... 23

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
  640 F. Supp. 2d 300 (S.D.N.Y. 2009)........................................................................20, 23

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
  No. 09 Civ. 3655, 2009 WL 5088750 (S.D.N.Y. Dec. 18, 2009)...........................................30

*In re Sumitomo Copper Litig.*,
  120 F. Supp. 2d 328 (S.D.N.Y. 2000).........................................................................13, 16

*Lennon v. Seaman*,
  63 F. Supp. 2d 428 (S.D.N.Y. 1999) (Sand, J.) ...............................................................29, 31

*Lenz v. Assoc'd Inns & Rests. Co. of Am.,*
  833 F. Supp. 362 (S.D.N.Y. 1993) ....................................................................15

*Lipsky v. Commonwealth United Corp.,*
  551 F.2d 887 (2d Cir. 1976)...........................................................................31

*Lynch v. Southampton Animal Shelter Found. Inc.,*
  278 F.R.D. 55 (E.D.N.Y. 2011)......................................................................30

*N.Y. v. Hendrickson Bros., Inc.,*
  840 F.2d 1065 (2d Cir. 1988)..............................................................13, 14, 16

*Natl. Group for Communs. & Computers Ltd. v. Lucent Technologies Inc.,*
  420 F. Supp. 2d 253 (S.D.N.Y. 2006)............................................................16

*Riddell v. Riddell Washington Corp.,*
  866 F.2d 1480 (D.C. Cir. 1989) .................................................................13, 14

*Roe v. City of New York,*
  151 F. Supp. 2d 495 (S.D.N.Y. 2001).............................................................29

*Rotella v. Wood,*
  528 U.S. 549, 120 S. Ct. 1075 (2000).................................................12, 13, 16

*Saphir Int'l, SA v. UBS Painewebber Inc., et al.,*
  807 N.Y.S. 2d 58 (N.Y. App. Div. 1st Dep't 2006) .......................................28

*Tho Dinh Tran v. Alphonse Hotel Corp.,*
  281 F.3d 23 (2d Cir. 2002)........................................................................13, 18

*U.S. v. Harwood,*
  --- F. Supp. 2d ---, 2012 WL 592421 (D.N.M Feb. 13, 2012).........................9

*U.S. v. Rastelli,*
  870 F.2d 822 (2d Cir. 1989)...........................................................................23

*U.S. v. Snype,*
  441 F.3d 119 (2d Cir. 2006)...........................................................................22

*U.S. v. Zichettello,*
  208 F.3d 72 (2d Cir. 2000).............................................................................23

*Universal Acupuncture Pain Servs. v. State Farm Mut. Auto. Ins. Co.,*
  196 F. Supp. 2d 378 (S.D.N.Y. 2002)........................................................25, 26

*Velez v. Lisi,*
  164 F.R.D. 164 (S.D.N.Y. 1995) ....................................................................31

*Zaref v. Berk & Michaels, P.C.,*
    595 N.Y.S.2d 772 (N.Y. App. Div. 1st Dep't 1993) ................................................25

**STATUTES**

18 U.S.C. § 371 ..............................................................................................................22

18 U.S.C. § 1962(c) ............................................................................................. passim

18 U.S.C. § 1962(d) ...............................................................................................21, 24

18 U.S.C. § 3664(j)(2) ...................................................................................................10

29 U.S.C. § 186(c)(5) .......................................................................................................2

ERISA ("Employee Retirement Income Security Act of 1974") 29 U.S.C. § 1002 *et seq.* ....18, 20

MVRA ("Mandatory Victims Restitution Act") 18 U.S.C. § 3663A ..............................7, 9, 10, 12

RICO ("Racketeer Influenced and Corrupt Organizations Act") 18 U.S.C. § 1961 *et seq.* .. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ..................................................................................................26, 27

Fed. R. Civ. P. 12(b)(6) ............................................................................................1, 6, 7

Fed. R. Civ. P. 12(f) ...................................................................................................1, 30

CONG. REC. H1302 (1995) (daily ed. Feb. 7, 1995) .......................................................10

H.R. REP. NO. 104-16 (1995) .........................................................................................10

S. REP. NO. 104-179 (1995) ...........................................................................................10

## PRELIMINARY STATEMENT

Plaintiffs New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Annuity Fund, and New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund, by their Trustees, by and through their attorneys, Kauff McGuire & Margolis LLP, submit this Memorandum of Law in Opposition to Defendant Michael Brennan's Motion to Strike pursuant to Fed. R. Civ. P. 12(f), and Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff Benefit Funds ("Plaintiffs" or the "Funds") commenced this action on August 5, 2011, filing a complaint naming 18 defendants, including Defendant Michael Brennan ("Brennan" or "Defendant"). On November 21, 2011, Plaintiffs filed a First Amended Complaint (the "FAC"). Subsequently, Brennan filed two motions on May 7, 2012, a Motion to Dismiss ("Brennan MTD"), and a Motion to Strike ("Brennan MTS"). For the reasons detailed below, both motions should be denied.[1]

## FACTS

### BACKGROUND

Collective bargaining agreements ("CBAs") in place at all relevant times between the New York City and Vicinity District Council of Carpenters and its constituent local unions ("District Council") and employer-contractors in the construction industry required the signatory employers to make contributions to the Plaintiff Funds for covered work, in order to provide benefits to the thousands of members of the District Council and their families. (FAC ¶¶ 5, 6, 9.)

---

[1] We note that Defendant Brennan's Motion to Dismiss borrows heavily from Defendant Joseph Olivieri's briefs in support of his own Motion to Dismiss. We direct the Court's attention to our Memorandum of Law in Opposition to Motion to Dismiss of Defendant Joseph Olivieri, and Motion to Dismiss of Defendants Michael Batalias, Elisavet Batalias and EMB Contracting Corp., filed on March 21, 2012 ("Plaintiffs' First Opposition Brief"), in which we have addressed many of the arguments Defendant Brennan has included in his motion. We respond again to those arguments, and new arguments made by Defendant Brennan, below.

1

Plaintiff Funds, which directly provide these benefits to workers, retirees, and their families, are jointly-administered employee benefit plans established under § 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5).  (FAC ¶ 5.)

On August 5, 2009, criminal indictments against three trustees of the Plaintiff Funds, six additional union officials, and an associate were unsealed in this District.  The defendants in the criminal case included Defendant Brennan.  (FAC ¶ 52.)  Nine of the defendants pleaded guilty over the next year, including Defendant Brennan, who pleaded guilty to a §1962(c) RICO violation on July 6, 2010.  (FAC ¶ 110.)  As a result of these, and other revelations involving additional defendants in the instant action (FAC ¶¶ 50-57), the Funds discovered that they had been the victims of a racketeering conspiracy and enterprise that encompassed former trustees of the Funds, union officials, their associates, and a number of contractors.  These individuals acted in concert to embezzle the assets of the Funds by carrying out a scheme in which contractors paid bribes to labor representatives, who in exchange for the bribes, failed to enforce applicable CBAs and facilitated the contractors' non-payment of required contributions to the Funds.  (FAC ¶¶ 1, 47.)  The Funds' discovery of the deep corruption detailed in the FAC was delayed by active concealment undertaken by many defendants, and the inexcusable failure to disclose material facts by three of the Funds' own trustees (Defendants Forde, Greaney and Olivieri), including their own participation in the racketeering conspiracy.  (FAC ¶¶ 58-65.)

## ALLEGATIONS PERTAINING TO BRENNAN

With respect to Defendant Brennan, the Funds have alleged, among other things, the following in the FAC:

- Brennan was a member of the District Council, and its constituent local union, Local 608, and from approximately 1994 until approximately December 2004, he was a Local 608 shop steward. (FAC ¶ 25.)

