D4TTNYCC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------x
    NEW YORK CITY DISTRICT COUNCIL
3   OF CARPENTERS PENSION FUND, et
    al.,
4
                 Plaintiffs,
5
              v.                        11 CV 5474 (LAP)
6
    MICHAEL FORDE, et al.,
7
                 Defendants.
8   -------------------------------x
    PRUDENTIAL INVESTMENT MANAGEMENT
9   SERVICES, LLC, et al.,
10        Interpleader Plaintiffs,
11            v.                        12 CV 5168 (LAP)
12  MICHAEL FORDE, et al.,
13        Interpleader Defendants.
    -------------------------------x
14                                      New York, N.Y.
                                        April 29, 2013
15                                      10:15 a.m.
16  Before:
17                 HON. LORETTA A. PRESKA,
18                                      District Judge
19                      APPEARANCES
20  VIRGINIA & AMBINDER
         Attorneys for Plaintiffs
21  BY:  MARC TENENBAUM
         CHARLES VIRGINIA
22
    KAUFF, MCGUIRE & MARGOLIS
23       Attorneys for Plaintiffs
    BY:  G. PETER CLARK
24       RAYMOND McGUIRE
         ERICA FRANK
25

D4TTNYCC

APPEARANCES

BRUNE & RICHARD
     Attorneys for Interpleader Plaintiffs
BY:  DAVID ELBAUM

LOMBARDI & SALERNO
     Attorneys for Defendants Forde
BY:  DINO LOMBARDI
     LAURE SALERNO

SULLIVAN & GARDNER
     Attorneys for Defendant Olivieri
BY:  BRIAN GARDNER

JAMES FROCCARO, JR.
     Attorney for Defendant Hayes

LAW OFFICE OF JONATHAN SENNETT
     Attorneys for Defendants Turbo, Buckley, Pitcohn, McEntee,
Pyramid and Duffy
BY:  NIALL MAC GIOLLABHUI

TREUHAFT & ZAKARIN
     Attorneys for Defendant Ruocco
BY:  IRA TREUHAFT

PECKAR & ABRAMSON
     Attorneys for Defendants EMB and Batalias
BY:  DORIS SHORT

IRVING COHEN
     Attorney for Defendant Kelleher
BY:  CAMILLIA ELAHWAL

D4TTNYCC

```
 1                    (In open court, case called)

 2              THE COURT:  Would you be kind enough to let me know

 3     who you are, please.

 4              MR. TENENBAUM:  Good morning, your Honor, Marc

 5     Tenenbaum from Virginia & Ambinder, LLP, representing the

 6     plaintiffs.

 7              MR. VIRGINIA:  Good morning, your Honor, Charles

 8     Virginia of Virginia & Ambinder representing the plaintiff

 9     funds.

10              THE COURT:  Good morning.

11              MR. CLARK:  Good morning, your Honor, Peter Clark from

12     Kauff, McGuire & Margolis representing the defendant Carpenters

13     Annuity Fund in the Prudential interpleader action.

14              MR. McGUIRE:  Good morning, your Honor, Raymond

15     McGuire, Kauff, McGuire & Margolis, representing the plaintiff

16     carpenters fringe benefit funds.

17              MS. FRANK:  Good morning, your Honor, Erica Frank from

18     Kauff, McGuire & Margolis representing the plaintiff benefit

19     funds.

20              MR. ELBAUM:  Good morning, your Honor, David Elbaum,

21     Brune & Richard, representing Prudential plaintiffs in the

22     interpleader case.

23              THE COURT:  Good morning.

24              MS. SHORT:  Doris Short, Peckar & Abramson,

25     representing EMB, Liz Batalias and Michael Batalias.
```

D4TTNYCC

1        MR. GARDNER:  Good morning, your Honor, Brian Gardner

2   of Sullivan Gardner for Joseph Olivieri.

3        MR. FROCCARO:  Good morning, your Honor, James

4   Froccaro for defendant Brian Hayes.

5        MS. ELAHWAL:  Good morning, your Honor, Camillia

6   Elahwal on behalf of Irving Cohen for the defendant Matthew

7   Kelleher.

8        MR. MAC GIOLLABHUI:  Good morning, your Honor, Niall

9   Mac Giollabhui from the Law Office of Jonathan Sennett

10  representing Terence Buckley, Turbo Enterprises, Gerard

11  McEntee, Pitcohn Construction, James Duffy, and Pyramid

12  Construction.

13       THE COURT:  It's Mr. Mac Giollabhui?

14       MR. MAC GIOLLABHUI:  Yes, your Honor.

15       MR. TREUHAFT:  Ira Treuhaft representing the defendant

16  Joseph Ruocco.

17       MS. SALERNO:  Good morning, your Honor, Laure Salerno

18  from Lombardi & Salerno, PLLC for Forde in the interpleader

19  action.

20       THE COURT:  Thank you.

21       MR. LOMBARDI:  Good morning, your Honor, Dino Lombardi

22  from Lombardi & Salerno, PLLC representing Michael Forde in the

23  main action and also in the interpleader action.

24       THE COURT:  Good morning, counsel.

25       I think the business that we intended to do last week

D4TTNYCC

1     was to deal with Prudential's motion to dismiss the

2     counterclaims in the interpleader action.  Who is against that?

3     Who is against dismissing the counterclaim?

4                MR. LOMBARDI:  Co-counsel and I.

5                THE COURT:  What is your good faith basis for

6     opposing?

7                MR. LOMBARDI:  Your Honor, I'll just summarize the

8     facts.  The account at Prudential which is in question is an

9     IRA account belonging to my client.

10               THE COURT:  I actually read the motion.

11               MR. LOMBARDI:  Your Honor, the funds were restrained

12    without court order, without any basis in law whatsoever.

13               THE COURT:  What do you mean without any basis in law?

14               MR. LOMBARDI:  There was no court order or

15    justification for restraint whatsoever.

16               MS. SALERNO:  They were not fund assets, your Honor,

17    they were a separate individual IRA of the Fordes and there was

18    no reach for the fund defendants to do this without an order of

19    restraint or attachment.

20               THE COURT:  Counsel, what do you say to that?

21               MR. ELBAUM:  Good morning, your Honor.

22               There was a request to withdraw the funds, and when a

23    dispute arose, we came to the Court and filed an interpleader

24    action.  They have asserted claims for breach of fiduciary

25    duty --

D4TTNYCC

1          THE COURT:  I read all that.  Counsel says there's no

2     reach.

3          MR. ELBAUM:  Your Honor, the counterclaims don't go to

4     that question.  There's been a dispute over assets that are

5     held by Prudential, and we have brought them to the Court in an

6     interpleader proceeding.  That does not provide any basis for

7     an independent counterclaim.

8          THE COURT:  Thank you.

9          What do you say to that, counsel?

10          MS. SALERNO:  Our client was damaged by Prudential's

11     actions in honoring the request of someone who absolutely --

12          THE COURT:  What was wrong with the request?

13          First of all, counsel is correct, your counterclaims

14     don't speak to the reach.  They say they were negligent, they

15     breached their fiduciary duty, blah, blah, blah, they have

16     nothing to do with the reach.

