UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Annuity Fund, and New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund, by their Trustees, Frank Spencer, Douglas J. McCarron, John Ballantyne, Paul Tyznar, Paul O'Brien, Kevin M. O'Callaghan, Catherine Condon, David Meberg, Bryan Winter, and John DeLollis,<br><br>                                  Plaintiffs,<br><br>               - against -<br><br>Michael Forde, John Greaney, Joseph Olivieri, Brian Hayes, Michael Mitchell, Finbar O'Neill, K.A.F.C.I., Michael Brennan, Turbo Enterprises, Inc., Terence Buckley, Pitcohn Construction Enterprises, Inc., Gerard McEntee, Pyramid Associates Construction Corp., James Duffy, EMB Contracting Corp., Michael Batalias, Elisavet Batalias, Matthew Kelleher, Brian Carson, Joseph Ruocco, John Stamberger, and Michael Vivenzio,<br><br>                                 Defendants. | 11 CV 5474 (LAP) (GWG) |
| John Greaney and Imelda Greaney,<br><br>                                 Plaintiffs,<br><br>               - against -<br><br>New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Annuity Fund, Plan Administrator of the New York City District Council of Carpenters Pension Fund, Plan Administrator of the New York City District Council of Carpenters Annuity Fund, Board of Trustees of the New York City District Council of Carpenters Pension Fund, and Board of Trustees of the New York City District Council of Carpenters Annuity Fund,<br><br>                                 Defendants. | 16 CV 3551 (LAP) (GWG) |

## MEMORANDUM OF LAW IN SUPPORT OF
## FUNDS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION                                                                    1

STATEMENT OF FACTS                                                             2

      A.     Background                                                         2

      B.     The Fraudulent Scheme                                              4

      C.     Forde and Greaney's Pension and Annuity Benefits                  10

ARGUMENT                                                                      11

I.     SUMMARY JUDGMENT STANDARD                                            11

II.    THE FUNDS ARE ENTITLED TO SUMMARY JUDGMENT
       ON THEIR ERISA CLAIMS AGAINST FORDE AND GREANEY                  12

      A.     Forde and Greaney Were Fiduciaries                               12

      B.     Forde and Greaney Breached Their Fiduciary Duties                12

      C.     Forde and Greaney Are Liable For All Damages Suffered By the Funds   14

      D.     The Funds' ERISA Claims Are Timely                               15

      E.     Under ERISA, Forde and Greaney's Benefits Should Be Offset
           and Applied Toward Their Liability For Breach of Fiduciary Duties   16

III.   THE FUNDS ARE ENTITLED TO SUMMARY JUDGMENT
       ON THEIR RICO CLAIMS AGAINST FORDE AND GREANEY                   18

IV.    THE CRIMINAL RESTITUTION ORDER DOES NOT BAR
       THE FUNDS' CLAIMS IN THIS CIVIL CASE                            20

V.     THE FUNDS GAVE GREANEY ALL REQUIRED DOCUMENTS                     21

CONCLUSION                                                                    22

## INTRODUCTION

The New York City District Council of Carpenters Pension Fund (the "Pension Fund"), New York City District Council of Carpenters Welfare Fund (the "Welfare Fund"), New York City District Council of Carpenters Annuity Fund (the "Annuity Fund"), and New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "Apprenticeship Fund") and their trustees and plan administrator (collectively, the "Funds") respectfully submit this memorandum of law in support of their motion for summary judgment regarding all claims by the Funds against former trustees Michael Forde ("Forde") and John Greaney ("Greaney") in Case No. 11 CV 5474 (the "2011 Case") and all claims by John Greaney and Imelda Greaney against the Funds in Case No. 16 CV 3551 (the "2016 Case").

The Funds brought the 2011 Case against three of their former trustees, one former union business agent and one of his associates, six former shop stewards, five employers, and six of their principals, on the ground that they acted in concert to embezzle millions of dollars of the Funds' assets by carrying out a scheme in which employers paid bribes to union representatives, who in exchange deliberately failed to enforce the employers' obligations to make contributions to the Funds in accordance with the applicable collective bargaining agreements.  The Funds have settled or dismissed their claims in the 2011 Case against all defendants other than the three former trustees – Forde, Greaney, and Joseph Olivieri.  In the 2016 Case, Greaney and his wife seek to recover benefits from the Pension Fund and the Annuity Fund, and Greaney also seeks penalties for an alleged failure to provide documents.

As discussed below, the Funds are entitled to summary judgment against Forde and Greaney regarding their liability for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1461, and regarding the

damages suffered by the Funds.  In addition, the Pension Fund and Annuity Fund are entitled to summary judgment confirming their right, under ERISA, to enforce a judgment against Forde and Greaney for breach of fiduciary duties by offsetting the pension and annuity benefits to which they or their spouses would otherwise be entitled.  Furthermore, based on their criminal convictions under the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961-1968, the Funds are entitled to summary judgment holding Forde and Greaney liable for treble damages under RICO's civil provisions.  Finally, the Pension Fund and Annuity Fund are entitled to summary judgment confirming that they fully complied with their obligations to provide documents and consequently are not liable to Greaney for any statutory penalties.