- Shop stewards are the "eyes and ears" of the District Council, including its constituent locals, on each job site. The responsibilities of shop stewards, like Brennan, included accurately recording on shop steward reports the presence of carpenters working under a collective bargaining agreement on his assigned job site and the total number of hours worked by each such carpenter. (FAC ¶¶ 10, 215.) The Trustees of the Funds relied on the accuracy of shop steward reports in determining whether employers were making required contributions to the Funds. (FAC ¶ 216.)

- James Murray ("Murray") is the sole owner of On Par Masonry ("On Par"), a signatory to a collective bargaining agreement with the District Council. (FAC ¶¶ 44-46.)

- From approximately 1994 to 2004 and as recently as 2007 to 2008, Brennan, On Par, Murray, and others were active participants in unlawful racketeering conspiracies and criminal acts that unlawfully deprived and defrauded the Funds of millions of dollars in contributions owed by contractors under their CBAs. The contractors and their principals paid bribes in exchange for union officials' submission of false shop steward reports and other unlawful acts that facilitated the contractors' non-payment of required contributions to the Funds, as specified in their CBAs. (FAC ¶¶ 47, 111.)

- Murray pleaded guilty to criminal charges of embezzling and conspiring to embezzle the assets of an employee benefit fund, bribing and conspiring to bribe union

officials, offering to influence the operations of an employee benefit plan, conspiring to structure, failing to account for and pay taxes to the IRS, and money laundering. The superseding information and plea transcript were kept under seal until July 22, 2011. (FAC ¶ 50.)

- Among the District Council and constituent local union officials participating in the scheme was Defendant Brennan. (FAC ¶ 112.) Brennan conspired with Murray to engage in acts of fraud by deliberately underreporting on shop steward reports the number of hours being worked on the On Par job sites at which he served as shop steward. In particular, between 2000 and 2004, Brennan deliberately submitted shop steward reports that underreported the number of carpenters working and the hours worked on his job sites in exchange for bribes of over $1,000 from Murray and On Par, knowing that such misrepresentations would allow On Par to avoid making required contributions to the Funds. (FAC ¶¶ 114, 217.)

- On July 6, 2010, Brennan pleaded guilty to charges of unlawful racketeering acts in violation of 18 U.S.C. § 1962(c). (FAC ¶ 110.) Brennan admitted in his plea allocution that he, along with others, accepted payments of money and other things of value totaling over $1,000 from On Par from 2000 to 2004. Brennan has admitted that he understood that, in return, On Par would be permitted to violate its CBA by, among other things, not making required contributions to the Funds. Brennan has admitted that he was aware that such conduct was also a violation of the Consent Decree.[2] (FAC ¶ 108.)

---

[2] A Consent Decree prohibiting conduct such as that engaged in by Defendant Brennan and other parties to this action was entered by the District Court in 1994. (FAC ¶ 10.) Under the Consent Decree, and pursuant to a Stipulation and Order entered by the Court on December 18, 2002, *United States v. District Council,* No.

- Brennan further admitted in his plea allocution that he destroyed subpoenaed documents to impede an investigation by Independent Investigator Mack. (FAC ¶¶ 60(f), 109.)  Brennan fraudulently concealed from the Funds their civil RICO claim against him and his associates in the RICO enterprise and conspiracy.  (FAC ¶ 58-64.)

- Brennan's self-enriching conduct in concert with other union officials, former Trustees of the Funds, and contractors, constituted an association-in-fact racketeering enterprise.  (FAC ¶ 152.)  Through this enterprise, contractors embezzled monies from the Funds.  Furthermore, participants in the enterprise conspired among themselves, and with additional parties (including defendants in this case such as Joseph Olivieri, Michael Batalias, Elisavet Batalias, Matthew Kelleher, and EMB Corporation).  (FAC ¶¶ 149-176.)

- The Funds were deliberately misled by Brennan's intentional misrepresentations into overlooking CBA violations.  (FAC ¶ 218.)  The full scope, extent, and details of Brennan's fraud, and the precise amount of money of which the Funds were defrauded as a result of Brennan's own fraudulent conduct, are within Brennan's peculiar knowledge.  (FAC ¶¶ 217, 219.)

- As a result of the actions of Brennan and his co-racketeers and co-conspirators, the Funds suffered, in total, over $9 million in lost contributions from Murray and On Par.  (FAC ¶ 116.)  Over $5.9 million of that amount remains unrecovered.  (*Id.*)  The enterprise and conspiracy in which Brennan participated caused millions of dollars in additional damages to the Funds in lost contributions from other

---

90 Civ. 5722 (S.D.N.Y. Dec. 18, 2002), Walter Mack was appointed Independent Investigator to monitor the District Council's compliance with the Consent Decree.  Mr. Mack served as Independent Investigator through 2005.

4838-3773-3391. 4

contractors, including Pitcohn, Pyramid, Turbo, and EMB.  (FAC ¶¶ 119, 123, 124, 127, 129, 132, 134, 137, 149-176.)

## ARGUMENT

## MOTION TO DISMISS

## I.    STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  To survive a motion to dismiss, a claim must meet only a standard of "plausibility." *Id.* at 564.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "'probability requirement.'" *Id.*

## II.    THE ON PAR SETTLEMENT AND RELATED DOCUMENTS DO NOT ABSOLVE BRENNAN FROM HIS JOINT AND SEVERAL LIABILITY TO THE PLAINTIFFS.

Borrowing almost wholesale from Defendant Joseph Olivieri's memoranda of law with respect to these issues, Defendant Brennan mistakenly argues that the Funds' claims against him for civil RICO, RICO conspiracy and common law fraud are barred by (1) a settlement agreement by and among the Funds, On Par and its owner, Murray (the "On Par Settlement Agreement")—an agreement to which Defendant Brennan is neither a party nor included in by its language, (2) a satisfaction of judgment related to the On Par Settlement Agreement (the "Satisfaction of Judgment"), and (3) the fact that Defendant Brennan was not ordered to pay restitution to the Funds with respect to any losses resulting from On Par's delinquencies, which allegedly proves that the Funds have been "made whole" with respect to any damages related to

On Par. Contrary to Defendant Brennan's arguments, however, none of the foregoing precludes the Funds' claims against him.

First, neither the On Par Settlement Agreement nor the Satisfaction of Judgment should be considered by the Court on a Rule 12(b)(6) motion to dismiss. Second, along with his Co-Defendant Olivieri, Defendant Brennan has misconstrued the On Par Settlement Agreement and Satisfaction of Judgment. A reading of these plainly worded documents leaves no question that they neither release Brennan, nor bar the Funds from recovering damages against him. Third, Defendant Brennan's reliance on the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A (the "MVRA"), is misplaced as it does not bar subsequent civil actions against defendants who have (or have not) been ordered to pay restitution. Finally, having admitted that he agreed to participate in the activity of the RICO enterprise, Defendant Brennan is potentially jointly and severally liable for *all* of the damages arising from the RICO violations alleged by Plaintiffs, not just the damages related to On Par and Murray's conduct.[3] (FAC ¶¶ 108-110.) As such, even if the Funds have been made whole with respect to the delinquencies caused by On Par and Murray, which the Funds surely do not concede and have expressly pleaded with specificity to the contrary in the FAC, (FAC ¶ 116), the Funds may still recover other damages from Brennan arising from the RICO violations.

A.      Neither the On Par Settlement Agreement nor the Satisfaction of Judgment
        Should Be Considered On a Motion To Dismiss.

As a preliminary matter, the Court should not consider Defendant Brennan's argument that the On Par Settlement Agreement and the Satisfaction of Judgment bars potential recovery against him because such "evidence" is not properly before the Court on a motion to

---

[3] Plaintiffs allege that, as a result of Murray's and On Par's conduct, Plaintiffs have been deprived of at least $9,455,283.17 in required contributions, of which at least approximately $5.9 million still has not been recovered. (FAC ¶ 116.)