17          MS. SALERNO:  Your Honor, this was tantamount to my

18     making a request to your IRA fund saying please restrain your

19     account.

20          THE COURT:  And an interpleader action is for that

21     very purpose when there are competing claims.  Are you telling

22     me there's no competing claims here?

23          MS. SALERNO:  Apparently there is because they're

24     asserting a claim they're not entitled to.

25          THE COURT:  They're not asserting anything.  They're

D4TTNYCC

asserting:  I have the money and there's a fight over it.

Do you disagree that there is a dispute over who gets the funds held by Prudential?

MS. SALERNO:  I do not, your Honor.  There is a disagreement as to who has the funds.

THE COURT:  I know that, there's plenty of people here seeking claims.  What is the basis of your counterclaims, and why should the counterclaims not be dismissed for the reasons stated in their motion?

MS. SALERNO:  Judicial economy.

THE COURT:  What does that mean?

MS. SALERNO:  Otherwise we would be seeking a plenary action against Prudential.

THE COURT:  What's the basis for you saying they had a fiduciary duty to your client when the contract says precisely the contrary?

MS. SALERNO:  Sorry, your Honor, we have a --

THE COURT:  Your agreement with Prudential, your client's agreement.

MS. SALERNO:  They're holding our funds as a fiduciary.

THE COURT:  Did you not hear what I asked you?  What is the basis for your claim that they have a fiduciary duty to you when the contract between you and Prudential says the opposite?

D4TTNYCC

1          MS. SALERNO:  I am not aware that the contract says

2     that, your Honor.

3          THE COURT:  Did you read their papers?

4          MS. SALERNO:  I have read their papers.

5          THE COURT:  I saw it in their papers.  How come you

6     didn't see it?

7          MS. SALERNO:  But it's not the contract for this

8     particular fund that they attach.

9          THE COURT:  I'm sorry?

10          MS. SALERNO:  I don't believe that was the contract

11     for the --

12          THE COURT:  Do you know or not know?

13          MS. SALERNO:  Your Honor, we need to have discovery.

14          THE COURT:  No, you just need the contracts.

15          MS. SALERNO:  We don't have them, your Honor.

16          THE COURT:  Let's hear the contract.

17          Counsel.

18          MR. ELBAUM:  Your Honor, we attached the Smart

19     Solution Individual Retirement Account customer agreement and

20     disclosures, and the contract provides -- I can quote it if you

21     give me a second, but it provides that there's no fiduciary

22     duty.  That's set out in our papers.  And there's no --

23          THE COURT:  Then why do you claim a fiduciary duty,

24     counsel?

25          Don't look at him, look at me.

D4TTNYCC

1          MS. SALERNO:  Your Honor, the funds reach beyond their

2     power.

3          THE COURT:  That's not what your papers say.  That's

4     not what his papers say.

5          MS. SALERNO:  My papers say we're suing also for

6     conversion by refusing to release the funds to the Fordes when

7     they requested.

8          THE COURT:  What about the interpleader action?

9     That's a legal basis for not releasing the funds.

10          MS. SALERNO:  Which they filed months and months

11     afterwards.

12          THE COURT:  So those are the facts.

13          Listen, counsel, I don't think -- to be quite frank, I

14     don't think you have a Rule 11 basis for opposing this motion.

15     That's why I'm asking you.  Because if you do oppose it and I

16     find there is no basis, I am going to sanction you.  So you

17     better figure out what the answer to this is.

18          MS. SALERNO:  Your Honor --

19          THE COURT:  There's no tort liability here.  Did you

20     read counsel's papers on that?  This is solely a creature of

21     contract.

22          MR. LOMBARDI:  May I be heard briefly?

23          THE COURT:  You can be heard as long as you like.

24          MR. LOMBARDI:  Counsel setting forth in their motion

25     there is no tort liability doesn't mean there isn't tort

D4TTNYCC

1    liability.

2                THE COURT:  I happen to have read the law that goes

3    with it, did you?

4                MR. LOMBARDI:  Yes, your Honor.

5                THE COURT:  What's the basis for tort liability?

6                MR. LOMBARDI:  Your Honor, in 2011, without a court

7    order, even though they were promised one, without any notice

8    to the fund holders, without any notice to counsel whatsoever,

9    Prudential chose to freeze an IRA account that was no longer a

10   plan asset of the District Council Annuity Fund without any

11   notice.  They were attempting to conspire, to collaborate with

12   the District Council Annuity Fund to evade Judge Marrero's

13   court order in the criminal action.  Because at the close of

14   the criminal action, Counsel McGuire, on behalf of the District

15   Council, attempted to get the Assistant United States

16   Attorneys, who were handling the closing statements of the

17   criminal case, and Judge Marrero to award them the annuity

18   fund.  They did not oppose Mr. Forde rolling it over into an

19   IRA, thereby, by Prudential's own rules, it becoming not a plan

20   asset and beyond the reach.

21               They then went behind this Court's back, although at

22   the time it was Judge Sand, and behind Judge Marrero's back,

23   and simply a letter to counsel a year and a half before

24   instituting the interpleader action, and they only instituted

25   the interpleader action when Mrs. Forde, with an power of

D4TTNYCC

1    attorney provided by her husband and being told by

2    representatives of Prudential how to submit the power of

3    attorney, how to go through that --

4              THE COURT:  So what?

5              MR. LOMBARDI:  That is the basis for tort liability

6    for over a year, conversion and improper restraint, damages.

7    Those funds were not available to the Fordes.  They should have

8    been available to the Fordes.

9              THE COURT:  And counsel just agreed that there was a

10   dispute over the ownership of the funds.

11             MR. LOMBARDI:  We don't believe there is any dispute

12   over the ownership of the funds.  Prudential has chosen to say

13   we believe there is a dispute as to the funds.  Our position is

14   there is no entitlement to those funds on behalf of the

15   district council.

16             THE COURT:  I didn't ask you if there was entitlement,

17   I asked you if there was a dispute.

18             MR. LOMBARDI:  There was no dispute, your Honor, this

19   is my point.

20             THE COURT:  Counsel, I have criminal matter --

21             MR. LOMBARDI:  They never brought a dispute.

22             THE COURT:  Excuse me.  There is a criminal matter

23   that is ready to go.  You people are excused to the hall.  You

24   two talk with Prudential's counsel and you figure this out,

25   because I am telling you I don't see any basis for your

D4TTNYCC

1      opposing the motion to dismiss the counterclaims.

2              I'll see you all in just a minute.

3              (Recess taken)

4              THE COURT:  Counsel, if you would be kind enough to

5      sit in the same seats.

6              Mr. Lombardi, Ms. Salerno, did you have an opportunity

7      to talk with counsel for Prudential?