## STATEMENT OF FACTS

### A.    Background

The Funds are jointly-administered trust funds established under section 302(c) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186(c), and are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3).  (Declaration of Luke Powers ("Powers Dec."), ¶ 3.)  The Funds are administered by a board of trustees.  (Powers Dec., ¶ 4.) Half of the trustees are appointed by the New York City District Council of Carpenters (the "District Council"), and half are appointed by certain associations of employers.  (Powers Dec., ¶ 4.)  As of August 5, 2011, when the Funds commenced the 2011 Case, the Funds' trustees were Frank Spencer, Douglas McCarron, John Ballantyne, Paul Tyznar, Paul O'Brien, Kevin O'Callaghan, Catherine Condon, David Meberg, Bryan Winter, and John DeLollis.  (Powers Dec., ¶ 5.)  The Funds' current trustees are Joseph Geiger, Stephen McInnis, Michael Cavanaugh, Paul Capurso, John Sheehy, Paul Tyznar, Paul O'Brien, Kevin O'Callaghan, Catherine Condon, David Meberg, Michael Salgo, and John DeLollis.  (Powers Dec., ¶ 6.)

The District Council is a labor organization that has entered into collective bargaining agreements ("CBAs") with numerous employers and various associations of employers. (Powers Dec., ¶ 7.) At relevant times, the signatory employers have included On Par Contracting Corp. ("On Par"), Turbo Enterprises, Inc. ("Turbo"), Pitcohn Construction Enterprises, Inc. ("Pitcohn"), Pyramid Associates Construction Corp. ("Pyramid"). (Powers Dec., ¶ 10.) Pursuant to their CBAs with the District Council, signatory employers are and were required, among other things, to employ only union members to perform specified categories of work within specified geographical areas ("Covered Work"), to pay specified hourly wage rates, and to make specified contributions to the Funds for each hour of Covered Work. (Powers Dec., ¶ 8.) In addition, signatory employers are and were required to submit periodic reports to the Funds stating the number of hours of Covered Work performed by each employee. (Powers Dec., ¶ 9.)

From 1994 through 1997, Forde was a business agent for Local 608, which was one of the local unions comprised by the District Council. (Ex. 2 at 14.)[1] From 1997 through 2000, Forde was president of Local 608. (Ex. 2 at 14.) From 2000 through 2009, Forde was the executive secretary-treasurer ("EST") of the District Council and a trustee of the Funds. (Ex. 2 at 14.) As EST, Forde was the highest-ranking executive of a 20,000-member organization. (Ex. 9, page "5 of 8"; Ex. 10 at 742.)

From 1997 through 2000, Greaney was a business agent for Local 608. (Ex. 3 at 21.) From approximately 2000 through 2008, Greaney was the business manager and president of Local 608. (Ex. 3 at 21.) From May 2003 through August 2009, Greaney was a trustee of the Funds. (Ex. 3 at 21; Ex. 4 at 16.)

---

[1] Except as otherwise noted, all exhibits cited herein are attached to the accompanying declaration of the Funds' counsel.

**B.**    **The Fraudulent Scheme**

In August 2009, a federal grand jury in the Southern District of New York indicted Forde, Greaney, and others for engaging in a scheme to deprive the Funds of millions of dollars in employer contributions.  (Ex. 5.)  Following a series of superseding indictments, Forde and Greaney pled guilty to, and were convicted of, charges of racketeering conduct and racketeering conspiracy in violation of RICO, 18 U.S.C. § 1962(c) and (d).  (Ex. 2-3, 6-8.)  Greaney also pled guilty to, and was convicted of, various other crimes, including unlawful acceptance of money by a union representative in violation of section 302(b) of the Labor Management Relations Act, 29 U.S.C. § 186(b), and false statements in civil depositions in violation of 18 U.S.C. § 1623.  (Ex. 3, 6, 8.)

Forde specifically admitted the following wrongdoing:

> From approximately 1994 to 2004, I along with other union officials accepted bribes in the form of cash payments from certain contractors including On Par, Turbo, Pyramid, New York City Acoustics and KAFCI, in return for allowing the contractors to violate the terms of their collective bargaining agreements with the district council.  In allowing these violations of the collective bargaining agreements, I along with other union officials let contractors use undocumented workers and avoid making contributions to the district council's benefit funds that should have been paid on behalf of those workers.

> At the time that I accepted the bribes, I knew that I was violating the 1994 consent decree issued by Judge Haight in the civil case brought by the government [which was designed to eradicate corruption involving the District Council], and I made efforts to obstruct investigations into my conduct.

> Finally, in January 2009, I gave false testimony at a deposition in a civil action between the district council and a contractor.  At the deposition, I falsely denied that I had personal knowledge of a contractor using undocumented workers.

(Ex. 2 at 14-15.)