7

dismiss. Rather than repeat arguments which have already been fully briefed, Plaintiffs refer the

Court to Section I.A. of Plaintiffs' First Opposition Brief.[4]  For the reasons set forth therein, the

Court should decline to consider Defendant Brennan's argument that the On Par Settlement

Agreement and the Satisfaction of Judgment bar Plaintiffs' claims against him, as none of that

extrinsic evidence is properly before the Court.

         B.      <u>Defendant Brennan Misconstrues the On Par Settlement Agreement and
Satisfaction of Judgment Which Do Not Release Brennan Nor Establish That The
Funds Have Been Made Whole.</u>

         Even if the Court were to consider the On Par Settlement Agreement and

Satisfaction of Judgment at this stage of the case, Defendant Brennan's argument that such

documents preclude the Funds' claims against him are misplaced.  First, contrary to Defendant

Brennan's assertions, the On Par Settlement Agreement did not release employees of On Par.

Second, as did his Co-Defendant Olivieri, Defendant Brennan misconstrues the terms of the On

Par Settlement Agreement, which did not purport to represent the entire amount owed by On Par

and Murray, and Plaintiffs have expressly alleged to the contrary in this action.  (FAC ¶ 116.)

         Defendant Brennan's argument that, as an employee of On Par he is covered by

the Funds' release of On Par, is belied by the plain language of the On Par Settlement

Agreement.  The On Par Settlement Agreement was entered into solely by the Funds, On Par and

Murray, and *only* released claims against On Par and Murray, his wife and their heirs, executors,

administrators, successors and assigns.  (*See* Ex. F to Olivieri Br., pp. 1, 3.)  When parties intend

to release employees of an employer, they do so explicitly; it is plain to see here that the Funds

never released any claims they might have against any employees of On Par.  As such, the On

---

[4] Plaintiffs served Defendant Brennan and other *pro se* defendants with a copy of Plaintiffs' First Opposition Brief,
and the corresponding Declaration of Harlan J. Silverstein (with exhibits) via U.S. mail, postage pre-paid, on March
22, 2012.  *See* Certificate of Service of Raymond G. McGuire, dated March 23, 2012, Docket No. 81.

Par Settlement Agreement does not in any way prevent the Funds from seeking additional

recovery from other parties, including Defendant Brennan, who were not released in the On Par

Settlement Agreement.

       As for Defendant Brennan's other arguments regarding the amount owed by On

Par and the effect of the Satisfaction of Judgment, Plaintiffs refer the Court to Section I.B. of

Plaintiffs' First Opposition Brief.

     C.    A Court's Failure to Order Restitution in a Criminal Case Under the Mandatory
            Victims Restitution Act Does Not Preclude a Separate Award of Civil Damages
            For Plaintiffs.

       Defendant Brennan mistakenly argues that the fact that he was not ordered to pay

restitution to the Funds with respect to losses caused by On Par conclusively proves that the

Funds have been made whole with respect to such losses.  (Brennan MTD pp. 6-8.)  Defendant

Brennan's argument relies on provisions of the Mandatory Victims Restitution Act, 18 U.S.C. §

3663A ("MVRA"), requiring a court to order restitution to victims for all losses suffered as a

result of acts for which a defendant has been convicted.  Contrary to his assertion, however, the

MVRA does not preclude victims from later seeking compensation in a civil suit, as the Plaintiff

Funds have done here.  As such, Defendant Brennan's reliance on the MVRA is misplaced.

       First, and foremost, although the MVRA requires a court to order restitution to a

victim in the full amount of the victim's losses, *nothing* in the MVRA prevents a victim who has

not received restitution (or who has not received sufficient restitution) from instituting a separate

civil action for damages, and Defendant Brennan has not cited any authority to the contrary.  One

of the main purposes of making restitution mandatory in the MVRA was to stop courts from

taking a defendant's economic circumstances into consideration when ordering restitution, not to

provide criminal defendants with a defense against later civil actions.  *See, e.g., U.S. v. Harwood,*

9

--- F. Supp. 2d ---, 2012 WL 592421, *15 (D.N.M Feb. 13, 2012) ("Unlike the [Victim and Witness Protection Act], the MVRA does not permit a court to consider a defendant's economic circumstances when it imposes restitution."). *See also* H.R. REP. NO. 104-16, at 4 (1995) ("The court is to determine the amount of restitution based on the full amount of a victim's losses and is not to consider the offender's economic status."); S. REP. NO. 104-179, at 21 (1995) (noting that a defendant's indigence does "not obviate the victim's right to restitution"); 141 CONG. REC. H1302, H1306 (1995) (daily ed. Feb. 7, 1995) (statement of Rep. Hyde, "No longer will the defendant's financial situation take precedence over his victim's. Instead, consideration for the victim is a primary consideration in the sentencing process, just where it belongs."); 141 CONG. REC. H1302, H1307 (statement of Rep. McCollum, "[t]he bill would ensure that restitution is paid in full by requiring that restitution orders be calculated without regard to the offender's ability to pay or the fact that the victim has received or is entitled to receive compensation from some other source.").

Second, and critically important, the MVRA clearly contemplates separate civil actions by victims seeking damages. Section 3664(j)(2) provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in any Federal civil proceeding…" 18 U.S.C. § 3664(j)(2). An examination of this provision's legislative history leaves no doubt that Congress did not intend to force victims to rely solely on court orders of restitution, and in no way sought to preclude victims from pursuing their own civil suits for damages against criminal defendants. *See, e.g.*, S. REP. NO. 104-179, at 21 (1995) (discussing the purpose of § 3664(j)(2) and clarifying that the meaning of the term "same loss" should not include "any later award of civil damages for the injuries not included in the restitution order" because "[t]he committee

believes that an order of restitution in a criminal case should in no way impair the ability of the victim to seek or obtain civil damages for losses arising from the same criminal act, but for which restitution is not awarded."). Therefore, the fact that Defendant Brennan was not ordered to pay restitution to the Funds with respect to any losses caused by Murray and On Par is irrelevant, and provides no bar, to the Funds' current claims against him for RICO violations and fraud. Moreover, as noted above and discussed in more detail below (and in Plaintiffs' First Opposition Brief, pp. 12-14), the Funds have claims against Brennan for millions of dollars in damages beyond the losses caused by On Par (and Murray), further defeating Brennan's arguments.

      D.     <u>Defendant Brennan is Jointly and Severally Liable for All Damages Arising from the Civil RICO Conspiracy</u>.

Even assuming, *arguendo*, that Brennan cannot be held liable for any damages related to On Par and Murray, which is not the case, he is still potentially jointly and severally liable to the Funds for *all* damages arising from the RICO conspiracy in which he was a co-conspirator. Plaintiffs have alleged that Brennan conspired not only with On Par and Murray, but also Forde, Greaney, Olivieri, Hayes, Mitchell, KAFCI, O'Neill, Turbo, Buckley, Pitcohn, McEntee, Pyramid, Duffy, EMB, M. Batalias, E. Batalias, Kelleher, Carson, Ruocco, Stamberger and Vivenzio. (FAC ¶¶ 166-76.) Accordingly, Brennan is potentially liable for any and all damages arising from the acts of all of his co-conspirators, not just On Par and Murray. *See, e.g., City of N.Y. v. Pollock*, No. 03 Civ. 0253, 2006 WL 522462, *17 (S.D.N.Y. Mar. 3, 2006) (holding defendants jointly and severally liable).

Again, rather than restate arguments which have already been briefed, Plaintiffs refer the Court to Section I.C. of Plaintiffs' First Opposition Brief. For the reasons set forth therein, even if Brennan is correct in arguing that the On Par Settlement Agreement, Satisfaction

4838-3773-3391. 4

of Judgment or the MVRA preclude the Funds from recovering damages related to On Par's

delinquencies from Brennan, which they do not, the Funds' claims against Brennan still survive

because he is jointly and severally liable for all damages arising out of the alleged civil RICO

violations plead in this case.