8              MR. LOMBARDI:  We did, your Honor.

9              THE COURT:  What do we want to do here?

10             MR. LOMBARDI:  Your Honor, what would I ask the Court

11     and what I talked to Mr. Elbaum about is if we could have a

12     brief period to review our counterclaims and the motion papers

13     and any attachments to it and see whether we're going to put a

14     substantive opposition in or we would notify the Court and

15     counsel in a fairly short period of time that we are not.

16             THE COURT:  Yes, sir.  Is a week long enough for you?

17             MR. LOMBARDI:  Could we have two, your Honor?

18             THE COURT:  Well, all right.

19             MR. LOMBARDI:  Thank you, your Honor, busy time.

20             THE COURT:  That's what they all say.

21             MR. LOMBARDI:  I know, they're all right.

22             THE COURT:  May 13, let me know yes or no.

23             MR. LOMBARDI:  Thank you, Judge.

24             THE COURT:  All right.

25             MR. LOMBARDI:  Your Honor, May 13 will be the date by

D4TTNYCC

 1   which we have to let you and counsel know?

 2             THE COURT:  No later than.  That doesn't mean have you

 3   to take the whole two weeks.

 4             MR. LOMBARDI:  But not the date by which we have to

 5   the submit our opposition?

 6             THE COURT:  No, but it has to be pretty soon after

 7   that, so let's get it going.

 8             MR. LOMBARDI:  We won't use the full two weeks.

 9             THE COURT:  Is there anything else we need to do on

10   the Prudential matter?

11             MR. ELBAUM:  One other thing, your Honor, which I

12   think we just resolved outside is there was a question about

13   the amount of the bond that under the statute Prudential needs

14   to post, but I believe that's resolved.  And it's going to be

15   the amount in the fund, in the IRA account as of the date we

16   filed.  So we will take care of that --

17             THE COURT:  Thank you.

18             MR. ELBAUM:  -- promptly.  Otherwise, I believe that's

19   all we have on the case.

20             THE COURT:  Thank you.

21             Counsel, what would you like to discuss on the other

22   significant matters here?  Who wants to go first?

23             MR. McGUIRE:  I'll start.

24             THE COURT:  Mr. McGuire.

25             MR. McGUIRE:  Thank you.  As you know, your Honor,

D4TTNYCC

1    there are 22 defendants, 17 individuals, five companies.  Of

2    the 17 individuals, six were shop stewards for either the 608

3    or 157.

4          We have had the opportunity to have telephone

5    discussions with virtually all of the represented individuals,

6    and what we told at least the attorneys representing the shop

7    stewards, who were for the most part intermediaries in the

8    bribe giving and taking, is that if they would persuade their

9    clients to submit to asset depositions before we engage in any

10   discovery, and if we were persuaded there weren't sufficient

11   assets to justify proceeding with the RICO action against them,

12   we would dismiss them from the case.

13         THE COURT:  All right.  I take it you're getting some

14   disagreement on that matter of proceeding.

15         MR. McGUIRE:  I'll let them talk, your Honor, but for

16   the most part counsel was disposed to try to persuade their

17   client.

18         THE COURT:  That makes a lot of sense.  Who is not

19   disposed?  Who representing a shop steward is not disposed to

20   pursue asset depositions first?  Anyone?

21         MR. LOMBARDI:  Your Honor, I'm standing in for Bruno

22   Gioffre today, and he represents Michael Vivenzio.  I believe

23   Mr. Vivenzio is a shop steward.  Mr. Gioffre had a number of --

24   his wife is pregnant and he has a young child that he had a

25   travel schedule with, so he wasn't able to be here today.

D4TTNYCC

<pre>
 1              He did inform me that he had spoken with Mr. McGuire,

 2     as I believe other counsel have, with respect to asset

 3     depositions.  His client was not available to him a week or so

 4     ago when I think he had that conversation with Mr. McGuire, so

 5     Mr. Gioffre I believe represented to Mr. McGuire -- and he can

 6     correct me if I'm wrong, but that he was not favoring the idea

 7     of rushing forward to an asset deposition, but that obviously

 8     he really needed to discuss the matter at some length with his

 9     client really get to a sense of what his client's assets are.

10     And I don't think he has had a chance to do that.  I'm sure

11     that he will respond more formally very shortly when he

12     returns, but my understanding is he was not favoring an asset

13     deposition at this time.

14              THE COURT:  Thank you.

15              Mr. McGuire, have you discussed timing of these asset

16     depositions with the other individuals representing the shop

17     stewards?

18              MR. McGUIRE:  We haven't discussed any specific time.

19              THE COURT:  Do I understand you'll need some paper

20     discovery in preparation for those?

21              MR. McGUIRE:  Well, I would defer to Mr. Virginia, who

22     will probably be --

23              THE COURT:  Mr. Virginia, what do you say?

24              MR. VIRGINIA:  Yes, your Honor.

25              THE COURT:  Do you have discovery requests ready to go
</pre>

D4TTNYCC

1   on the paper discovery?

2           MR. VIRGINIA:  We can prepare them this week.

3           THE COURT:  Might as well do it, right?

4           MR. VIRGINIA:  Yes.

5           THE COURT:  And would you give me an idea of what you

6   will be requesting, please?

7           MR. VIRGINIA:  Just a short list of records relating

8   to bank accounts, real property, et cetera, tax returns.

9           THE COURT:  OK.  Anyone representing the shop stewards

10  have an issue with that type of paper discovery?  Anybody?

11          OK.  Let's get it done, let's get the production of

12  the documents done promptly so that we can get these

13  depositions done promptly so that then if those defendants can

14  be dismissed out or can reach a settlement, that's done and we

15  have cleaned the case up a little bit.

16          Those of you representing the shop stewards, would you

17  be kind enough to inform your clients this is coming and they

18  ought to the start collecting their papers.

19          What else on that, either Mr. Virginia or Mr. McGuire

20  or anybody else, on this issue?

21          MR. McGUIRE:  Well, I think if we can group these

22  defendants and give you an indication of what we're looking for

23  makes some sense.  There were three business agents/business

24  managers involved in the case, Michael Forde and Mr. Greaney,

25  and Mr. Carson -- not Mr. Carson, Mr. Hayes, and we would

D4TTNYCC

1   propose to engage in that same sort of pre-formal discovery to

2   discover again whether there are sufficient assets.

3   　　　　　THE COURT:  Got it.  Are any of those folks

4   disinclined, so far as you know?

5   　　　　　MR. McGUIRE:  I think Mr. Lombardi may have been

6   disinclined.

7   　　　　　THE COURT:  Is there anybody, Mr. Forde, Mr. Greaney,

8   Mr. Hayes, anybody disinclined?

9   　　　　　Same type of requests for papers at the outset?

10  　　　　　MR. VIRGINIA:  Yes, your Honor.

11  　　　　　THE COURT:  All right.  Let's do it.  Get it done.

12  　　　　　Mr. Virginia, I know you're going to send that out

13  fast, right?

14  　　　　　MR. VIRGINIA:  Yes.

15  　　　　　THE COURT:  Same thing, inform your clients that it's

16  coming so they can start collecting their papers.