Judge Marrero sentenced Forde to imprisonment for 132 months.  (Ex. 7, 9.)  In rejecting

Forde's request for a more lenient sentence, Judge Marrero stated:

> [E]verything that portrays [Forde's] crime speaks of the higher regions of
> culpability, and the lowest circles of moral decay.  What Mr. Forde's criminal
> behavior summons to any objective mind are words from a thesaurus of
> corruption, words like egregious, cynical, contemptible, sinister, shocking,
> perverse, hypocritical, downright wicked.  When crime reaches these outer
> frontiers of depravity, as the Court is persuaded it does in this case, it elicits
> calls for recognition of the extraordinary, as it has done here today, in a
> corresponding sentence.

(Ex. 9, pages "7 of 8" to "8 of 8.")

Greaney likewise admitted that he was "a corrupted union official."  (Ex. 737.)  Greaney

specifically admitted, among other things:

> I accepted or shared in the illegal cash payments from a number of union
> contractors, including but not limited to On Par Contracting, Turbo
> Construction, Pitcohn Construction, and Pyramid Associates Construction....
> I . . . allowed the collective bargaining agreements to be violated in the
> following ways:  . . . I . . . allowed union work cards to be issued to illegal
> immigrants. . . . I . . . [was] aware that the illegal immigrants were being paid
> in cash, and that the contractors did not make contributions to the district
> council benefit funds on behalf of the illegal immigrants as required by the
> collective bargaining agreements. . . . I was aware that the contractors filed
> false remittance reports, under-reporting the number of men working on
> particular jobs and/or the number of hours actually worked.  I was aware that
> . . . as a result, the district council benefit funds did not receive from the
> contractors the contributions the contractors were required to pay pursuant to
> the collective bargaining agreements.

(Ex. 3 at 21-23.)  Four other union officials – Jerry Philbin, Maurice Leary, Maurice McGrath, and

Martin Devereaux – also received cash payments from employers, which they shared with Forde

and Greaney.  (Ex. 4 at 23-27, 36.)

This fraudulent scheme enabled four of the signatory employers to evade their collectively

bargained obligations to pay the Funds a total of at least $21,579,334.97.  As detailed in Exhibit

30, various parties have made payments toward that amount totaling $6,486,813.90, leaving an

unpaid balance of $15,092,521.07.  The Funds' losses in the gross amount of $21,579,334.97 have the following four components:

First, for the period January 1, 2000 through June 30, 2005, On Par failed to pay a total of at least $12,101,543.18, consisting of contributions to the Funds in the principal amount of $9,455,283.17 and interest thereon in the amount of $2,646,260.01.  These subtotals are set forth in a judgment that Judge Hellerstein issued on October 31, 2006 in favor of the Funds against On Par based on a report prepared by the Funds' auditor.  (Ex. 11-12.)  The Funds have conservatively confined this component of their damages request to the principal and interest amounts contained in Judge Hellerstein's judgment.  The edition of the audit report presented to Judge Hellerstein indicated that the principal amount of On Par's deficiency was $9,141,758.00.   (Ex. 11 at "NYCDCCBF-2124.")  The record does not explain why the principal amount set forth in Judge Hellerstein's judgment is $313,525.17 more than the principal amount shown in the audit report. However, that difference is more than offset by the fact that, for purposes of the instant motion, the Funds are not seeking interest for the 11 years that have elapsed since October 31, 2006.  (Ex. 12 at 2.)

Second, for the period January 1, 2002 through May 31, 2005, Turbo failed to pay a total of at least $6,028,913.29, consisting of contributions to the Funds in the principal amount of $4,318,197.05 and interest thereon in the amount of $1,710,716.24.  These amounts are set forth in a detailed arbitration award issued on November 22, 2011 in favor of the Funds against Turbo. (Ex. 13.)

Third, Forde and Greaney have acknowledged that, for the period January 1, 2002 through June 30, 2005, Pitcohn failed to pay a total of at least $2,066,565.53, consisting of contributions to the Funds in the principal amount of $1,449,855.51 and interest thereon in the amount of

$626,710.02, less a security deposit in the amount of $10,000.  (Ex. 15 at 1-2; Ex. 16 at 2; Ex. 17 at 5-6.)

Fourth, Forde and Greaney have acknowledged that, for the period January 1, 2002 through June 30, 2005, Pyramid failed to pay a total of at least $1,382,312.97, consisting of contributions to the Funds in the principal amount of $937,471.36 and interest thereon in the amount of $451,661.75, less a security deposit in the amount of $6,820.14.  (Ex. 15 at 1-2; Ex. 16 at 2; Ex. 17 at 5-6.)

On February 2, 2011, the government recommended that Judge Marrero order that Forde and Greaney, jointly and severally, pay restitution to the Funds for losses related to Turbo in the principal amount of $1,376,418.22 plus interest through May 11, 2005; losses related to Pitcohn in the principal amount of $1,449,855.51 plus interest through March 10, 2009; and losses related to Pyramid in the principal amount of $937,471.36 plus interest through October 15, 2009.  (Ex. 17 at 5.)  Neither Forde nor Greaney disputed the government's calculations.  (Ex. 17 at 5-6.)  Both before and after the government made its recommendation, the Funds requested that Judge Marrero order restitution of more than $18 million.  (Ex. 18-19.)  The Funds noted that this amount was "undoubtedly understated" and that they may seek additional amounts in a subsequent civil proceeding.  (Ex. 19 at 3, 4 n.4.)  On April 20 and June 20, 2011, in accordance with the government's recommendation, Judge Marrero ordered Forde and Greaney, jointly and severally, to pay restitution to the Funds in the amount of $4,973,259.92.  (Ex. 15-16.)