## III.   THE RICO CONSPIRACY CLAIM AGAINST BRENNAN IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

Brennan argues that the Plaintiffs' RICO conspiracy claim against him is

untimely.  His sole contention is that the injury complained of was discovered prior to August 5,

2007, *i.e.,* more than four years prior to the commencement of this action.  (Brennan MTD p. 8.)

Brennan therefore argues that the FAC should be dismissed – as a matter of law at the pleading

stage – because the four-year RICO limitations period supposedly expired before Plaintiffs sued

in 2011.  Brennan's argument, however, ignores the well-settled law that a statute of limitations

will be *tolled* when the RICO defendants' concealment of material facts precludes the plaintiff

from discovering the nature of his claim.  Here, the FAC pleads that Defendant Brennan and his

co-racketeers and co-conspirators prevented the Plaintiff Funds from discovering their secret

racketeering scheme, the crimes in furtherance of it, and the full scope of the resulting injury.

(FAC ¶¶ 58-65.)

### A.   Fraudulent Concealment Tolled the Limitations Period.

In *Rotella v. Wood*, 528 U.S. 549, 120 S. Ct. 1075 (2000), the Supreme Court held

that the start of the limitations period for a civil RICO claim is determined by the "injury

discovery" rule, so that the claim accrues "[when] a plaintiff knew or should have known of his

injury." *Id.* at 553.  However, the *Rotella* Court emphasized that "we do not unsettle the

understanding that federal statutes of limitations are generally subject to principles of tolling, and

where a pattern [of racketeering acts] remains obscure in the face of a plaintiff's diligence in

seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty." *Id.* at 560-561 (internal citations omitted.)

Since *Rotella,* the Second Circuit has confirmed that the civil RICO statute of limitations will be equitably tolled where the plaintiff establishes fraudulent concealment. *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 30 (2d Cir. 2002). To do so, the plaintiff must show that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) the plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Id.* at 36-37. Plaintiffs have well-pleaded facts to establish these elements.

> 1. "Wrongful Concealment of Material Facts" By Defendants is Well-Pleaded.

A plaintiff can establish wrongful concealment "by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim . . . or that the wrong itself was of such a nature as to be self-concealing." *N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988).[5] Moreover, "[u]nder the doctrine of fraudulent concealment, the statute of limitations will be tolled if the plaintiff pleads, with particularity, either active concealment or passive concealment." *Butala v. Agashiwala*, No. 95 Civ. 936, 1997 U.S. Dist. LEXIS 1934, at *16 (S.D.N.Y. Feb. 24, 1997).

---

[5] *Hendrickson* is an antitrust case, but because equitable tolling is a federal common law doctrine, courts in this and other Circuits have relied on *Hendrickson* in applying fraudulent concealment to the limitations period for RICO claims. *See, e.g., Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) (citing *Hendrickson* and holding that standard tolling exceptions apply to the RICO statute of limitations); *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 346-47 (S.D.N.Y. 2000) (citing *Hendrickson* in holding that RICO plaintiff adequately pleaded fraudulent concealment by alleging a self-concealing wrong); *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989) (citing *Hendrickson* for proposition that acts of concealment may be imputed to each co-conspirator in analyzing fraudulent concealment of a RICO claim).

Here, Plaintiffs have properly pleaded both active and passive concealment. Acts of active concealment by Brennan alleged by Plaintiffs include that (1) Brennan deliberately underreported the number of carpenters and number of hours worked at job sites on which he served as a shop steward (FAC ¶¶ 114, 217); and (2) Brennan destroyed subpoenaed documents in order to impede an investigation by a court appointed Independent Investigator, (FAC ¶¶ 60(f), 109.) These are specific acts of active concealment by Brennan of both his own and Murray's wrongdoing – intended to conceal his involvement and participation in Murray's efforts to embezzle money rightly owed to the Funds (*see* FAC ¶¶ 50, 108, 111-116) and avoid the consequences of their criminal activity. Had Brennan not affirmatively concealed this conduct, Plaintiffs could have discovered his wrongdoing and participation in facilitating and hiding Murray's wrongdoing within the limitations period.

Moreover, it is well-settled that where conspiracy is asserted, "affirmative acts of concealment by [one defendant are] attributable to the other defendants as well." *Hendrickson,* 840 F.2d at 1083 (upholding jury verdict rejecting statute of limitations defense due to fraudulent concealment, because certain defendants' acts were admissible against other defendants). *Accord Riddell*, 866 F.2d at 1493 (applying rule "that, at least where the original conspiracy contemplates concealment, or where the concealment is in furtherance of that conspiracy, affirmative acts of concealment by one or more of the conspirators can be imputed to their co-conspirators for purposes of tolling the statute of limitations").

Here, the FAC alleges that numerous defendants, as part of the conspiracy and in an effort to cover it up, engaged in multiple acts of concealment that prevented Plaintiffs from discovering the racketeering conspiracy within the limitations period. (FAC ¶ 60.) Perhaps most strikingly, Murray actually *fled the United States* in March 2006 shortly before being indicted

(and both he and On Par initially defaulted when the Funds sued them in July 2006 for delinquent contributions).  (FAC ¶¶ 50, 115, 117.)  It is hard to imagine a more obvious endeavor to conceal wrongdoing than this flight, and had Murray instead responded to the Funds' collections action, his and On Par's wrongdoing (and Brennan's participation in it) might have been revealed.  Other co-conspirators also engaged in active concealment.  Defendant Olivieri secretly aided Murray in acquiring control of another company so that Murray could continue operating while On Par was under investigation, (FAC ¶¶ 90, 115), and lied under oath to conceal his association with Murray, (FAC ¶¶ 60(c), 86); Defendant Mitchell testified falsely about On Par, (FAC ¶¶ 60(e), 102); and Defendants Forde, Greaney, and Hayes each testified falsely when questioned about other wrongdoing which could have revealed information central to the RICO claims, (FAC ¶¶ 60(a), (b), (d), 66, 80, 95, 96).  While the perjury by Forde, Greaney and Hayes related directly to contractors other than On Par, it had the effect of preventing Plaintiffs from discovering the nature of the broad racketeering conspiracy and scheme, and consequently, On Par's involvement in it.  In addition, Defendants Forde, Greaney, and Olivieri were Trustees of the Funds, and as such owed fiduciary duties to the Funds.  Their failure to fulfill their duties to disclose knowledge of unlawful acts (including their own) being perpetrated against the Funds constituted passive concealment of the RICO scheme and conspiracy.[6]

The cumulative effect of these acts of concealment was to prevent Plaintiffs from discovering material facts about the RICO conspiracy until after indictments were unsealed on August 5, 2009 (and thereafter).  (FAC ¶ 63.)  And because these acts of concealment were

---

[6] Under the federal common law of equitable tolling, fraudulent concealment "wields special power where, as here, a fiduciary relationship binds plaintiff and defendant . . . ." *Lenz v. Assoc'd Inns & Rests. Co. of Am.,* 833 F. Supp. 362, 372 (S.D.N.Y. 1993).  Thus, "when the parties are engaged in a fiduciary relationship, the complaining party can claim the benefit of the fraudulent concealment doctrine even absent an affirmative misrepresentation by the party under the fiduciary duty . . . [i]n such a relationship, fraudulent concealment occurs if the party under the fiduciary duty fails to meet its obligation to inform [the other party] of facts underlying the claim." *Id.*

crimes by co-conspirators in furtherance of the conspiracy (and to cover it up), they are imputed

to Brennan to establish fraudulent concealment. *See Hendrickson,* 840 F.2d at 1083.