17  　　　　　MR. McGUIRE:  Then we have Mr. Mac Giollabhui's

18  client, who are contractors and individual owners of

19  construction companies, Pitcohn, Pyramid, Turbo, McEntee and

20  Duffy.

21  　　　　　THE COURT:  Remind me whose clients these are.

22  　　　　　MR. McGUIRE:  Mr. Mac Giollabhui's clients.

23  　　　　　And we have had preliminary discussions with Mr. Mac

24  Giollabhui about the possible settlement of the action, and

25  again we stumbled sometime ago over the question of asset

D4TTNYCC

1  depositions and related paper discovery, so we would propose

2  the same approach to those three individuals and three

3  companies.

4       THE COURT:  OK.  Any opposition to that?

5       MR. MAC GIOLLABHUI:  Yes, your Honor, there's

6  absolutely opposition to it.  And I don't think Mr. McGuire has

7  misspoke deliberately, but when he said we stumbled, there was

8  no stumbling.  The request was made and it was denied.

9       And my clients are the subject of actions, separate

10  actions, each of them, in that there are six of them, three

11  individuals, each of whom had a company, so like the six can be

12  divided into three.  And namely, Turbo, Terence Buckley,

13  Pyramid, James Duffy and Pitcohn and Jerry McEntee, and as it

14  happens, the third case is also before your Honor, i.e., the

15  case against Pitcohn and McEntee.

16       THE COURT:  Do I know the number of that one?

17       MR. MAC GIOLLABHUI:  It's an '06 case.

18       THE COURT:  Great.

19       MR. MAC GIOLLABHUI:  As is the Pyramid and Duffy case

20  which is before Judge Cedarbaum at the moment.

21       In terms of Turbo and Mr. Buckley, the funds proceeded

22  in '06 by way of arbitration rather than by way of the case in

23  this court.

24       Now I can say this, those cases are at different

25  stages in terms of their advancement.  The most advanced is the

D4TTNYCC

1    case of Pitcohn and Mr. McEntee.  I think we're very close to

2    settlement in that case, but it's a settlement that doesn't

3    involve -- certainly it involves conversation as to my clients'

4    assets, and I have provided a lot of voluntary, if you would

5    like, disclosure in relation to that, but strictly voluntary.

6    Nonetheless, I think we are close to settlement there, and I

7    think the other --

8           THE COURT:  When you say voluntary, are you saying

9    that somebody has signed a piece of paper saying, for example,

10   these are the only bank accounts I have?

11          MR. MAC GIOLLABHUI:  No, what I am saying is this,

12   your Honor, I was asked for -- in the context of settlement

13   discussions, I asked what kind of documents would the funds be

14   looking to in the context of making a decision as to

15   settlement.  And I was told, for example, tax returns, so I

16   provided tax returns.  I was asked for mortgages on certain

17   properties, I provided the mortgages.  I was asked about

18   certain investments that were made that are indicated in the

19   tax returns, I provided that documentation, too, but it's on an

20   entirely voluntary basis.

21          Nonetheless, as I say, I think we're very close to

22   settlement in that case, and it's one of Mr. Virginia's

23   colleagues who is handling the case, and I think Mr. Virginia

24   would agree that we have made progress there.

25          The other case, which is the case also not before your

D4TTNYCC

```
 1   Honor but in this Court, is the one of Pyramid and James Duffy.
 2   That case is far less further advanced.
 3             THE COURT:  Before whom is that?
 4             MR. MAC GIOLLABHUI:  Judge Cedarbaum.
 5             THE COURT:  Would you be kind enough to let me know
 6   the name and number of that case?
 7             MR. MAC GIOLLABHUI:  It's an '06 case as well,
 8   unfortunately.
 9             what happened is we received -- these cases had both
10   been stayed because of the criminal proceedings.  The stays
11   were lifted in both cases but one moved forward in a quicker
12   fashion than the other.  Nonetheless, we received a call from
13   Judge Cedarbaum's chambers last week looking to, if you like,
14   bringing her case to a close, I assume, as well.  So I think
15   there will also be progress in that case very, very shortly, or
16   further progress in that case very shortly.
17             THE COURT:  I'll be on trial on Monday, you know.
18             MR. MAC GIOLLABHUI:  I shall offer no comment on that,
19   your Honor.
20             In terms of the final one, which is that of Turbo and
21   Terence Buckley, there was arbitration in the case.  There was
22   an award of arbitration.  I don't know that the funds ever
23   moved to --
24             THE COURT:  Confirm.
25             MR. MAC GIOLLABHUI:  Exactly, to have it confirmed.
```

D4TTNYCC

1          Mr. Buckley is in Ireland at the moment.  There was

2     a -- now he alone of my clients was subject to criminal

3     proceedings.  He was convicted, and as part of his plea there

4     was a very substantial amount in restitution paid, I believe it

5     was a million dollars.  And I also believe that the U.S.

6     Attorney at the time determined that what was paid was -- I'm

7     not sure if it was the entire amount as to what was claimed to

8     be owed, but I think the total amount was maybe 1.4 million, of

9     which a million has been paid.

10          So obviously in that regard, I haven't discussed the

11     matter in detail with my client, but I would be hopeful there,

12     too, some kind of settlement is possible there, because I

13     think --

14          THE COURT:  So there's no pending case in this court.

15          MR. MAC GIOLLABHUI:  Not against him or his company,

16     no, your Honor.

17          THE COURT:  All right.  You'll let me know, please,

18     the numbers of both of those other cases, please.

19          MR. MAC GIOLLABHUI:  I will your Honor.

20          THE COURT:  One before me, one before Judge Cedarbaum.

21          MR. MAC GIOLLABHUI:  I believe the one against

22     McEntee, it's a '06, case I believe it's 6531, but I certainly

23     will confirm that or otherwise also provide the index number of

24     other case -- or the docket number, I should say.

25          THE COURT:  Thank you.  What else?

D4TTNYCC

1          MR. McGUIRE:  Your Honor, Mr. Mac Giollabhui raises a

2     matter that is a factor in several of these cases, that is the

3     U.S. Attorney's Office did pursue orders of restitution against

4     some of these defendants.  We are still unsure that we know the

5     exact amounts that were ordered by the U.S. Attorney.  We

6     aren't sure how much of the monies --

7          THE COURT:  Why can't those be discovered by looking

8     at the J and C in those cases?

9          MR. McGUIRE:  We have attempted to do that, your

10    Honor, and apparently it's not necessarily accurate from what

11    we have been told.

12         THE COURT:  Doesn't sound right to me, counsel.

13         MR. McGUIRE:  It doesn't to me either.

14         THE COURT:  Who is the assistant on the case, please?

15         MR. FROCCARIO:  Lisa Zornberg.

16         MR. McGUIRE:  She's in private practice.

17         THE COURT:  Too late for that.

18         MR. McGUIRE:  I have a call in to her, I'm trying to

19    find out who she passed the case off to.

20         THE COURT:  This has got to be knowable.  If you have

21    any trouble on this in a week or so, let me know.