On August 5, 2011, the Funds commenced the 2011 Action, which seeks treble damages under RICO's civil provisons and compensatory damages for breach of fiduciary duty under ERISA.  The compensatory damages that the Funds seek in the 2011 Action differ in two main

respects from the restitution amounts sought by the government and awarded by Judge Marrero in the criminal case.

First, the government did not seek (and Judge Marrero did not impose) restitution for losses related to On Par because, according to the government, "the Funds reached a settlement agreement with On Par in or about 2009, pursuant to which On Par paid the Funds $4.5 million to resolve all outstanding loss claims, including claims relating to restitution." (Ex. 14 at 7.) The government misconstrued the scope of the release contained in the settlement agreement. Under the terms of the agreement, the Funds accepted payments totaling $4,292,487 in exchange for releases of On Par, its owner (James Murray), and his wife (Tracy Murray). (Ex. 20.) That sum consisted of a payment that the Funds had already received in the amount of $750,000 and an additional payment in the amount of $3,542,487. (Ex. 20, ¶ 1.) The Funds agreed that they would not "claim any additional amounts as victim restitution from the government in connection with the pending prosecution of Murray." (Ex. 20, ¶ 2.) Under the terms of the settlement agreement, the Funds did not release anyone other than On Par, James Murray, Tracy Murray, and their heirs, executors, administrators, successors, and assigns. (Ex. 20, ¶ 3.) The settlement agreement did not state that the Funds were releasing Forde or Greaney. (Ex. 20.) Indeed, on May 14, 2009, Forde and Greaney were among the members of the Funds' board of trustees who, on behalf of the Funds, voted to ratify the settlement agreement. (Powers Dec., Ex. 1.)

Second, at the time of the restitution proceedings in the criminal case against Forde and Greaney, there was a pending arbitration between the Funds and Turbo regarding the amount of Turbo's unpaid contributions. (Ex. 13 at 2, 189.) In their submissions to Judge Marrero, both the government and the Funds noted that the arbitrator had conducted an evidentiary hearing but had not yet issued a decision. (Ex. 14 at 6 n.3; Ex. 18 at 2 n.1.) After the criminal restitution

proceedings concluded, the arbitrator ruled that the Funds suffered damages in a substantially higher amount.  (Ex. 13 at 188.)  As a result of the delayed issuance of the arbitrator's award, Judge Marrero, the government, and the Funds all lacked the benefit of the arbitrator's extremely detailed analysis.  (Ex. 13.)

Prior to the August 2009 indictment, none of the Funds' current or former trustees (other than Forde, Greaney, and perhaps Olivieri) knew or had reason to know, or even to suspect, that Forde or Greaney had taken money from employers.  (Ex. 4 at 38, 66-67, 70-77.)  Prior to that time, Greaney told no one (except Forde, Philbin, Leary, McGrath, and Devereaux, all of whom shared bribes with Greaney) that either he or Forde had accepted bribes from employers.  (Ex. 4 at 36-37, 66-67.)  By his own admission, Greaney took bribes from approximately 2000 through 2004.  (Ex. 10 at 739.)  Thereafter, Forde, Greaney, and others obstructed a court-appointed investigator's inquiries by, among other things, "lying in depositions and just covering up the whole operation."  (Ex. 10 at 739-40.)  As late as February 6, 2009, Greaney continued his active participation in the coverup by giving false testimony regarding his contacts with the owner of On Par, and by falsely testifying that he had never accepted cash payments from the owner of Pitcohn.  (Ex. 3 at 25.)

The Funds conducted audits of On Par, Turbo, Pitcohn, and Pyramid, which revealed large amounts of unpaid contributions.  (Ex. 11 at NYCDCCBF-2121 to -2124; Ex. 13 at 7-8; Ex. 14 at 7-8.)  In 2006, the Funds filed lawsuits against On Par, Pitcohn, and Pyramid, but were unable to obtain the deposition testimony of their owners – James Murray, Gerard McEntee, and James Duffy, respectively – because Murray had fled to Ireland, and McEntee and Duffy invoked their Fifth Amendment privilege against self-incrimination.  (Ex. 10 at 752; Ex. 11; Ex. 14 at 5-6 & n.3; Ex. 22-23.)  The Funds also initiated arbitration against Turbo, but its owner, Terence Buckley,

likewise fled the country, and did not testify at the hearing.  (Ex. 13, 21.)[2]  Greaney admitted that

he was "half relieved" to learn that Murray was in Ireland "because there was no extradition

between Ireland and the United States."  (Ex. 10 at 752.)  The truthful testimony of Murray – or

of Buckley, McEntee, or Duffy – would have revealed the corrupt conduct of Forde and Greaney.

(Ex. 2 at 14-15; Ex. 3 at 21-23.)