Finally, the FAC pleads a self-concealing wrong.[7]  As emphasized in

*Hendrickson,* "the purpose of the fraudulent-concealment doctrine is to prevent a defendant from

'concealing a fraud, or . . . committing a fraud in a manner that it conceal[s] itself until such time

as the party committing the fraud could plead the statute of limitations to protect it.'"  840 F.2d

at 1083 (quoting *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 349 (1874)); *see also In re Sumitomo*

*Copper Litig.,* 120 F. Supp. 2d at 346-47 (citing *Hendrickson* in holding that RICO plaintiff

adequately pleaded fraudulent concealment by alleging a self-concealing wrong).  Self-

concealment is particularly evident where "the enterprise is designed to endure over a period of

time" because "[i]n order to endure, it must remain concealed from the victim."  *Hendrickson,*

840 F.2d at 1084.

The FAC sets forth well-pleaded allegations of a racketeering conspiracy

designed to deprive the Plaintiffs of contributions for as long as possible through a pattern of

bribery, falsification and destruction of records, and perjury.  (FAC ¶¶ 47, 49, 58, 60.)  Clearly,

as the FAC describes, this wide-ranging racketeering conspiracy was intended to endure and,

therefore, necessarily remain hidden from the Funds' trustees who were not part of it.  Such a

scheme does not need to be elaborate in order to be found self-concealing.  *See, e.g., Caravella v.*

*Hearthwood Homes, Inc.,* No. 05-1529, 2007 WL 2886507, at *4 (N.D.N.Y. Sept. 27, 2007)

(group of homeowners asserted RICO claim against builders for committing fraud in part by

---

[7] *Hendrickson* and the applicability of the "self-concealing" standard to RICO claims remains the law in this Circuit. *Cf. Natl. Group for Communs. & Computers Ltd. v. Lucent Technologies Inc.,* 420 F. Supp. 2d 253, 267 n.20 (S.D.N.Y. 2006) (Observing that while *Hendrickson* was not a RICO case, and pre-dated the Supreme Court's *Rotella* decision on the RICO statute of limitations, "recent RICO decisions by district courts continue to suggest that the first element [of the fraudulent concealment standard] may be satisfied where the "nature of the wrong itself' was self-concealing").

4838-3773-3391. 4

16

improperly installing wells on their properties; court found that the scheme to defraud was self-concealing "because the well was underground and its defects were not readily apparent"). Here, in sum, the Defendants' secret bribes, falsification and destruction of documents and perjury (FAC *passim*) all served to conceal their scheme from the Funds, and leave no apparent evidence of their wrongdoing.

> 2. The Concealment That "Prevented Plaintiffs' Discovery of the Nature of the Claim" is Also Well-Pleaded.

The Defendants' active and passive acts of concealment, as above described, prevented Plaintiffs from discovering the nature of their RICO claims until after indictments were unsealed on August 5, 2009 (and thereafter). Plaintiffs' particularized factual allegations establish that the concealment by Brennan and his co-conspirators, including trustees of the Funds, other union officials and the bribe-giving employers, prevented Plaintiffs from discovering that the injuries they suffered resulted not merely from certain employers' garden variety evasions of their contribution obligations under the CBAs, but rather from a pervasive pattern of bribery by those employers in a scheme with corrupt union officials and Plaintiffs' own trustees. Indeed, as the FAC sets forth in detail, the concealment prevented Plaintiffs from beginning to discover the full breadth of the racketeering conspiracy until its existence and many of the underlying plethora of criminal acts were first revealed on August 5, 2009. (FAC ¶¶ 50-57.) Only when these facts came to light could Plaintiffs have known of the massive injury caused by an unlawful scheme accomplished through the criminal acts of many individuals. Thus, Brennan's contention that the RICO conspiracy claim should be found untimely because Plaintiffs knew or should have known of their injuries prior to August 5, 2007 is wholly unavailing.

Defendant Brennan has, moreover, failed to identify the "admissions" in the FAC that indicate that the Plaintiffs had prior notice as to their injury and claim. It appears that Defendant Brennan has borrowed this argument directly from Defendant Olivieri's brief. Olivieri obliquely asserted that Plaintiffs were on notice as to their injuries at least as early as the filing of collections actions against On Par in 2006, (FAC ¶ 117), and on notice as to their RICO claims at least as early as Murray's criminal indictment in 2006, (FAC ¶ 50). As explained again below, neither of these paragraphs of the FAC support dismissal at the pleadings stage. (*See also* Plaintiffs' First Opposition Brief, pp. 37-39.)

At the outset, the pertinent inquiry is not when Plaintiffs knew (or should have known) of some injury sustained by the Funds, but rather whether the FAC adequately pleads a limitations-period toll because defendants fraudulently concealed their RICO-based conspiracy. *See, e.g., Tho Dinh Tran,* 281 F.3d at 36 ("statute of limitations can be tolled if the plaintiff establishes . . . that there was 'fraudulent concealment' *of the violation.*") (emphasis added). Applying this standard, it is apparent that Plaintiffs' collections action against On Par and Murray was much different than the instant RICO case. That action, essentially a collections claim brought pursuant to ERISA against a delinquent employer, alleged relatively straightforward breach of contract and fraud claims premised on On Par's failure to remit contributions required under the CBA, and its submission of false reports to help it evade those contractual obligations. (*See* Declaration of Brian Gardner, dated Feb. 10, 2012, Ex. B.) The collections action did not allege the far-reaching criminal conspiracy involving many defendants, and a multitude of criminal predicate acts, that are the basis for the RICO racketeering and conspiracy claim asserted here. Put simply, the collections action case does not establish as a matter of law that Plaintiffs knew, or should have known, of the nature of their RICO claims.

Indeed, because Murray fled the country and initially failed to respond in the collections case, the Plaintiffs were deprived of any opportunity to obtain discovery from him and thereby possibly learn of facts that might have revealed the RICO violations. (FAC ¶ 117.) Thus, while Plaintiffs had adequate information in 2006 to sue On Par (and other contributing employers) for defaulting on contractual obligations, the conspirators' concealment – including Brennan's – prevented Plaintiffs from learning that this nonpayment was rooted in a RICO conspiracy entailing bribery and other predicate acts. Nor could Plaintiffs possibly have known of the actual roles played by the co-conspirator defendants in the RICO violations.

Similarly, it cannot be shown that the Plaintiffs "should have known" of the RICO claims once Murray was indicted in May 2006. (FAC ¶ 50.) The indictment set forth only Murray's criminal conduct, and then, only some of it. Brennan cannot show that the 2006 charges against Murray revealed the bribery of union officials or Plaintiffs' trustees; nor does he contend that it alleged the broad racketeering conspiracy that subsequently came to light involving Brennan and 21 other defendants that are the basis of the RICO violations. In fact, Brennan's name does not even appear in the indictment.[8] Murray's indictment is not sufficient to find as a matter of law that Plaintiffs should have discovered their RICO claims – and, particularly, Brennan's role in the RICO enterprise and conspiracy – in 2006.

3.     "Due Diligence by Plaintiffs" is Well-Pleaded.

Furthermore, the FAC's allegations establishing active and passive concealment both support tolling because Plaintiffs have adequately pleaded their due diligence. In particular,

---

[8] See Indictment, *United States v. Murray*, No. 06-443 (S.D.N.Y. May 24, 2006) (Silverstein Declaration, dated March 21, 2012 ("Silverstein Decl.") Ex. 1). The Indictment is incorporated by specific reference in the FAC. (FAC ¶ 50.) Notably, the Indictment did not charge Murray with bribing union officials and shop stewards, and attempting to influence a trustee of the Funds; these allegations were first set forth in a superseding information filed under seal in January 2009. *See* S2 Information, *United States v. Murray*, No. 06-443 (S.D.N.Y. Jan. 13, 2009) (Silverstein Decl. Ex. 2) (unsealed by court order on July 22, 2011) (similarly incorporated by reference in the FAC at ¶ 50).