22         MR. McGUIRE:  OK, your Honor.

23         THE COURT:  Because this is ridiculous.

24         MR. McGUIRE:  But that obviously is a major

25    consideration in what we are looking for.

D4TTNYCC

```
 1              THE COURT:  Clearly.  What else?

 2              MR. McGUIRE:  There's another set of individuals and a

 3    contractor, the Batalias, Michael Batalias, Elisavet Batalias

 4    and EMB Contracting, and Ms. Short and Mr. Curran are

 5    representing the two individuals and the company.

 6              THE COURT:  What's the story there?

 7              MR. McGUIRE:  We have started discussing possible

 8    settlement.

 9              THE COURT:  I'm sorry, would you characterize them --

10    is EMB a contractor?

11              MR. McGUIRE:  EMB Contracting, yes.

12              THE COURT:  Got it.  And the Batalias are principals?

13              MR. McGUIRE:  Yes.

14              THE COURT:  Thank you.

15              MR. McGUIRE:  Again we think that with some informal

16    discovery of the assets we may be in a position to resolve that

17    matter without going forward with formal discovery.

18              THE COURT:  And are we on board for that, friends?

19              MS. SHORT:  Yes, your Honor.  We would prefer paper

20    discovery first.

21              THE COURT:  Obviously.

22              MS. SHORT:  But yes, we're on board.

23              THE COURT:  And listen, in all this paper discovery

24    there had better be a certification from the producing party

25    that these are accurate and there aren't any more.  Right?
```

D4TTNYCC

1    There aren't any tax returns.  I have had cases in the past

2    where tax returns have been produced which were never filed.

3    These are in fact the bank records, there aren't any more bank

4    accounts.  So there's going have to be a certification on this

5    as though it was Rule 34 discovery.

6              What else?

7              MR. McGUIRE:  Your Honor, then we have a miscellaneous

8    group.  Several shop stewards, Carson and Stamberger, for

9    example, have not retained counsel or filed an answer.  That

10   also includes Michael Mitchell, and also K.A.F.C.I. Corporation

11   and Finbar O'Neill, they have not answered the complaint.

12             THE COURT:  What do you want to do?

13             MR. McGUIRE:  Well, we have moved for entry of default

14   with most of them at this point, and we'll engage in discovery.

15             THE COURT:  Do I have that?

16             MR. McGUIRE:  I believe you do, your Honor.

17             THE COURT:  OK.  We will look for it.  Do you want me

18   to hold it or do you want me to grant it?

19             MR. McGUIRE:  We want you to grant it, your Honor.

20             THE COURT:  I knew that.

21             We'll look for it.  If we can't find it we'll ask you

22   for it again.

23             MR. McGUIRE:  And I think that concludes all of the

24   defendants in our conversations with them.

25             THE COURT:  OK.  Does anybody want to add anything?

D4TTNYCC

1          MR. MAC GIOLLABHUI:  Your Honor, I will add briefly,

2     obviously, as I said earlier, I am hopeful that we can settle

3     the matters, in terms of my clients, shortly.  Nonetheless, I

4     have -- the other cases against them have been going on since

5     '06, and some of their colleagues have evinced skepticism when

6     I said that in the past.

7          So with that in mind, I think in terms of this case,

8     the determinative issue in many respects will be the question

9     of due diligence or otherwise as to the statute of limitations

10    in that the allegations against my clients all, if you like,

11    end in 2005.  Cases were taken against them in '06, each of

12    them either by arbitration or this court.  So in terms of the

13    four-year statute, it expired in 2010, this case expired in

14    2011.  They pled concealments, and we dispute that, but

15    nevertheless as far as fraudulent concealment they also have to

16    plead due diligence, and I don't think that due diligence

17    happened, as it were.

18         THE COURT:  Would you tell me -- just to go back a

19    little bit, please, would you tell me the relationship between

20    the arbitrations that you spoke of and this case?  The

21    arbitrations were seeking what?

22         MR. MAC GIOLLABHUI:  One arbitration, your Honor.  It

23    was an arbitration as to Turbo and Mr. Buckley, and essentially

24    seeking exactly what's been sought here with the same

25    allegations.  In terms of the other two sets, there's no

D4TTNYCC

arbitration, there's simply two cases that were taken in this
court.  Again, if you compare the complaints, the allegations
are word for word identical.

         THE COURT:  Let me ask this question, as to Buckley
and Turbo, are we still talking about a separate proceeding in
this case, or is the arbitration the end of the story?

         MR. MAC GIOLLABHUI:  Arbitration is the end of the
story, yes.

         THE COURT:  So on the other two, though, we are going
to have -- we're talking about resolving them.

         MR. MAC GIOLLABHUI:  Yes, your Honor.

         THE COURT:  OK.  Then tell me again what you are
telling me now.

         MR. MAC GIOLLABHUI:  What I'm telling you now, in the
event that we can't resolve them, I think the determinative
issue here will be whether or not plaintiffs exercised due
diligence.  I don't want to get there prematurely, I simply
want to flag the issue now in that obviously this is a
sprawling case, to put it mildly, and to the extent -- my view
would be this, to the extent that we can't settle, it may be --

         THE COURT:  The lawyers' full employment and Home
Relief Act doing that discovery, right?

         MR. MAC GIOLLABHUI:  Indeed, your Honor.

         THE COURT:  OK.  Which sounds to me like it wouldn't
be good for any of the clients here.

D4TTNYCC

1            MR. McGUIRE:  Your Honor, we'll do everything we

2       possibly can to avoid that.  We're not in this to charge the

3       fund more legal fees than they have already had to experience,

4       and I don't think any of opposing counsel that we have spoken

5       to gives any indication they want to drag this out.

6            THE COURT:  OK.  If you don't want to answer the

7       question, you don't have to:  Are any of these legal fees

8       covered by any kind of insurance?

9            MR. McGUIRE:  I don't think so, your Honor, not on our

10      side.

11           THE COURT:  All the more reason for us to come to some

12      agreement here.

13           What do you want to do next, counsel?

14           MR. McGUIRE:  Well, I think you've instructed

15      Mr. Virginia to get out his paper discovery early, and he's

16      very fast, so he'll get that out, I'm sure, to your

17      satisfaction.

18           THE COURT:  Let me ask you this, is there any reason

19      that the asset depositions can't be completed in 90 days?

20           MR. VIRGINIA:  No.

21           THE COURT:  All right.  Let's do that.  And would you

22      report back by joint letter then?