### C.      Forde and Greaney's Pension and Annuity Benefits

Both Forde and Greaney would be entitled to benefits from the Pension Fund and the

Annuity Fund were it not for the losses that the Pension Fund and Annuity Fund suffered as a

result of the fraudulent conduct at issue in the instant litigation.   Both Forde and Greaney are also

entitled to substantial benefits under other pension plans that are not at issue in the instant

litigation.

On September 2, 2014, Greaney applied for benefits from the Pension Fund.  (Ex. 4 at 77-

78.)  By letter dated November 26, 2014, the Pension Fund denied Greaney's application because

the losses he caused *to* the Pension Fund exceeded the benefits to which he was entitled *from* the

Pension Fund.  (Ex. 24.)  By letter dated March 2, 2015, Greaney filed an administrative appeal.

(Ex. 25.)  By letter dated July 20, 2015, the Pension Fund informed Greaney that it had denied his

appeal.  (Ex. 26.)

Greaney also sought benefits from the Annuity Fund.  By letter dated August 11, 2015, the

Annuity Fund denied Greaney's request because the losses he caused *to* the Annuity Fund

exceeded the benefits to which he was entitled *from* the Annuity Fund.   That letter further informed

Greaney that an administrative appeal would be futile because his request for annuity benefits had

---

[2] In 2012, the Funds located Buckley in Ireland.  Even at that time, he attempted to evade service of process.
(Ex. 21.)

been denied for the same reason that his request for pension benefits had been denied, and all underlying issues had already been addressed in an administrative appeal.  (Ex. 27.)

During the administrative process of applying for benefits, Greaney requested copies of various documents, and the Funds promptly produced copies of all documents to which he was entitled.  (Ex. 28-29.)  On May 12, 2016, Greaney and his wife filed the 2016 Action, which seeks pension benefits, annuity benefits, and penalties for an alleged failure to provide documents.

## ARGUMENT

## I.   SUMMARY JUDGMENT STANDARD

"Summary judgment is warranted if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys*, 426 F.3d at 553 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

"When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys*, 426 F.3d at 553.  "However, 'the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could *reasonably* find for the [nonmoving party].'" *Id.* (quoting *Anderson*, 477 U.S. at 252) (emphasis added by the *Jeffreys* court).

## II.   THE FUNDS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR ERISA CLAIMS AGAINST FORDE AND GREANEY

### A.   Forde and Greaney Were Fiduciaries

Forde and Greaney were trustees of the Funds, and were consequently "fiduciaries" as defined in ERISA.  Section 3(21)(A) of ERISA provides in pertinent part:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A)(i), (iii).  Under this definition, all trustees are fiduciaries, but not all fiduciaries are trustees.  The relevant regulation explains:

> Q: Does a person automatically become a fiduciary with respect to a plan by reason of holding certain positions in the administration of such plan?
>
> A: Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section 3(21)(A) of the Act. For example, a plan administrator or a trustee of a plan must, by the very nature of his position, have "discretionary authority or discretionary responsibility in the administration" of the plan within the meaning of section 3(21)(A)(iii) of the Act. Persons who hold such positions will therefore be fiduciaries.

29 C.F.R. § 2509.75-8, at D-3.  *See also Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 64 (2d Cir. 2006) (applying the foregoing regulation).

### B.   Forde and Greaney Breached Their Fiduciary Duties

ERISA imposes fiduciary duties of loyalty and prudence that are "the highest known to the law." *Dononvan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).  Section 404(a)(1) of ERISA provides in pertinent part that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A)  for the exclusive purpose of:
>
>   (i)   providing benefits to participants and their beneficiaries; and

(ii)   defraying reasonable expenses of administering the plan; [and]

(B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104(a)(1)(A), (B).  Thus, "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled." *Central States, S.E. and S.W. Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 571 (1985).  "The duties of loyalty and prudence mandated in Section 404(a) of ERISA include the 'duty to take reasonable steps to realize on claims held in trust.'" *Harris v. Koenig*, 602 F. Supp. 2d 39, 54-55 (D.D.C. 2009) (quoting *Donovan v. Bryans*, 566 F. Supp. 1258, 1262 (E.D. Pa. 1983)).  "When, as in this case, a plan has potential claims against a third party, the 'trustees have a duty to investigate the relevant facts, to explore alternative courses of action and, if in the best interests of the plan participants, to bring suit . . . .'" *Koenig*, 602 F. Supp. 2d at 55 (quoting *McMahon v. McDowell*, 794 F.2d 100, 112 (3d Cir. 1986)).  *See also Liss v. Smith*, 991 F. Supp. 278, 290-91 (S.D.N.Y. 1998) (same).

Forde and Greaney admitted that, in exchange for bribes, they actively helped employers evade their obligations to make contributions to the Funds.  Thus, there is no genuine issue of material fact concerning the failure of Forde and Greaney to discharge their fiduciary duty of loyalty under section 404(a)(1)(A) of ERISA and their fiduciary duty of prudence under section 404(a)(1)(B) of ERISA.