Plaintiffs caused audits to be performed, and they brought ERISA collections actions. (FAC ¶¶ 62, 117, 128, 133.) In those actions, Plaintiffs deposed principals of the contractors, where those principals were available to give testimony (Murray was not available, as he had fled the country). (FAC ¶¶ 128, 133.) Even in hindsight, it is difficult to give any credence to an argument that undertaking audits and filing and prosecuting lawsuits based on then-known information was other than a diligent pursuit by the Funds of perceived claims. But despite these efforts, the defendants' self-concealing criminal conduct and numerous acts of active and passive concealment, including as noted above and further below and detailed in the FAC, prevented Plaintiffs from learning the true scope and nature of the unlawful conduct now alleged here. As a consequence, despite their well-pleaded diligent efforts to pursue remedies, Plaintiffs were unable to learn of the RICO violations within the statutory period.

     B.    <u>Brennan's Time-Bar Defense is Fact-Based and is not a Basis for a Pleadings Dismissal.</u>

       Finally, because a statute of limitations defense involving fraudulent concealment is fact intensive, it is particularly ill-suited for resolution on a motion to dismiss, where the allegations are, of course, accepted as true. *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 320 n.149 (S.D.N.Y. 2009) ("Because this [statute of limitations/fraudulent concealment] dispute raises an issue of fact, it cannot be resolved at the motion to dismiss stage."). The FAC's detailed factual allegations sufficiently establish fraudulent concealment to toll the statute of limitations at the pleading stage, and Brennan cannot prevail on his statute of limitations defense as a matter of law at this juncture.

## IV.    THE RICO CONSPIRACY CLAIM IS PROPERLY PLEADED AGAINST BRENNAN.

       Defendant Brennan further argues that the RICO conspiracy claim against him is deficient because (1) the FAC "[c]ompletely fails to allege any facts constituting an agreement",

4838-3773-3391. 4

and, in a perplexing assertion, (2) that the FAC alleges "only conduct occurring after the alleged racketeering activities concluded."[9] (Brennan MTD p. 9.)  Neither of these contentions withstands a review of the actual content of the FAC, nor finds support in applicable law.

A.    Brennan's Conduct Occurred During the Course of the Alleged Racketeering Activities.

Defendant Brennan's second argument – that the FAC alleges "only conduct occurring after the alleged racketeering activities concluded" – is as confusing as it is baseless. The FAC outlines a racketeering enterprise and conspiracy that began in approximately 1994 and continued until as recently as 2008, and alleges specific conduct by Brennan occurring during that time frame.

The FAC alleges that from "approximately 1994 to 2004 and as recently as 2007 to 2008 [the 22 defendants] were active participants in unlawful racketeering conspiracies and criminal acts that unlawfully deprived and defrauded the Funds of millions of dollars in contributions owed by contractors under their CBAs." (FAC ¶ 47.)  In addition, the FAC alleges (among other things) that between 1994 and 2004, contractors including On Par and Murray conspired to, and did, improperly pay bribes to union officials including Brennan in furtherance of a racketeering enterprise and conspiracy whose purpose included facilitating the embezzlement of Funds assets.  (FAC ¶¶ 149-164 with respect to the §1962(c) claim; FAC ¶¶ 165-176 with respect to the §1962(d) claim.)

Within the context of this enterprise and conspiracy, the FAC alleges that Brennan has admitted that he along with others accepted payments of money and other things of value from On Par between 2000 and 2004, and that in return On Par was permitted to violate its CBA by, among other things, not making required contributions to the Funds.  (FAC ¶ 108.)

---

[9] As discussed below, this second argument suggests that Defendant Brennan has uncritically copied Defendant Olivieri's arguments without consideration of their validity or applicability to his own circumstances.

Brennan further admitted to destroying subpoenaed documents in 2004.  (FAC ¶¶ 60(f), 109.)

All of this conduct falls squarely within the time period within which the FAC alleges

racketeering activities occurred.

In addition to the deficiencies observed above, Brennan's argument also requires

the Court to completely ignore the fact that Brennan has already been found criminally guilty of

violating §1962(c) on the basis of the very actions he now claims did not occur during the course

of that very racketeering enterprise.  (FAC ¶ 110.)

Finally, we note that Defendant Brennan, like Defendant Olivieri, cites no case

law in support of his argument that the claim must be dismissed because it "alleges only conduct

occurring after the alleged racketeering activities" by the other defendants occurred.

B.    Plaintiffs Have Alleged Facts Satisfying the Broad Definition of an "Agreement"
      For a RICO Conspiracy.

Defendant Brennan's argument with respect to Plaintiffs' pleading of the

"agreement" element of the civil RICO claims is equally unpersuasive.[10]  Brennan argues that the

claims "fail to state a claim that [Brennan] acted in concert with other alleged Co-Conspirators."

Brennan asserts that the FAC does not allege that "Defendant met with the other alleged Co-

Conspirators and agreed to participate in a conspiracy to defraud the Funds as a group."

(Brennan MTD p. 10.)  The argument lacks both legal and factual merit.

The Second Circuit has long endorsed a broad definition of the "agreement"

element of a RICO conspiracy.

> Assuming that a RICO enterprise exists, the [plaintiffs] must prove only that the
> defendants . . . [knew] the general nature of the conspiracy and that the conspiracy

---

[10] We note that Defendant Brennan appears to reiterate Defendant Olivieri's Reply Brief by citing to *U.S. v. Snype*, 441 F.3d 119, 142 (2d Cir. 2006), as establishing the standard for adequately pleading whether a defendant "knew about and agreed to facilitate" a pattern of racketeering activity. However, the citation to *Snype* is inapposite as it is not a RICO case, but rather addresses the elements of an 18 U.S.C. § 371 conspiracy charge in the context of a bank robbery case.  As explained below, the FAC alleges facts that clearly satisfy the standards for RICO claims enunciated by the Second Circuit and this Court with respect to Defendant Brennan.

extends beyond [their] roles.  In applying this analysis, we need inquire only whether an alleged conspirator knew what the other conspirators 'were up to' *or* whether the situation would logically lead an alleged conspirator to suspect he was part of a larger enterprise.

*U.S. v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000) (citations and quotation marks omitted) (emphasis added).  Furthermore, "[t]o be convicted as a conspirator, one must be shown to have possessed knowledge of only the general contours of the conspiracy." *Id.* at 100.  Thus, "[t]he [plaintiff] need not prove that a [RICO] conspirator-defendant agreed with every other conspirator, or knew all the other conspirators, or had full knowledge of all the details of the conspiracy." *U.S. v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989).  Importantly, a defendant's consent to join a conspiracy may be inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of the wrongdoing. *See Fuji Photo Film U.S.A., Inc.*, 640 F. Supp. 2d at 312 n.85 (S.D.N.Y. 2009) (citing *First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 488 (S.D.N.Y. 1997)).

Thus, the law in this Circuit does not require the Plaintiffs to plead that Brennan actually met with the other co-racketeers and co-conspirators or even formally 'agreed' to act in concert with them, and the FAC easily meets the applicable standard described above.  (FAC ¶¶ 108, 110.)

Further, to the extent Brennan's argument has any legal support, and it has none, it is fatally undermined by the fact that, as set forth clearly in the FAC, Brennan pleaded guilty to a violation of §1962(c), which necessarily encompasses an admission of agreeing to participate in the activity of the enterprise or conspiracy.  (FAC ¶ 110.)  Specifically, Brennan admitted in his plea allocution that along with others, he accepted money and other things of value from On Par between 2000 and 2004, and that he was aware that On Par would be permitted to violate its CBA by not making required contributions to the Funds.  (FAC ¶ 108.)  This certainly qualifies

as an allegation of an agreement by Brennan, as his plea clearly included admissions of his knowledge of the criminal activity underpinning the racketeering enterprise, its purpose, and the joint participation of other actors in the activity.