23           Is there anything else we should be doing?

24           MR. GARDNER:  Judge, if I may, Brian Gardner for Joe

25      Olivieri.  Maybe I missed it, but I didn't hear he was included

D4TTNYCC

```
 1    in any of those groups.
 2              THE COURT:  Where is Mr. Olivieri?
 3              MR. McGUIRE:  He was not, your Honor.
 4              THE COURT:  Where is he residing, which group?
 5              MR. McGUIRE:  He doesn't reside in any of the groups.
 6              THE COURT:  What's his situation?
 7              MR. McGUIRE:  He ran an employer association, and he
 8    was charged --
 9              THE COURT:  An employee?
10              MR. McGUIRE:  An employer association, the Wall and
11    Ceiling Contractors Association.  And there have been some
12    allegation -- Mr. Olivieri, by the way, spent some time in
13    prison, but not because of any bribery that he facilitated or
14    took part in, it was for perjury, but we do believe that he had
15    an active role.
16              THE COURT:  What are we doing as to him?
17              MR. McGUIRE:  I would propose to Mr. Gardner the same
18    approach.
19              THE COURT:  Mr. Gardner?
20              MR. GARDNER:  This is the first I'm hearing of it,
21    your Honor.  I would certainly discuss it with my client and it
22    may make sense.  This is the one case, your Honor, where we did
23    move for dismissal -- or one of the cases that were moved for
24    dismissal, and one of the bases was -- the tying him in at all
25    was due to this person Murray, who it was our position the
```

D4TTNYCC

1    government had taken, and the fund said had made full

2    restitution.  So with my client in the criminal proceeding,

3    restitution was never an issue because the government and the

4    fund have taken the position restitution occurred.

5            Your Honor, as one of the motion items, I think your

6    Honor had said that at this stage you're not looking at those

7    representations or documents from those proceedings.  So

8    although I welcome that discussion, I will speak to my client

9    about it.  I think in terms of there is -- as counsel said, he

10   is by himself in this proceeding.

11           THE COURT:  Do this, please, would you talk with

12   Mr. McGuire or whoever else you have to talk with, and your

13   client, and if you are going to do something other than proceed

14   with the asset discovery in the same fashion, if let's say you

15   say no, he doesn't owe you anything, here's the legal reason

16   why.  You decide you're going to do that, tell me in two

17   weeks -- you guys tell me in two weeks what you're going to do,

18   and if that's your position then you're going to have to go

19   ahead and make your motion.

20           MR. GARDNER:  Yes, your Honor.

21           THE COURT:  But let try to get this done.

22           What else, friends?

23           MR. McGUIRE:  I think that's all from our point of

24   view, your Honor.

25           THE COURT:  OK.  So I'll look to hear from

D4TTNYCC

1    Mr. McGuire, Ms. Salerno and Prudential in two weeks, no later

2    than, hear about Mr. Olivieri in two weeks, no later than, and

3    have a joint letter no later than July 29 with respect to what

4    we're going to do when we have finished the asset discovery.  I

5    do not want to hear that you did not finish the asset

6    discovery.  Make your deposition dates now.  The documents are

7    not so difficult to get together, so get them together, and if

8    you want to have counsel accommodate your schedules, make it

9    the deposition dates now.

10            Anything else, counsel?

11            Thank you, ladies and gentlemen, nice to see you, and

12    I will be waiting for the case numbers.

13            MR. MAC GIOLLABHUI:  Yes, your Honor.  Just on that

14    point, so I'm clear, I will get them to you later today.

15            THE COURT:  That's lovely.

16            MR. MAC GIOLLABHUI:  But in terms of -- am I correct

17    in surmising that other than getting you those case numbers,

18    and obviously endeavoring to settle the cases, that I am

19    without further tasks?

20            THE COURT:  You don't have any further tasks -- well,

21    is there any reason you should be doing something on the case

22    that is before me?

23            MR. MAC GIOLLABHUI:  I don't think so, your Honor, and

24    I will tell you why, because I think because I have to speak to

25    Mr. Buckley in Ireland and see what is to be done with that

D4TTNYCC

1    case, but I think with the other two cases, much will be done

2    in both those cases before we return -- before I return to this

3    court on this case.

4              THE COURT:  Those cases might not stay with those

5    judges, so you better hop to it.

6              MR. MAC GIOLLABHUI:  I will, your Honor.

7              THE COURT:  So I understand the Mr. Buckley case,

8    that's the one where we have the arbitration.

9              MR. MAC GIOLLABHUI:  Yes.

10              THE COURT:  And it sounds like the arbitration is the

11   end of the story, because there was an award there.  And

12   passing whether the amount paid is sufficient for the amount

13   awarded, passing that for a minute, there's nothing else to be

14   done, is that right?

15              MR. MAC GIOLLABHUI:  I think so, your Honor.  And I

16   think probably rather than the amount awarded during the

17   arbitration, which is highly disputed and rejected by the U.S.

18   Attorney's Office, I think it will be more a case of the award

19   or the restitution that was awarded in the criminal case and

20   the extent to which there's a gap between what was awarded and

21   what was paid.  I think that would be the issue.

22              THE COURT:  If there remains an issue, if there's

23   anything going to be done with that case other than settle it,

24   let me know in two weeks and tell me know what you propose to

25   do --

D4TTNYCC

1          MR. MAC GIOLLABHUI:  Very well, your Honor.

2          THE COURT:  -- in the other case, the case that's

3   before me.

4          MR. VIRGINIA:  Your Honor, if I might.

5          THE COURT:  Yes.

6          MR. VIRGINIA:  In that action we have requested a

7   premotion conference to move for summary judgment --

8          THE COURT:  Now you tell me.

9          MR. VIRGINIA:  -- against Pitcohn.  My colleague in my

10  office, Nate Bishop, has been handling this case.

11         THE COURT:  But we're here, for Pete's sake.

12         MR. VIRGINIA:  I apologize.

13         THE COURT:  What's the basis?

14         MR. VIRGINIA:  The basis is that Pitcohn is liable for

15  the amount.  It's a Section 515 case.  And we have gone through

16  all the discovery and now it's time to move for summary

17  judgment against Pitcohn.

18         THE COURT:  What do you say?

19         MR. MAC GIOLLABHUI:  I think in terms of the case

20  against of the corporation is a strong case, the case against

21  the individual is a weak case.  But I responded by letter to

22  the letter requesting the conference, and I pointed out that

23  even as against the corporation there are serious gaps in

24  proof, particularly with regard to the expert that was retained

25  by the plaintiffs to make a determination as to what was owing.

D4TTNYCC

1     In fact, I think the gaps are such that -- the gaps in proof

2     are such that the expert will probably be -- again, I don't

3     want to be presumptuous, but nonetheless I think he will be

4     precluded ultimately because there are enormous gaps of proof

5     and also in terms of the failure to disclose under Rule 26.

6          THE COURT:  What do you say was not disclosed?

7          MR. MAC GIOLLABHUI:  What wasn't disclosed essentially

8     was -- the disclosure, such as it was, was made on the day of

9     his deposition.  Before that there was no discussion.  In terms

10    of what was disclosed it may have filled maybe half or

11    three-quarters of a banker's box.  He testified during the

12    deposition that he had also considered I think it was

13    20-something other boxes of material.  He wasn't sure where

14    they were or what they were, but he nonetheless considered

15    them, and his deposition continued in that vain.

16         THE COURT:  Excuse me, was this in connection with the

17    '06 case?

18         MR. MAC GIOLLABHUI:  Yes, your Honor.

19         So nonetheless, I think there is broad agreement

20    between us that we want to the settle this case at some point,

21    and to the extent that we want to do that, the money available

22    to do that has been swallowed up in litigation costs, which is

23    why I think there's a determination to do everything that we

24    can to settle now very quickly.