Moreover, Forde and Greaney contravened various other provisions of ERISA.  For example, they breached their duties under section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1), which provides that a fiduciary must not "deal with the assets of the plan in his own interest or for his own account."  Likewise, they breached their duties under section 406(b)(3) of ERISA, 29 U.S.C. § 1106(b)(3), which provides that a fiduciary must not "receive any consideration for his

own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

### C. Forde and Greaney Are Liable for All Damages Suffered by the Funds

"If a trustee fails to adhere to [ERISA's] fiduciary standards, he may be held personally liable under ERISA for whatever losses result to a plan from his misconduct." *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984) (*citing* 29 U.S.C. § 1109(a)). "Under ERISA, breaching fiduciaries are jointly and severally liable." *In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1023 (2d Cir. 1992). In the instant case, as detailed above, Forde and Greaney breached their fiduciary duties and thereby caused the Funds to incur losses in the net amount of $15,034,724.08. Accordingly, the Court should hold Forde and Greaney jointly and severally liable for that amount.

Greaney has asserted that a portion of the damages should be allocated solely to Forde. Greaney has admitted taking bribes from employers both before and after May 2003, but has asserted that he should not be held liable under ERISA for damages measured by contributions that employers were required to make for work performed prior to May 2003, when Forde was a trustee and Greaney was not. However, once he became a trustee, Greaney had a fiduciary duty, along with the rest of the Board of Trustees, to ensure that the Funds made all reasonable efforts to collect the employer contributions and other payments to which they were entitled. *See, e.g., Central Transport*, 472 U.S. at 571; *McMahon*, 794 F.2d at 112; *Koenig*, 602 F. Supp. 2d at 55; *Liss*, 991 F. Supp. at 290-91. This included a duty collect delinquent employer contributions for work performed both before and after he became a trustee. Greaney knew that certain employers, including but not limited to On Par, Turbo, Pitcohn, and Pyramid, had been corruptly evading their contribution obligations for years, but Greaney failed to disclose that information to the Board of

-14-

Trustees.  (Ex. 4 at 36-38, 66-77.)  Greaney thereby breached his fiduciary duties by obstructing

the Funds' ability to collect those contributions.  Accordingly, Greaney is liable under ERISA – to

the same extent as Forde – for helping employers evade their contribution obligations for work

performed both before and after May 2003.

### D.    The Funds' ERISA Claims Are Timely

In their answers, Forde and Greaney asserted that the Funds' claims are somehow barred

by the statute of limitations.  They are incorrect.  Section 413 of ERISA provides:

> No action [for breach of fiduciary duty] may be commenced . . . after the
> earlier of –
>
>> (1)  six years after (A) the date of the last action which consituted a
>> part of the breach or violation, or (B) in the case of an omission the
>> latest date on which the fiduciary could have cured the breach or
>> violation, or
>>
>> (2) three years after the earliest date on which the plaintiff had actual
>> knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be
> commenced not later than six years after the date of discovery of such breach
> or violation.

29 U.S.C. § 1113.  *See New York City District Council of Carpenters Pension Fund v. Forde*, 939

F. Supp. 2d 268, 280-81 (S.D.N.Y. 2013) (denying Olivieri's motion to dismiss).

At Olivieri's perjury trial, Greaney testified that he took bribes "from like 2000 to about

2004 or thereabouts."  He then testified as follows:

> Q.  After that, did you continue to obstruct investigations into your conduct?
>
> A.  Yes. . . . [W]e tried to hide what we were doing so the whole plan wouldn't
> have been found out.  And that included lying in depositions and just covering
> up the whole operation.

(Ex. 10 at 739-40.)  Both Forde and Greaney admitted that, as late as 2009 – shortly before they

were indicted – they lied in depositions to conceal their past wrongdoing.  (Ex. 2 at 15; Ex. 3 at

25.)  This indisputably constitutes "fraud or concealment" within the meaning of section 413 of

ERISA.  Consequently, the six-year statute of limitations did not begin to run until 2009, and this action was timely commenced in 2011.

Even in the absence of "fraud or concealment," this action would still be timely.  The three-year period set forth in section 413(2) of ERISA could not possibly have started running until 2009 because the named plaintiffs – the trustees who were not involved in the wrongdoing, some of whom did not become trustees until 2009 or later – had no way of knowing about Forde and Greaney's wrongdoing until the indictments were unsealed in 2009.  Furthermore, the six-year period set forth in section 413(1) of ERISA did not begin to run until 2006 at the earliest.  Although Forde and Greaney claim that they stopped taking bribes in 2004, they allowed some of the employers who paid those bribes to continue to cheat the Funds until 2006.  Therefore, both the three-year period prescribed by section 413(2) and the six-year period prescribed by section 413(1) would have expired no earlier than 2012.  The Funds commenced this action on August 5, 2011.  Consequently, regardless of whether there was "fraud or concealment," the Funds' complaint was timely.