Accordingly, like his erroneous argument with respect to the timeframe of the racketeering activity conduct, Brennan's argument with respect to whether the Plaintiffs have properly alleged an agreement requires the Court to completely ignore the fact that he has already been found criminally guilty of a RICO violation, and admitted facts supporting that plea which establish his agreement to participate in activity in furtherance of a conspiracy, the purpose of which he was aware. (FAC ¶¶ 108, 110.)

In sum, as alleged in the FAC, the purpose of this action is to hold the Defendants civilly accountable for criminal acts that caused millions of dollars in harm to the Funds. (FAC ¶¶ 1, 47, 52.) Brennan's motion presents arguments which appear to wholly ignore his criminal conviction and its connection to this case. His actions have had repercussions for him in the criminal case, and they have civil consequences as well. He cannot ignore the recitation of his acts and his admissions in the FAC by ignoring them in his moving papers. The FAC adequately alleges civil RICO claims under §§ 1962(c) and (d) against Defendant Brennan, and his motion to dismiss those claims should be denied.

## V.   THE FUNDS' CLAIM AGAINST BRENNAN FOR COMMON LAW FRAUD IS WELL-PLEADED AND BRENNAN'S MOTION TO DISMISS IS MERITLESS.

Defendant Brennan's sole argument for dismissing Plaintiffs' common law fraud claims against him is that the Plaintiff Funds have allegedly failed to plead fraud with specificity. In support of his motion, Brennan makes a lone conclusory statement that the Funds' allegations lack specificity, overlooking many of the Funds' allegations against him and citing only to Paragraphs 109 and 114 of the FAC. (Brennan MTD pp. 10-11.) In actuality, the FAC contains

a number of specific allegations against Brennan relating to his accepting cash bribes and

defrauding the Funds.  These allegations specify Brennan's fraudulent conduct, his intent to

defraud, and his concealment of his fraudulent conduct.  (*See* FAC ¶¶ 49, 52, 60, 108-110, 112,

114, 215-220.)  Plaintiffs' detailed allegations sufficiently set forth the elements of a claim of

common law fraud and are stated with the requisite particularity.  Defendant Brennan's

conclusory assertion to the contrary is without merit.

To adequately plead a claim for fraud under New York law, a plaintiff must allege

that: (a) a representation of material fact was made; (b) that such representation was false, and

known to be false by the party making it, or was recklessly made; (c) that such representation

was made to deceive and to induce the other party to act upon it; and (d) that the party to whom

the representation was made relied upon it to its injury or damage. *See, e.g., Zaref v. Berk &*

*Michaels, P.C.*, 595 N.Y.S.2d 772, 774 (N.Y. App. Div. 1st Dep't 1993); *Universal Acupuncture*

*Pain Servs. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 387 (S.D.N.Y. 2002).  First,

Plaintiffs have specifically alleged that Brennan knowingly and intentionally made material

misrepresentations of fact when he submitted false and fraudulent shop steward reports between

2000 and 2004 that underreported the number of carpenters working and the hours worked at job

sites for which he was a shop steward.  (FAC ¶¶ 215-217.)  The Funds have further alleged that

such misrepresentations were made with the intent to deceive and that they were intended to and

did induce the Funds to believe that additional monies were not owed to the Funds on the jobs

for which Brennan was the shop steward; as the Funds have further specifically alleged, they

relied on Brennan's representations to their detriment.  (FAC ¶¶ 217-218.)  Brennan's intent to

conceal his acceptance of bribes for filing the false and fraudulent reports that permitted Murray

and On Par to embezzle the assets of the Funds (by not making required contributions to the

Funds) is both patently obvious and clearly pleaded. (FAC ¶¶ 217-219.) As such, Plaintiffs have adequately pleaded a claim of fraud against Brennan.

Furthermore, contrary to Defendant Brennan's assertions, Plaintiffs have pleaded these elements with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure. To satisfy the requirement of pleading fraud with particularity under Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Universal Acupuncture*, 196 F. Supp. 2d at 388 (internal citations omitted). Plaintiffs have unambiguously identified Defendant Brennan's fraudulent misrepresentations: between 2000 and 2004, Brennan deliberately submitted shop steward reports that underreported the number of carpenters working and the hours worked on his job sites. (FAC ¶ 217.) In addition, Plaintiffs have alleged that they specifically relied on the accuracy of the fraudulent shop steward reports submitted by Brennan between 2000 and 2004, which induced the Funds to believe that the appropriate contributions were being made to the Funds for jobs on which Brennan was the shop steward. (FAC ¶¶ 217, 218.) "Where, as here, a complaint alleges that specific, identifiable written materials concededly disseminated by a defendant contain misrepresentations upon which Plaintiffs relied, the Rule 9(b) pleading requirements concerning identification of the allegedly fraudulent statements, and specification of their time, place and speaker, are satisfied." *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 2d 1308, 1326 (S.D.N.Y. 1997). As such, Plaintiffs have satisfied the requirement of pleading fraud with the requisite particularity. *See also Berk v. Tradewell, Inc.*, No. 01 Civ. 0935, 2003 WL 21664679, *12 (S.D.N.Y. Jul. 16, 2003) ("Thus, as this court has stated before, a plaintiff need not plead dates, times and places with absolute precision, so long as the complaint

gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based.") (internal quotations and citations omitted).[11]

As detailed above, the Funds have also pleaded Brennan's motive and intent to commit fraud with specificity by alleging that Brennan committed this fraud "in exchange for cash bribes of over $1,000 from Murray and On Par." (FAC ¶ 217.) And, in fact, Brennan has already admitted that he accepted these bribes and was aware that the conduct he engaged in was a violation of the Consent Decree. (FAC ¶ 108.)

Finally, as to the timeliness of the Funds' fraud claim against Brennan, Plaintiffs have alleged Brennan's concealment with sufficient particularity to meet the requirements of Rule 9(b). First, as Plaintiffs have specifically alleged, Brennan's deliberate underreporting of the number of carpenters and number of hours worked at job sites for which he served as shop steward in exchange for cash bribes was both an act of concealment and a self-concealing fraud, in that the Funds were thereby misled as to the actual volume of covered work performed on those jobs, and thus the amount of contributions actually due to the Funds, as well as the underlying criminal activity. (FAC ¶¶ 114, 217.) Second, in or around July 2004, Brennan engaged in a criminal and overt act of concealment, destroying subpoenaed documents in order to impede an investigation by a court appointed Independent Investigator. (FAC ¶¶ 60(f), 109.) Had Brennan not concealed his fraudulent conduct, Plaintiffs might have discovered his fraud within the limitations period.

---

[11] Equally unavailing is Brennan's argument that the allegations lack specificity because they fail to identify the number of hours underreported or the identity of the carpenters whose hours were not reported. Courts have noted that "it is particularly appropriate to ease the pleading burden under Rule 9(b) when information is within the exclusive control of the defendant." *ABF Capital Mgmt.*, 957 F. Supp. 2d at 1327. Plaintiffs have specifically pleaded that the "details of Brennan's misrepresentations are within the peculiar knowledge of Brennan himself." (FAC ¶ 217.) Given the nature of Brennan's fraud, there is no way for the Funds to identify the specific carpenters or hours that Brennan intentionally omitted from the shop steward reports, and the law does not require any additional detail at this stage of the litigation.