25         THE COURT:  OK.  And what's the story with

D4TTNYCC

1    Mr. McEntee?

2           MR. MAC GIOLLABHUI:  Again McEntee --

3           THE COURT:  Same thing?

4           MR. MAC GIOLLABHUI:  Yes, that's the one case that I

5    think is very close to settlement.

6           In terms of Mr. Duffy and Pyramid, I think, if you

7    like, the path has been somewhat laid out for us by the McEntee

8    case in terms of what we need to do to get to the point of

9    trying to settle it, and we're going to do that again

10   immediately.

11          THE COURT:  OK.  And what does that mean?  Is that

12   merits discovery or is that asset discovery?

13          MR. MAC GIOLLABHUI:  The thing is this, I think we

14   want to avoid any more merits discovery to the extent that

15   it's --

16          THE COURT:  We're doing asset discovery, right?

17          MR. MAC GIOLLABHUI:  Yeah, but it's voluntary, it's

18   not discovery.

19          THE COURT:  Counsel, I don't know why you keep saying

20   "voluntary."  I understand that it is in connection with

21   settlement, but what you need to understand is that your

22   clients have to certify the discovery.  So I don't care if it's

23   voluntary or not, it's discovery, it can or cannot be used

24   depending on what the rules are as far as settlement.  So it

25   doesn't matter to me if it's voluntary, and I wish you'd quit

D4TTNYCC

1      saying it.

2             MR. MAC GIOLLABHUI:  To give your Honor an

3      understanding to why I'm describing it in that way, my clients,

4      certainly Mr. Duffy and Mr. McEntee -- I'm not going to speak

5      for Mr. Buckley -- but as to the two of them, they have little,

6      if anything, in their own names.  Everything is, broadly

7      speaking, in the name of their wives or respective wives.  And

8      there's no suggestion that there is anything improper about

9      that, but that is such as it is.  So that there have been, for

10     example, conversations about the extent to which, for example,

11     the family's home in each case --

12             THE COURT:  Was conveyed.

13             MR. MAC GIOLLABHUI:  Exactly.

14             THE COURT:  So let's get it done.

15             MR. MAC GIOLLABHUI:  So nonetheless, I think certainly

16     in the McEntee case we worked well together, myself and

17     Mr. Bishop from Mr. Virginia's firm, I think we'll be able to

18     do likewise in the Duffy case.  And I hope to be able to report

19     to your Honor -- we may need more than two weeks, but I hope to

20     be able to report to your Honor definitively either that the

21     cases have been settled or not.

22             THE COURT:  OK.  Anything else on that?

23             MS. SHORT:  Just one quick point.  Mr. Olivieri or

24     counsel for Mr. Olivieri and I lost, sadly, our motions to

25     dismiss, but did not submit an answer because, first, we were

D4TTNYCC

1    going to respond to your Honor and then appear for this

2    hearing, so we were curious about a date for my formal answers

3    to be submitted.

4         THE COURT:  Does anybody care about an answer?

5         MR. McGUIRE:  I think we do, just in case.

6         THE COURT:  In a week.

7         So have we covered all the entities and all the

8    individuals?

9         MR. McGUIRE:  Some of them aren't represented.

10         THE COURT:  Right, I know, those are the ones you

11    already moved on.

12         MR. McGUIRE:  Yes, but Mr. Brennan, for example, moved

13    to dismiss, so we need him to be ordered to answer.  We could

14    send him a letter tonight with the answer in ten days.

15         THE COURT:  Sure, two weeks.  Two weeks.  To make it

16    very clear, Mr. Brennan is ordered to answer within two weeks.

17         MR. McGUIRE:  Mr. Mitchell has not answered the

18    amended complaint.

19         THE COURT:  Same, two weeks for Mr. Mitchell.

20         MR. McGUIRE:  I think that's it, your Honor.

21         THE COURT:  So have we covered all the parties in all

22    the cases, whether I have them or not?

23         MR. LOMBARDI:  Your Honor, I just want to seek a point

24    of clarification, and excuse me if I didn't indicate before,

25    but I represent Michael Forde, as you know.  He is incarcerated

D4TTNYCC

```
1    in McDonald Air Force Base in West Virginia.  We, no more than
2    Mr. Gioffre, as represented through me, are interested in
3    engaging in asset discovery prior to merits discovery.
4              THE COURT:  I'm sorry, you're not interested?
5              MR. LOMBARDI:  No, I thought I indicated that to the
6    Court, and perhaps I didn't do so clearly.  I know I indicated
7    it to Mr. McGuire in our telephone conference.
8              THE COURT:  Which defendant?
9              MR. LOMBARDI:  Michael Forde.
10             THE COURT:  Of course.  What are you doing with
11   Mr. Forde?
12             MR. McGUIRE:  I guess we'll start discovery, mutual
13   disclosures, and move forward.  He's not conceding that he's
14   liable under the RICO complaint.
15             THE COURT:  How are you getting paid?
16             MR. LOMBARDI:  Well, your Honor, I'm not saying that
17   that's going to be necessarily a protracted period of
18   discovery, but I am not in a position to consent to asset
19   depositions or asset discovery before merits discovery.  As
20   Mr. Mac Giollabhui has brought up, there are issues as to just
21   if there is liability here, and I would concede there's a
22   significant overlap from the criminal case.  But there are
23   issues with respect to liability and what an eventual judgment
24   might look like, and I am not in a position therefore to go to
25   asset discovery.
```

D4TTNYCC

```
1          THE COURT:  What do you see as the issues as to
2   liability, please, Mr. Lombardi?
3          MR. LOMBARDI:  Your Honor, the ERISA and civil RICO
4   statutes clearly start -- or at least the ERISA starts from
5   non-alienation provisions.  There are pensions at issue.  As to
6   whether or not any of those -- some of the pensions that flow
7   to Mr. Forde are within the reach of anything that could come
8   out of this case may depend both on the merits of the case as
9   well as the assets that my client has.  If that makes it --
10         THE COURT:  Mr. McGuire, let me ask you this, if you
11  had asset discovery of Mr. Forde, would that inform your view
12  as to how to proceed on the merits either because there were
13  few assets or because the assets disclosed were unreachable?
14         MR. McGUIRE:  I think it would, your Honor.
15         THE COURT:  Why should I not order asset discovery of
16  Mr. Forde?
17         MR. McGUIRE:  I think it would short circuit a lot of
18  wasted motion if we knew what was there.
19         THE COURT:  Would that help you out, Mr. Lombardi?
20         MR. LOMBARDI:  I don't believe it would, your Honor.
21         THE COURT:  Why not?
22         MR. LOMBARDI:  I think the main asset of Mr. Forde is
23  the IRA fund.
24         THE COURT:  But I'm saying you're telling me he won't
25  do it voluntarily.  I don't see any reason, in the interest of
```