### E.   Under ERISA, Forde and Greaney's Benefits Should Be Offset and Applied Toward Their Liability For Breach of Fiduciary Duties

The Pension Fund and Annuity Fund are also entitled to a ruling that they have no legal obligation to pay any benefits to Forde, Greaney, or their spouses.  Prior to 1997, although there was a division of authority, several courts held that "[C]ongress did not intend to allow an individual . . . to collect pension benefits prior to satisfying his liabilities to the fund." *Coar v. Kazimir*, 990 F.2d 1413, 1423 (3d Cir. 1993).  "Indeed, a contrary reading [of ERISA] would permit dishonest trustees . . . who . . . breached their fiduciary duties to the pension plan to evade their obligations to the fund and would result in [p]lan members and their families [having] to watch their pension monies disappear once again into the [dishonest trustees'] pockets." *Id.*  "[I]t

defies common sense to allow a breaching fiduciary to collect from the very fund he fraudulently depleted." *Friedlander v. Doherty*, 851 F. Supp. 515, 522 (N.D.N.Y. 1994). *See also Parker v. Bain*, 68 F.3d 1131, 1140-41 (9th Cir. 1995) (holding that fiduciary's interest in plan, as a participant, was extinguished when he embezzled plan assets exceeding the value of his benefit).

The courts have reached the same conclusion after the 1997 enactment of section 206(d)(4)-(5) of ERISA, 29 U.S.C. § 1056(d)(4)-(5), which authorizes some offsets but not others. *See, e.g., Katzenberg v. Lazzari*, 2010 WL 680985, *6 (E.D.N.Y. Feb. 24, 2010) (holding that "the appropriate remedy . . . is for plaintiff . . . to forfeit his pension and be deprived of any pension benefits"), *aff'd*, 406 Fed. Appx. 559 (2d Cir. 2011); *Gaudet v. Sheet Metal Workers National Pension Fund*, 216 F. Supp. 2d 282 (E.D. La. Mar. 11, 2002) (holding that participant effectively received his pension when he embezzled from the plan, and there was consequently no pension left for the plan to pay to the participant or his spouse), *aff'd*, 2003 U.S. App. LEXIS 28615 (5th Cir. June 6, 2003).[3]

Section 206(d)(4)(A) of ERISA authorizes "any offset of a participant's benefits provided under an employee pension benefit plan against an amount that the participant is ordered or required to pay to the plan if . . . the order or requirement to pay arises . . .  under a judgment of conviction for a crime involving such plan, under a civil judgment . . . [for] violation . . . of [fiduciary duties] . . . or . . . pursuant to a settlement agreement . . . ." 29 U.S.C. § 1056(d)(4)(A). Under this provision, the Pension Fund and Annuity Fund are entitled to enforce a judgment for breach of fiduciary duty by offsetting any benefits to which Forde and Greaney may be entitled.

---

[3] Imelda Greaney alleges that she is entitled to a statutory share of John Greaney's interest in the Funds.  John Greaney married Imelda Greaney in 2012.  (Ex. 26 at 6.)  By that time, John Greaney's interest in the Funds had already been extinguished.

Forde and Greaney have argued that the word "or" is the most important part of the foregoing statutory provision.  Forde and Greaney argue that, because Congress authorized an offset stemming from "a judgment of conviction, . . . a civil judgment, . . . or a settlement agreement," Congress cannot have intended to authorize an offset where the victimized plan is the beneficiary of *both* a judgment of conviction *and* a civil judgment.

Forde and Greaney are incorrect because, among other things, "[t]he word 'or' . . . is often interpreted to mean the conjunctive if this is more consistent with the legal intent."  *Balko v. Ukrainian National Federal Credit Union*, 2014 U.S. Dist. LEXIS 42427, *107 (S.D.N.Y. Mar. 28, 2014) (quoting 1A *Sutherland Statutory Construction* § 21:14 (7th ed. 2013)).  This Court recognized the same principle in adopting Local Civil Rule 26.3(d)(1), which provides that, in discovery requests, "[t]he connectives 'and' and 'or' shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope."  In short, "or" often means "and/or."  To effectuate Congress's intention to protect pension plans from wrongdoing by their trustees, section 206(d)(4)(A) of ERISA should be interpreted to apply to judgments resulting from criminal and/or civil proceedings, rather than just one or the other.  Forde and Greaney should not be permitted to use Judge Marrero's restitution order in the criminal case as a shield against the Pension Fund and Annuity Fund's right to offset their benefits, up to the amount of any judgment for breach of fiduciary duties in the instant civil case.

### III.   THE FUNDS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR RICO CLAIMS AGAINST FORDE AND GREANEY

The Funds are also entitled to summary judgment on their RICO claims.  RICO provides in pertinent part:

>  (c)   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
>  (d)   It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c), (d).

In connection with the very same fraudulent actions that are at issue in the instant civil case, both Forde and Greaney pled guilty to criminal charges that they violated RICO's substantive provisions, 18 U.S.C. § 1962(c), and that they also conspired to violate RICO, in contravention of 18 U.S.C. § 1962(d).  Based on those pleas, the specific misconduct that Forde and Greaney admitted in open Court, and the ensuing convictions, they are civilly liable to "[a]ny person injured in his business or property" as a result of those violations.  18 U.S.C. § 1964(d).  As detailed above, Forde and Greaney's RICO violations indisputably caused the Funds to be "injured in [their] business or property."  Accordingly, the Funds are entitled to damages not only under ERISA, but also under RICO.[4]

As detailed above, the Funds suffered losses in the gross amount of at least $21,579,334.97. RICO provides for treble damages.  18 U.S.C. § 1964(d).  Therefore, under RICO, the Funds are entitled to gross damages of $64,738,004.91.   After deducting the Funds' recoveries of $6,486,813.90, the Funds are entitled to judgment under RICO in the net amount of $58,251,191.01.