"In New York, 'the question of when a plaintiff, acting with reasonable diligence, could have discovered an alleged fraud turns upon whether the plaintiff possessed knowledge of facts from which he could reasonably have inferred fraud; . . . mere suspicion will not suffice as a ground for imputing knowledge of fraud." *Saphir Int'l, SA v. UBS Painewebber Inc., et al.*, 807 N.Y.S. 2d 58, 59 (N.Y. App. Div. 1st Dep't 2006) (internal citations omitted). Here, Plaintiffs have pleaded they were unaware of Brennan's fraud, (FAC ¶¶ 53, 63-64, 217), and Brennan's concealment of his fraudulent conduct, as pleaded in the FAC and detailed in this brief, compels the conclusion that the earliest date on which Plaintiffs reasonably could have discovered the fraud perpetrated by him was the date on which his indictment was unsealed—August 5, 2009. (FAC ¶ 52.)[12]

For the foregoing reasons, Defendant Brennan's motion to dismiss the Plaintiffs' claim for common law fraud must be denied. If the Court nevertheless finds that the allegations in the FAC fail to plead fraud and/or concealment with the requisite particularity, Plaintiffs respectfully request leave to further amend the Complaint.

## MOTION TO STRIKE

## VI.    DEFENDANT BRENNAN'S BASELESS MOTION TO STRIKE MUST BE DENIED.

Defendant Brennan's motion to strike certain allegations in the FAC is frivolous. Defendant Brennan seeks to strike a single paragraph from the FAC—Paragraph 10—apparently because (a) it allegedly contains an inaccurate quote of the CBA between the District Council and various contractors, and (b) ends with an allegedly inaccurate, conclusory statement. Both of these contentions are simply untrue and illogical. Furthermore, neither of these arguments

---

[12] At the very least, whether or not Plaintiffs discovered or reasonably could have discovered Brennan's fraudulent conduct within the statute of limitations raises a dispute of fact that cannot be resolved on a motion to dismiss. *See Saphir Int'l*, 807 N.Y.S. 2d at 59 ("Indeed, [w]hether a person has sufficient knowledge to discover a fraud necessarily involves a dispute over a state of mind" and, therefore, "the question is one for a trier-of-fact.").

provides any legal basis to strike the allegation from the FAC.

It is well-settled that motions to strike are highly disfavored by the courts and are granted only in extreme circumstances. *See, e.g., Lennon v. Seaman*, 63 F. Supp. 2d 428, 446-47 (S.D.N.Y. 1999) (Sand, J.). "To prevail in such a motion, defendants must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001). Defendant Brennan clearly fails to meet this standard.

Paragraph 10 of the FAC alleges as follows (the specific portions to which Defendant Brennan objects are underlined):

> The District Council's CBAs with contractors also generally authorized the District Council (or constituent local unions) to appoint a "shop steward" to each job. The shop steward's principal duty was to be the daily "eyes and ears" of the District Council (or appointing union) and to report a contractor's violations of the CBA. The shop steward was required to submit weekly reports, referred to as shop steward reports, to the constituent local union office identifying all carpentry-trade employees, including union and non-union members, and the hours they worked. The Funds relied on the shop steward reports to ensure that contributions to the Funds were being made for all covered work.

Defendant Brennan's motion to strike Paragraph 10 from the FAC essentially because it contains the phrase "eyes and ears" in quotation marks, (Brennan MTS pp. 4-6), is preposterous. Brennan claims that the quotation marks surrounding the phrase indicates that the Funds are quoting from the CBA, and because the phrase "eyes and ears" never appears in the CBA, this allegation is therefore "frivolous," "fraudulent," "irrelevant" and "impertinent." (Brennan MTS p. 6.) However, it is apparent from a plain reading of the allegation that Plaintiffs are not in fact quoting any language from the CBA. Rather, the phrase "eyes and ears" was

placed in quotes merely because it is a colloquial phrase.[13]  Defendant Brennan attempts to

obfuscate the obviousness of this fact by claiming that the Plaintiffs quoted the CBA in the first

sentence of Paragraph 10, when they placed the words "shop steward" in quotes.  (Brennan MTS

p. 6.)  However, by placing shop steward in quotes, Plaintiffs also were not specifically quoting

any language from the CBA, but merely highlighting a phrase that has a common usage and

meaning in the context of labor relations.  Indeed, Plaintiffs placed the phrase in quotes in at

least one other allegation where it is evident that they were neither quoting from nor referencing

any CBA.  (*See* FAC ¶ 20.)  As it is manifestly clear that Plaintiffs were not, in fact, quoting

some non-existent language in the CBA in their use of the phrase "eyes and ears," Defendant

Brennan's motion to strike Paragraph 10 is completely baseless as a factual matter.[14]

    Brennan's argument that the final sentence of Paragraph 10 should be stricken

because it contains a "conclusory statement" that "distorts and mischaracterizes" his

responsibilities as shop steward, (Brennan MTS p. 4), is equally unavailing.  The allegation that

"the Funds relied on the shop steward reports to ensure that contributions to the Funds were

being made for all covered work" is not a conclusory statement.  It is an allegation of fact as to

how the Funds used the shop steward reports.  Brennan's argument that the allegation is false

because "it was the rendering of the Business Manager's signature which the Funds relied upon"

raises a dispute of fact, and is not a legal basis to strike the allegation.  *See, e.g.*, *IMG Fragrance

Brands, LLC v. Houbigant, Inc.*, No. 09 Civ. 3655, 2009 WL 5088750, *2 (S.D.N.Y. Dec. 18,

2009) ("the mere claim that an allegation may be false is insufficient to strike the offending

---

[13] The phrase "all eyes and ears" means "listening and watching eagerly and carefully." *See*, THE FREE DICTIONARY – IDIOMS, http://idioms.thefreedictionary.com/all+eyes+and+ears.

[14] Even if Plaintiffs' use of quotation marks in Paragraph 10 was somehow misleading, which it is not, this is not a sufficient basis for a motion to strike. *See, e.g.*, *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 69 (E.D.N.Y. 2011) (noting that "a Rule 12(f) motion is not the proper forum for addressing" the argument that certain allegations are "intentionally misleading"; "[n]or does a selective quotation constitute inflammatory or scandalous material").

4838-3773-3391. 4

content.").[15]

Finally, Brennan's arguments fail to meet the well-established standard for a motion to strike. As noted above, motions to strike are highly disfavored and should only be granted when it is clear that the allegations in question can have "no possible bearing on the subject matter of the litigation." *Velez v. Lisi*, 164 F.R.D. 164, 167 (S.D.N.Y. 1995). "Thus, the courts should not tamper with the pleadings unless there is a strong reason for doing so." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). In this case, Defendant Brennan has failed to show that the allegations in Paragraph 10 have no possible bearing on the subject matter of the litigation, and in fact, his repeated claims that the allegations are false and that Plaintiffs rely on these false allegations for their claims against him, entirely contradict any such argument. Therefore, Defendant Brennan's motion to strike must be denied. *See Lennon*, 63 F. Supp. 2d at 447 (Sand, J.) (denying motion "because the defendant has failed to show that the allegations . . . have no bearing on the subject matter of the litigation").

## CONCLUSION

For the reasons detailed above, the Plaintiff Funds respectfully submit that Defendant Brennan's Motions to Dismiss and Strike should be denied in their entirety. To the extent, if any, that the Court determines to dismiss any claim in the FAC against Defendant Brennan, the Plaintiff Funds respectfully request, and the Court should grant, Plaintiffs leave to amend the FAC.

---

[15] Defendant Brennan's argument that the term "principal duty" should also be stricken from Paragraph 10 of the FAC because (a) Plaintiffs allegedly misused the word principal—which is untrue— and (b) this was not his actual principal duty, also raises nothing more than a factual dispute and similarly does not provide a basis to strike the allegation.

4838-3773-3391. 4

Dated: New York, New York.
      June 18, 2012

                        Respectfully submitted,

                        KAUFF MCGUIRE & MARGOLIS LLP

                    By:  _____

                        Harlan J. Silverstein (HJS-4114)
                        Raymond G. McGuire (RGM-7626)

                        950 Third Avenue
                        Fourteenth Floor
                        New York, NY 10022
                        (212) 644-1010