D4TTNYCC

```
1     judicial efficiency and Rule 1, not to order asset discovery to
2     precede merits discovery.
3                MR. LOMBARDI:  How about we do this, your Honor --
4                THE COURT:  I'll make you a deal?
5                MR. LOMBARDI:  I'll make a deal.  And it could
6     impact --
7                THE COURT:  Maybe you could explain it to him.
8                MR. LOMBARDI:  It could impact all the discussions
9     we're discussing your Honor, how -- not so much the
10    interpleader vis-a-vis Prudential but whether or not the
11    seeking of the IRA funds, and not the restraint thereof but the
12    eventual claim to by the District Council Annuity Fund, whether
13    that is determined to have merit and go forward.  If we would
14    be permitted to litigate I think the claims in the interpleader
15    action, that would give us some better --
16               THE COURT:  What claims?  Whose claims?
17               MR. LOMBARDI:  Essentially our counterclaims.
18               THE COURT:  I hope you have heard me loud and clear,
19    you're going to let me know --
20               MR. LOMBARDI:  As to Prudential.
21               THE COURT:  OK.
22               MR. LOMBARDI:  We also have counterclaims -- sorry,
23    cross claims against the District Council Annuity Fund in the
24    interpleader action.
25               THE COURT:  What do we have to say about that, whose
```

D4TTNYCC

1    annuity fund?

2              Mr. Clark.

3              MR. CLARK:  Yes, we have answered and there's no

4    motion pending, and we haven't -- we have answered denying the

5    claims asserting some affirmative defenses and there's no

6    motion pending on either side with respect to either of those.

7              THE COURT:  How do you say we proceed with that?

8    Counsel wants to litigate it.

9              MR. CLARK:  And at this point --

10             THE COURT:  How do you think we ought to proceed?

11             Counsel, this is your golden opportunity, what do you

12   want to do here?

13             MR. CLARK:  I have to confer with the client.

14             THE COURT:  Stop.  About what?

15             MR. CLARK:  Whether to move to dismiss those claims or

16   whether to allow it to be litigated.

17             THE COURT:  What will be your basis for moving?

18             MR. CLARK:  If we found the claims were not

19   substantial.

20             THE COURT:  I would have thought you would have looked

21   at that before you answered.  No?

22             MR. CLARK:  Well, there's a question as to whether we

23   want to move to dismiss for summary judgment or whether we have

24   to concede that we would have to allow them some discovery.

25   I'm not prepared to respond on those choices at the moment.

D4TTNYCC

1          THE COURT:  All right.  You talk with Mr. Lombardi.

2     You let me know in a week what you think we ought to do.

3          Mr. Lombardi, if you think we ought to do something

4     else, you write me three business days after that.

5          MR. LOMBARDI:  That's fine, Judge.

6          THE COURT:  Now is there something else I'm missing as

7     to Mr. Forde though --

8          MR. LOMBARDI:  No, your Honor.

9          THE COURT:  -- on the main action, Mr. McGuire?

10          I guess I thought, based on what we just talked about,

11     that we should have asset disclosure from Mr. Forde.

12          MR. McGUIRE:  Yes, your Honor.

13          THE COURT:  And Mr. Clark, that's separate from your

14     differences with Mr. Lombardi, right?

15          MR. CLARK:  Well, certainly conceptually different,

16     but they may have --

17          THE COURT:  A practical effect.

18          MR. CLARK:  A practical impact.  But his claim is

19     against us, not ours against him.

20          MR. McGUIRE:  Your Honor, I'm looking at this in a

21     very practical way.  If I know what money is there, I know what

22     my risks are in getting to it eventually, I know what it will

23     cost me to get to it, let's bring in a mediator and sort it

24     out.

25          THE COURT:  We don't need a mediator, we're going to

D4TTNYCC

1    get this done.

2            Mr. Lombardi, your client is ordered to make asset

3    discovery on the same schedule as the other individuals.

4            MR. LOMBARDI:  Mr. Forde -- specifically the

5    allegations to him in the main action are that he breached a

6    fiduciary duty as a trustee of the funds.  There are pensions

7    that Mr. Forde receives that flow from different organs within

8    the overarching umbrella of International Brotherhood of

9    Carpenters.  Much of the complaint against Mr. Forde sounds in

10   the ERISA offset rights that essentially those pension funds

11   and any assets he has can be clawed back by the district

12   council and its funds because he, in engaging in a

13   bribe-receiving conspiracy to avoid benefit payments on the

14   part of contractors subject to the collective bargaining

15   agreements, short changed those funds, obviously the essential

16   gravamen of any such case.

17           Whether or not there were actual payments to funds

18   that he specifically was the trustee of and that therefore

19   those funds were specifically short changed, and their ERISA

20   rights to set off as well as eventually imposing a judgment,

21   that may require some merit discovery.  The issue of fraudulent

22   concealment that Mr. Mac Giollabhui has spoken to, now

23   obviously my client is perhaps in somewhat of a different

24   situation than the contractor clients whose -- apparently a

25   wall came down at the time of arbitrations, but I think there

D4TTNYCC

```
 1   is some issue as to liability with respect to whether due

 2   diligence was performed by the funds and therefore whether

 3   there was actual fraudulent concealment.

 4             THE COURT:  But at the outset, seems to me it will

 5   help Mr. McGuire and the folks on that side of the table if

 6   they know what piles of money they're looking at and from

 7   pensions, from which entity, because then they can make a

 8   judgment as to whether they want to pursue any of this stuff.

 9             So he's going to make the asset discovery on the same

10   three-month time frame as everybody else, and you folks are

11   going to let me know what you need to do in addition.  You and

12   Mr. McGuire are obviously going to chat, and if you people

13   think you need something else, let me know.  And don't wait

14   until the end of the three months to do it, let's get this

15   going.

16             MR. LOMBARDI:  And your Honor, obviously after we

17   complete this discovery and to the extent we can move forward

18   with the interpleader action, there will still be merit

19   discovery.

20             THE COURT:  We'll get there.

21             MR. LOMBARDI:  OK.  I just indicate obviously my

22   client is now incarcerated in West Virginia, so obviously a

23   deposition would be problematic.

24             THE COURT:  West Virginia is beautiful this time of

25   year.
```

D4TTNYCC

1          MR. LOMBARDI:  It is lovely this time of year.

2          THE COURT:  Also we have a lot of video conferencing.

3          MR. LOMBARDI:  I know, I have done it before, and

4     perhaps Mr. McGuire has, but I wanted to add it may be in a bit

5     of flux because -- and it may well be resolved in that

6     three-month period, but he is, I believe, scheduled to be

7     transferred to another facility, but before that happens he is

8     actually sent to a larger sort of clearinghouse facility before

9     the transfer, and there's kind of a blackout period.  So I will

10    wrestle with that.

11         THE COURT:  I'm sure he had an accountant or in

12    somebody with all this financial data.  Get it done.

13         MR. LOMBARDI:  We'll endeavor to.

14         THE COURT:  Counsel, don't wait on things.  If you

15    have issues, let me know.

16         Thank you, counsel.  Nice to see you all.

                          o0o