---

[4] The Funds timely filed their RICO claims in August 2011.  RICO's four-year statute of limitations began running in August 2009, and would not have expired until August 2013.  *See Rotella v. Wood*, 528 U.S. 549 (2000); *Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012).

IV.   **THE CRIMINAL RESTITUTION ORDER DOES**
      **NOT BAR THE FUNDS' CLAIMS IN THIS CIVIL CASE**

Contrary to Forde and Greaney's arguments, Judge Marrero's restitution order does not preclude the Funds from seeking additional damages in the instant civil case. In the criminal case, the Funds were afforded the right to be heard regarding restitution, as required by the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. However, the Funds had no legal right to appeal Judge Marrero's decision to impose a lower amount of restitution than the Funds requested. *See United States v. Kovall*, 857 F.3d 1060, 1063 (9th Cir. 2017) ("join[ing] the First, Third, Fifth, Eighth, and Tenth Circuits in holding that a victim may not directly appeal the restitution component of a criminal defendant's sentence under the [MVRA]").

Res judicata and collateral estoppel are inapplicable to damages in this case because, as victims of the defendants' crimes, the Funds were not parties to the criminal proceedings and were not in "privity" with the government. In *Doe v. Hesketh*, 828 F.3d 159 (3d Cir. 2016), the United States Court of Appeals for the Third Circuit became the first (and thus far only) appellate court to address this precise issue in the context of an MVRA restitution order. The court analyzed this issue in detail and held that a crime victim is not in privity with the government. *Id.* at 171-74. The court explained:

> The interests of a victim and the government in a restitution determination are not sufficiently similar for a finding of privity. A victim's interest in the context of restitution is undoubtedly to achieve the maximum amount of compensation for herself permissible under the law. A victim such as Doe may be willing to assume the time and cost to litigate the full extent of her damages in a trial as Doe has chosen to do in her civil suit. By contrast, the interests of the government in the restitution context are necessarily affected by its responsibility to "represent the interest of society as a whole." . . .
>
> Accordingly, the government has an interest in securing a plea agreement that is palatable to the defendant in order to avoid a lengthy and costly criminal trial in which it may not prevail and an interest in achieving speedy

-20-

> punishment for the purpose of deterrence. . . . These are not necessarily
> interests that the victim shares.

*Id.* at 172-73 (quoting *Ferri v. Ackerman*, 444 U.S. 193, 202-03 (1979)).  The court consequently held that an MVRA restitution order does not bar a subsequent civil action by the same victim against the same defendant for additional damages.  *Id.* at 171-74.

Likewise, in the instant case, in denying a motion to dismiss the Funds' complaint, Judge Preska recognized that the MVRA expressly contemplates that a crime victim may bring a subsequent civil proceeding.  *Forde*, 939 F. Supp. 2d at 277.  As Judge Preska noted, the MVRA provides in pertinent part that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in any Federal civil proceeding."  *Id.* (quoting 18 U.S.C. § 3664(j)(2)).  *See also United States v. Yalincak*, 853 F.3d 629 (2d Cir. 2017) (discussing same provision).  Thus, while double recovery of compensatory damages is prohibited, a restitution order under the MVRA does not impose a ceiling on the amount that a victim can recover.

## V.    THE FUNDS GAVE GREANEY ALL REQUIRED DOCUMENTS

Finally, there is no basis for Greaney's claim under section 502(c)(1) of ERISA, which provides that a plan administrator "may in the court's discretion be personally liable" for monetary penalties for failure to provide certain documents upon request.  29 U.S.C. § 1132(c)(1).  As detailed in Exhibit 29, the Funds timely provided all requested documents to which Greaney was entitled.  In any event, Greaney's claim under section 502(c)(1) focuses not upon documents that a plan administrator is required to provide under ERISA itself, but upon documents that, according to Greaney, a plan adminstrator is required to provide under the Department of Labor's implementing regulations.  (Greaney Complaint, ¶¶ 229-35.)  Section 502(c)(1) gives courts discretion to impose monetary penalties for violations of ERISA itself, but it does not authorize

courts to impose monetary penalties for violations of the Department of Labor's regulations.  *See, e.g., Curran v. Aetna Life Ins. Co.*, 2013 WL 6049121 (S.D.N.Y. Nov. 15, 2013).  Therefore, Greaney's claim is both factually and legally meritless.

## CONCLUSION

For the foregoing reasons, the Funds' motion for summary judgment should be granted in its entirety.

Dated:  New York, New York
        September 11, 2017

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By:   /s/*Marc A. Tenenbaum*_____
       Marc A. Tenenbaum, Esq.
       40 Broad Street, 7th Floor
       New York, New York 10004
       (212) 943-9080

       *Attorneys for Plaintiffs in 11 CV 5474*
       *and Defendants in 16 CV 3551*