UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Annuity Fund, and New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund, by their Trustees, Frank Spencer, Douglas J. McCarron, John Ballantyne, Paul Tyznar, Paul O'Brien, Kevin M. O'Callaghan, Catherine Condon, David Meberg, Bryan Winter, and John DeLollis,

Plaintiffs,

- against -

Michael Forde, John Greaney, Joseph Olivieri, Brian Hayes, Michael Mitchell, Finbar O'Neill, K.A.F.C.I., Michael Brennan, Turbo Enterprises, Inc., Terence Buckley, Pitcohn Construction Enterprises, Inc., Gerard McEntee, Pyramid Associates Construction Corp., James Duffy, EMB Contracting Corp., Michael Batalias, Elisavet Batalias, Matthew Kelleher, Brian Carson, Joseph Ruocco, John Stamberger, and Michael Vivenzio,

Defendants.

11 CV 5474 (LAP) (GWG)

---

John Greaney and Imelda Greaney,

Plaintiffs,

- against -

New York City District Council of Carpenters Pension Fund, New York City District Council of Carpenters Annuity Fund, Plan Administrator of the New York City District Council of Carpenters Pension Fund, Plan Administrator of the New York City District Council of Carpenters Annuity Fund, Board of Trustees of the New York City District Council of Carpenters Pension Fund, and Board of Trustees of the New York City District Council of Carpenters Annuity Fund,

Defendants.

16 CV 3551 (LAP) (GWG)

---

# FUNDS' RESPONSE TO OBJECTIONS
# TO REPORT AND RECOMMENDATION

## <u>TABLE OF CONTENTS</u>

INTRODUCTION     1

ARGUMENT     1

    I.     THE COURT SHOULD STRIKE THE GREANEYS' 70 PAGES OF OBJECTIONS BECAUSE THEY EXCEED THE LIMIT OF 20 PAGES     1

    II.     THE OBJECTIONS LACK MERIT     2

       A.     The Funds' RICO Claims Are Timely     3

       B.     Forde and Greaney Are Civilly Liable for Violation of RICO     5

       C.     Forde and Greaney Are Civilly Liable for Violation of ERISA     6

       D.     The Funds Suffered Damages of At Least $4,973,259.92     8

       E.     The Funds Are Entitled to Seek Additional Damages At Trial     8

       F.     The Settlement With On Par Does Not Bar the Funds' Claims     9

       G.     The Funds Are Entitled to Treble Damages Under RICO and Single Damages Under ERISA, But Do Not Seek Quadruple Damages     11

       H.     The Request to Delay Judgment Enforcement Is Premature     11

       I.     Under ERISA, Forde and Greaney's Benefits Should Be Offset and Applied Toward Their Liability for Breach of Fiduciary Duties     12

       J.     Imelda Greaney Is Not Entitled to Summary Judgment     15

CONCLUSION     20

## TABLE OF AUTHORITIES

### Cases

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*,
   483 U.S. 143 (1987)                                                                3

*Azkour v. Little Rest Twelve, Inc.*,
   2012 U.S. Dist. LEXIS 42210,
   2012 WL 1026730 (S.D.N.Y. Mar. 27, 2012)                                          17

*Balko v. Ukrainian National Federal Credit Union*,
   2014 U.S. Dist. LEXIS 42427 (S.D.N.Y. Mar. 28, 2014)                              14

*Certain Underwriters at Lloyd's v. Milberg LLP*,
   2009 U.S. Dist. LEXIS 97284 (S.D.N.Y. Sept. 29, 2009)                              5

*Central States, S.E. and S.W. Areas Pension Fund v. Central Transport, Inc.*,
   472 U.S. 559 (1985)                                                                6

*Coar v. Kazimir*,
   990 F.2d 1413 (3d Cir. 1993)                                                      13

*De Sylva v. Ballentine*,
   351 U.S. 570 (1956)                                                            14-15

*Donovan v. Bierwirth*,
   680 F.2d 263 (2d Cir. 1982)                                                        6

*Donovan v. Bryans*,
   566 F. Supp. 1258 (E.D. Pa. 1983)                                                  6

*Espinoza v. San Benito Consol. Indep. Sch. Dist.*,
   2016 U.S. Dist. LEXIS 193284 (S.D. Tex. Sept. 13, 2016)                            2

*Friedlander v. Doherty*,
   851 F. Supp. 515 (N.D.N.Y. 1994)                                                  13

*Harris v. Koenig*,
   602 F. Supp. 2d 39 (D.D.C. 2009)                                                   6

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
   610 F.3d 382 (7th Cir. 2010)                                                       3

*Katzenberg v. Lazzari*,
   2010 WL 680985 (E.D.N.Y. Feb. 24, 2010),
   *aff'd*, 406 Fed. Appx. 559 (2d Cir. 2011)                                        13

*Kernan v. Comm'r*,
   T.C. Memo 2014-228,
   2014 Tax Ct. Memo LEXIS 226 (Nov. 3, 2014),
   *aff'd*, 670 Fed. Appx. 944, 944 (9th Cir. 2016)                                   2

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012)                                                        3

*Liss v. Smith*,
 991 F. Supp. 278 (S.D.N.Y. 1998)    6

*McMahon v. McDowell*,
 794 F.2d 100 (3d Cir. 1986)    6

*Parker v. Bain*,
 68 F.3d 1131 (9th Cir. 1995)    13

*In re Polaroid ERISA Litig.*,
 362 F. Supp. 2d 461 (S.D.N.Y. 2005)    5

*Ponterio v. Kaye*,
 25 A.D.3d 865,
 808 N.Y.S.2d 439 (3d Dep't 2006)    5

*Robare v. Fortune Brands, Inc.*,
 39 A.D.3d 1045,
 833 N.Y.S.2d 753 (3d Dep't 2007)    5

*Rosenschein v. Meshel*,
 688 Fed. Appx. 60 (2d Cir. 2017)    3

*Rotella v. Wood*,
 528 U.S. 549 (2000)    3

*United States v. Fisk*,
 70 U.S. 445 (1866)    14

*United States v. Moore*,
 613 F.2d 1029 (D.C. Cir. 1979)    15

*United States v. Springer*,
 2010 U.S. Dist. LEXIS 6906,
 2010 WL 419936 (N.D. Okla. Jan. 28, 2010),
 *petition denied*, 2010 U.S. App. LEXIS 27413 (10th Cir. Oct. 22, 2010)    2

*United States v. Zahavi*,
 2012 WL 5288743 (S.D.N.Y. Oct. 26, 2012)    15

**Statutes**

Employee Retirement Income Security Act
 Section 205(c)(1)(A)(i), 29 U.S.C. § 1055(c)(1)(A)(i)    18
 Section 205(c)(2)(A)(i), 29 U.S.C. § 1055(c)(2)(A)(i)    18
 Section 205(h)(2)(A), 29 U.S.C. § 1055(h)(2)(A)    19
 Section 206(d)(4), 29 U.S.C. § 1056(d)(4)    11
 Section 206(d)(4)(A), 29 U.S.C. § 1056(d)(4)(A)    14-15
 Section 206(d)(4)(C)(iii), 29 U.S.C. § 1056(d)(4)(C)(iii)    19
 Section 404, 29 U.S.C. § 1104    7-8
 Section 404(a)(1), 29 U.S.C. § 1104(a)(1)    6
 Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A)    6
 Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B)    6
 Section 405, 29 U.S.C. § 1105    7-8

Employee Retirement Income Security Act (continued from previous page)
  Section 409, 29 U.S.C. § 1109                                                    7-8

Racketeer Influenced and Corrupt Organizations Act
  18 U.S.C. § 1964(c)                                                              11

**Rules**

Federal Rules of Civil Procedure
  Rule 54(b)                                                                       11-12

Local Civil Rules (S.D.N.Y.)
  Rule 26.3(d)(2)                                                                  15

Individual Rules of Practice of Judge Loretta A. Preska
  Paragraph 2(A)                                                                   1
  Paragraph 2(C)                                                                   1

**Other Authorities**

Larry M. Eig, *Statutory Interpretation and Recent Trends*
  (Cong. Research Serv. 2014)
  (available at https://fas.org/sgp/crs/misc/97-589.pdf)
  (last visited June 28, 2018)                                                     15

Lawrence E. Filson, *The Legislative Drafter's Desk Reference* (1992)             15

Plaintiff Harvey Katzenberg's Post-Trial Reply Submission,
  Doc. 136, *Katzenberg v. Lazzari*,
  No. 04-cv-5100 (E.D.N.Y. Dec. 29, 2009)                                          14

*Sutherland Statutory Construction* (7th ed. 2013)                                14

## INTRODUCTION

The New York City District Council of Carpenters Pension Fund (the "Pension Fund"), New York City District Council of Carpenters Welfare Fund (the "Welfare Fund"), New York City District Council of Carpenters Annuity Fund (the "Annuity Fund"), and New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "Apprenticeship Fund") and their Trustees and plan administrator (collectively, the "Funds") respectfully submit this response to the objections of John Greaney ("Greaney"), Imelda Greaney, and Michael Forde ("Forde") to Magistrate Judge Gorenstein's Report and Recommendation dated June 1, 2018 (the "R&R").

## ARGUMENT

### I.     THE COURT SHOULD STRIKE THE GREANEYS' 70 PAGES OF OBJECTIONS BECAUSE THEY EXCEED THE LIMIT OF 20 PAGES

As a threshold matter, paragraph 2(C) of the Court's Individual Practices provides in pertinent part that, [u]nless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 20 pages." (Emphasis in original).  Paragraph 2(A) of the Court's Individual Practices specifically identifies "objections to a Magistrate Judge's ruling" as an example of a "motion."  Under paragraphs 2(A) and 2(C), John and Imelda Greaney (collectively, the "Greaneys") were entitled to file 20 pages of objections to the R&R without prior permission.  Or, if they truly considered 20 pages to be inadequate, they were entitled to request advance permission to file additional pages.  But the Greaneys, who are represented by experienced counsel, took neither of these steps.  Rather, in blatant disregard of the Court's Individual Practices, the Greaneys filed a whopping 70 pages of objections – 350% of the maximum – without seeking or obtaining the Court's permission.

Because of this abuse, the Court should strike the Greaneys' objections to the R&R. Likewise, the Court should strike Forde's objections to the extent that they purport to incorporate the Greaneys' objections by reference.  As courts throughout the country have recognized, "[t]he court's ability to strike non-complying papers is a necessary tool if the court is to maintain control over its docket and ensure the progress of a case."  *United States v. Springer*, 2010 U.S. Dist. LEXIS 6906, at *25, 2010 WL 419936 (N.D. Okla. Jan. 28, 2010), *petition denied*, 2010 U.S. App. LEXIS 27413 (10th Cir. Oct. 22, 2010).  "Page limitation rules are an important tool for carrying out the just and efficient administration of justice."  *Id.*  "The Court has the inherent power to deem [the Greaneys' objections] stricken because [they] violated the Court's page limits."  *Kernan v. Comm'r*, T.C. Memo 2014-228, 2014 Tax Ct. Memo LEXIS 226, at *13 (Nov. 3, 2014), *aff'd*, 670 Fed. Appx. 944, 944 (9th Cir. 2016) (holding that "[t]he Tax Court did not abuse its discretion by striking [a party's] briefs because they exceeded the length limitations imposed by the court").  *See also Espinoza v. San Benito Consol. Indep. Sch. Dist.*, 2016 U.S. Dist. LEXIS 193284, at *6 (S.D. Tex. Sept. 13, 2016) (striking summary judgment papers because, among other things, "a regime imposing page limits on a motion and response by its very nature presumes prejudice where, as here, Defendant has gained the benefit of sprawling beyond the page limit that constrained Plaintiffs when they composed their response").

## II.     THE OBJECTIONS LACK MERIT

In the alternative, the Court should overrule the objections on their merits.  With a few exceptions noted below, the objections are almost entirely a rehash of arguments that the magistrate judge thoroughly analyzed and rejected.  The discussion below addresses the pertinent issues in the same order that the magistrate judge addressed them.

### A.    The Funds' RICO Claims Are Timely

Civil RICO[1] claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552 (2000); *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987).  The four-year period "starts running when the prospective plaintiff discovers (or should if diligent have discovered) both the injury that gives rise to his claim <u>and the injurer or . . . injurers</u>." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386 (7th Cir. 2010) (emphasis added).  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 149 (2d Cir. 2012) (citing *Hayden* with approval); *Rosenschein v. Meshel*, 688 Fed. Appx. 60, 63 (2d Cir. 2017) (holding that, "[o]nce a RICO claim accrues, the statute of limitations begins to run when a plaintiff has actual or inquiry notice of the claim").

There is no evidence that anyone affiliated with the Funds, other than the wrongdoers themselves, had actual or constructive notice of the injury and the identity of the injurers until 2009, when the federal indictments were unsealed.  Thus, the magistrate judge correctly concluded that the Funds timely filed their RICO claims in 2011.  (R&R at 13-18.)

As the magistrate judge correctly observed, Forde's state-court conviction in 2004 (which was vacated in 2005) "could not have put the Funds on notice of <u>Greaney's</u> conduct since Greaney was not charged in Forde's case and Greaney has pointed to no other evidence that would have made them suspect Greaney of labor racketeering." (R&R at 16, emphasis in original.)  Similarly, as the magistrate judge correctly stated, none of the newspaper articles, Review Officer reports, or other voluminous materials cited by Greaney have any bearing on whether the Funds knew or

---

[1] Unless otherwise noted, (a) capitalized terms and acronyms have the meanings ascribed to them by the R&R; (b) citations to "Doc. ___" refer to the ECF document number in the lead case, 11 CV 5474; (c) citations to "Funds Ex. __" refer to exhibits to the declaration of the Funds' counsel dated September 12, 2017 (Doc. 245); and (d) citations to "Greaney Ex. __" refer to exhibits to the declaration of the Greaneys' counsel dated December 11, 2017 (Doc. 249-2).

should have known that they had been injured by <u>Greaney</u>.  (R&R at 17-18; Obj. at 32-50.)  Prior to the August 2009 federal indictments, none of the Funds' current or former Trustees (other than those who are defendants in the instant civil RICO case) knew or had reason to know, or even to suspect, that Greaney had taken money from employers.  (Funds Ex. 4 at 38, 66-67, 70-77.) Greaney told no one (except other union officials with whom he shared the loot) that he had accepted illegal cash payments from employers.  (Funds Ex. 4 at 36-37, 66-67.)  Indeed, Greaney has admitted responsibility for "covering up the whole operation."  (Funds Ex. 10 at 740.)

Throughout his tenure as a Trustee of the Funds – which spanned 2003 through 2009 – Greaney failed to disclose to the Board of Trustees that he had received bribes from On Par, Turbo, Pitcohn, Pyramid, and other employers.  Throughout his tenure as a Trustee, Greaney was aware, but likewise failed to disclose to the Board of Trustees, that Forde had accepted bribes from employers.  Similarly, throughout his tenure as a Trustee, Greaney was aware, but did not report, that Maurice Leary, a member of the District Council's "Anti-Corruption Committee," was himself corrupt.  (Funds' Ex. 3 at 21; Funds Ex. 4 at 16, 23-27, 36, 68-69; Greaney Aff., ¶ 24(g).)

Greaney claims that he stopped taking illegal cash payments at the end of 2004, but he does not dispute that he continued to remain silent about his wrongdoing until 2009.  Greaney's continued silence, throughout his service as a Trustee, exacerbated the Funds' losses by enabling employers to continue to perform Covered Work without making contributions to the Funds. (Funds Ex. 3 at 21; Funds Ex. 4 at 16, 23-27, 36, 66-69; Funds Ex. 11 at NYCDCCBF-2079, - 2120 to - 2129; Funds Ex. 13 at 188; Funds Ex. 14 at 10; Greaney Ex. 17; Greaney Aff., ¶ 24(g).) According to the judgment of conviction, each of Greaney's 13 criminal offenses continued until 2009.  (Funds Ex. 8 at 1-2.)

Greaney cites this Court's ruling that, under New York law, "the defendant 'is not legally oblig[ated] to make a public confession, or to alert people who may have claims against it to get the benefit of the statute of limitations.'" *Certain Underwriters at Lloyd's v. Milberg LLP*, 2009 U.S. Dist. LEXIS 97284, at *9 (S.D.N.Y. Sept. 29, 2009) (quoting *Robare v. Fortune Brands, Inc.*, 39 A.D.3d 1045, 833 N.Y.S.2d 753, 755 (3d Dep't 2007) (quoting *Ponterio v. Kaye*, 25 A.D.3d 865, 808 N.Y.S.2d 439, 442 (3d Dep't 2006))).  But that rule of New York law has no application here.  As a Trustee of the Funds, Greaney had a fiduciary duty to tell the other members of the Board of Trustees what he knew.  *See, e.g., In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 478 (S.D.N.Y. 2005) (holding that a fiduciary has "an affirmative duty to inform when the [fiduciary] knows that silence might be harmful").  It was Greaney's failure to comply with that duty – not any lack of diligence on the part of the other Trustees – that prevented the Funds from learning that Forde and Greaney had inflicted the injuries at issue in the instant case.

In light of Greaney's failure to establish his statute-of-limitations defense, the magistrate judge was also correct in concluding that "Forde has failed in his burden to prove his statute of limitations defense." (R&R at 18 n.8.)  Greaney has asserted that he "moved on behalf of himself and Forde." (Obj. at 26.)  The magistrate judge found it "unclear why Greaney's counsel could move on behalf of Forde." (R&R at 11.)  In any event, Forde has made no argument (either through his own counsel, or through Greaney's counsel) that is separate from Greaney's arguments.  Thus, Forde has effectively conceded that any defense (such as the statute of limitations) that is unavailable to Greaney is likewise unavailable to Forde.

### B.    Forde and Greaney Are Civilly Liable for Violation of RICO

Forde and Greaney were convicted of violating RICO.  In the instant civil case, the magistrate judge correctly concluded that, based on those criminal convictions, "Forde and

Greaney are precluded from relitigating their liability." (R&R at 19.) Consequently, the magistrate judge correctly concluded that "plaintiffs are entitled to summary judgment against Forde and Greaney as to liability for violating RICO." (R&R at 23.) Forde and Greaney have not objected to that aspect of the R&R.

### C.   Forde and Greaney Are Civilly Liable for Violation of ERISA

ERISA imposes fiduciary duties of loyalty and prudence that are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). Section 404(a)(1) of ERISA provides in pertinent part that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A) for the exclusive purpose of:
>
> > (i)   providing benefits to participants and their beneficiaries; and
> >
> > (ii)  defraying reasonable expenses of administering the plan; [and]
>
> (B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104(a)(1)(A), (B). Thus, "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled." *Central States, S.E. and S.W. Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 571 (1985). "The duties of loyalty and prudence mandated in Section 404(a) of ERISA include the 'duty to take reasonable steps to realize on claims held in trust.'" *Harris v. Koenig*, 602 F. Supp. 2d 39, 54-55 (D.D.C. 2009) (quoting *Donovan v. Bryans*, 566 F. Supp. 1258, 1262 (E.D. Pa. 1983)). "When, as in this case, a plan has potential claims against a third party, the 'trustees have a duty to investigate the relevant facts, to explore alternative courses of action and, if in the best interests of the plan participants, to bring suit . . . .'" *Koenig*, 602 F. Supp. 2d at 55 (quoting *McMahon v. McDowell*, 794 F.2d 100, 112 (3d Cir. 1986)). *See also Liss v. Smith*, 991 F. Supp. 278, 290-91 (S.D.N.Y. 1998) (same).

Forde and Greaney have admitted that, in exchange for bribes, they actively helped employers evade their obligations to make contributions to the Funds.  (R&R at 4-6.)  Greaney has conceded that "[t]here is no question that [he] was convicted of committing crimes against the Plan itself which constituted not only illegal criminal acts but fiduciary breaches within the scope of ERISA Section 409, Part 4, the fiduciary provisions."  (Funds Ex. 25 at 2.)  Likewise, Forde has not disputed that he breached his fiduciary duties under ERISA.

Contrary to Greaney's argument (which he advances solely on his own behalf, and not on behalf of Forde, *see* Obj. at 61 & n.82), there is no genuine factual dispute that these fiduciary breaches were the proximate cause of the Funds' losses.  As the magistrate judge stated, Greaney "was paid so that contractors would not need to make contributions to the Funds. To suggest that contributions might not have been collected absent his conduct does not obviate or mitigate his admitted liability for corruption while he was a trustee.  (R&R at 33 n.11.)  The same is obviously true of Forde.  Accordingly, the magistrate judge correctly concluded that, "[b]ecause no genuine dispute of material fact exists concerning Forde or Greaney's liability for breach of fiduciary duties owed to the Funds under ERISA, the Funds should be granted summary judgment on their ERISA causes of action against Forde and Greaney."  (R&R at 27.)

Greaney also argues (again, solely on his own behalf) that "[t]he Funds never pled nor proven [sic] co-fiduciary liability under ERISA 405," and that any new claim under that statutory provision would now be time-barred.  (Obj. at 64, 66.)  That is a red herring.  The magistrate judge concluded that Forde and Greaney are liable for breach of their fiduciary duties under sections 404 and 409 of ERISA, 29 U.S.C. §§ 1104 and 1109.  (R&R at 23-27.)  The magistrate judge expressly disclaimed reliance on section 405 of ERISA, 29 U.S.C. § 1105.  (R&R at 23 n.9.)  It is undisputed that the Funds' claims under sections 404 and 409 are timely.  For the reasons stated above (and

in the R&R itself), this Court should adopt the magistrate judge's conclusion that Forde and Greaney are jointly and severally liable under sections 404 and 409.  At this juncture, there is no need to address whether they are also liable under section 405.

### D.        The Funds Suffered Damages of At Least $4,973,259.92

In the criminal proceedings, the Government requested that the Court order Forde and Greaney to make restitution to the Funds, jointly and severally, in the amount of $4,973,259.92. In those proceedings, Forde and Greaney did not dispute that their criminal acts and omissions caused losses to the Funds in the amount of $4,973,259.92.   Judge Marrero granted the Government's request in its entirety.  Therefore, in the instant civil case, the magistrate judge was correct to conclude that, based on principles of issue preclusion, the Funds are entitled to partial summary judgment against Forde and Greaney for compensatory damages in the amount of $4,973,259.92.  (R&R at 28-33.)

### E.        The Funds Are Entitled to Seek Additional Damages At Trial

The restitution orders establish a floor, not a ceiling, on the compensatory damages to which the Funds are entitled in this civil case.  As the magistrate judge correctly concluded, the Funds are entitled to seek additional damages at trial.  (R&R at 33-39.)  Forde and Greaney have now withdrawn their argument that the restitution orders establish the maximum amount that the Funds can recover.  (Obj. at 50.)  At the same time, however, Forde and Greaney have raised various evidentiary arguments that, if adopted, could prevent the Funds from proving their entitlement to additional damages.  (Obj. at 56-58.)  Those evidentiary arguments not only are meritless, but also are premature, and should be denied without prejudice to renewal in the context of a motion *in limine*.

### F.        The Settlement With On Par Does Not Bar the Funds' Claims

The magistrate judge properly rejected the argument that, by settling with On Par, the Funds somehow waived the right to recover damages from Forde and Greaney for damages stemming from their corrupt dealings with On Par.  (R&R at 39-43.)  The Funds' forensic auditor found that On Par failed to make contributions to the Funds in the principal amount of $9,141,758.  (Funds Ex. 11 at NYCDCCBF-2124, -2129.)  The Funds later settled with On Par and its owner for $4,292,287.  (Funds Ex. 12, 20.)  Under the settlement agreement, the Funds released any further claims against "On Par Contracting Corp. and James Murray, for himself and his wife, Tracy Murray, their heirs, executors, administrators, successors and assigns." (Funds Ex. 20, ¶ 3.)  The settlement agreement does *not* contain a release of any claims that the Funds may have had against Forde, Greaney, or any other member of the Board of Trustees.  (Funds Ex. 20.)

Forde and Greaney argue that a "focus on releases is inapposite when the entire underlying contractual claim is resolved."  (Obj. at 54.)  That argument is misplaced because, among other things, the Funds are not suing Forde and Greaney for breach of contract.  The Funds are suing Forde and Greaney for violations of RICO and ERISA, which are entirely separate causes of action.

Forde and Greaney emphasize that the settlement agreement contains a "merger clause." Pursuant to that provision, the settlement agreement "constitutes the entire and complete understanding <u>between the parties</u> and supersedes any prior agreement, whether oral or written, <u>between the parties</u>." (Funds Ex. 20, ¶ 6, emphasis added.)  The parties to the settlement agreement were the Funds, On Par, and Murray.  (Funds Ex. 20.)  Forde and Greaney, in their individual capacities, were not parties to the settlement agreement.  (*Id.*)  Therefore, the merger clause plainly does not bar any claims against Forde and Greaney.

Moreover, although the Funds were parties to the settlement agreement, the Union was not. Therefore, the CBA between the Union and On Par did not constitute an agreement "between the parties" to the settlement agreement.   Thus, contrary to Forde and Greaney's argument, the settlement agreement did not supersede the CBA.

As Forde and Greaney note, an attorney who represented the Funds in 2009 asserted that the settlement enabled the Funds to recover "the total principle [sic] amount of fringe benefits owed to the Funds on behalf of every *identifiable carpenter (based on our AS400 system)* that was paid off the books by On Par."  (Greaney Ex. 32 at 2) (emphasis added).   The AS400 system contained data regarding contributions for union members.  (Greaney Ex. 24 at 27.)  But, contrary to Forde and Greaney's implication, that attorney did *not* indicate that the settlement was sufficient to cover unpaid contributions for On Par's *nonunion* carpenters.  (Obj. at 56; Greaney Ex. 32.) Along the same lines, Forde and Greaney misleadingly quote the testimony of a former official of the Funds regarding the reasons for the settlement amount.  (Obj. at 56.)  Forde and Greaney distort the meaning of that former official's testimony by omitting three key words – "and Union members" – without adding the requisite ellipsis.  (Obj. at 56; Greaney Ex. 66 at 164.)

Similarly, although the attorney who represented the Funds in 2009 stated that the government had "indicated its approval of the settlement agreement," this does not mean that the government expressed an opinion on whether the settlement amount was sufficient to make the Funds whole.  (Greaney Ex. 32.)  The attorney explained that the government had seized Murray's assets and that, without the government's cooperation, Murray would have been unable to make the settlement payment that the Funds had agreed to accept.  (*Id.*)  In this context, a reasonable finder of fact could determine that counsel's statement that the government had "indicated its approval of the settlement agreement" simply means that, to accommodate the Funds, the

-10-

government had agreed to release to the Funds a portion of the assets that it had seized from Murray.  (*Id.*)

### G.      The Funds Are Entitled To Treble Damages Under RICO and Single Damages Under ERISA, But Do Not Seek Quadruple Damages

The magistrate judge correctly concluded that the Funds are entitled to damages under both RICO and ERISA, because Forde and Greaney violated both statutes.  (R&R at 56.)  RICO (unlike ERISA) provides for treble damages.  *See* 18 U.S.C. § 1964(c).  The magistrate judge correctly concluded that, in computing damages under RICO, the compensatory damages suffered by the Funds should be trebled before deducting any restitution payments made by Forde and Greaney, and before deducting any amounts that the Funds have recovered from other sources.  (R&R at 43-47.)  Forde and Greaney have withdrawn their meritless argument "that the Court has discretion in awarding treble damages."  (Obj. at 53.)

The Funds are not seeking quadruple damages.  However, the magistrate judge is correct that, regardless of the disposition of the Funds' RICO claims, it is also necessary to address the Funds' ERISA claims because, as discussed below, a judgment for breach of fiduciary duty under ERISA (unlike a judgment for violation of the civil provisions of RICO) is one of the statutorily authorized predicates for an offset of benefits.  *See* 29 U.S.C. § 1056(d)(4).

### H.      The Request To Delay Judgment Enforcement Is Premature

The Court has not entered final judgment in this case, nor has the magistrate judge recommended that the Court do so at this time.  In general, an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties."  Fed R. Civ. P. 54(b).  The magistrate judge has recommended that the Funds' motion for summary judgment be granted in part and denied in part, and that the Greaneys' motion for summary judgment be denied in its entirety.  Moreover, although the

magistrate judge stated that Forde and Greaney are the only remaining defendants, Greaney is correct that one of the Funds' other former Trustees, Joseph Olivieri, has neither defaulted nor settled. (R&R at 1; Obj. at 69.) The Funds' claims against Olivieri under RICO and ERISA remain pending. In the absence of a final judgment under Rule 54(b), the magistrate judge is correct that any request to delay enforcement of such a judgment is premature. (R&R at 47 n.16.)

### I.   Under ERISA, Forde and Greaney's Benefits Should Be Offset and Applied Toward Their Liability For Breach of Fiduciary Duties

It is undisputed that both Forde and Greaney would be entitled to benefits from the Pension Fund and the Annuity Fund were it not for the losses that the Pension Fund and Annuity Fund suffered as a result of the fraudulent conduct at issue in this litigation. In addition, regardless of the outcome of this litigation, both Forde and Greaney will receive substantial benefits under other pension plans that are not at issue in this litigation.

As the magistrate judge recognized, the Pension Fund and Annuity Fund are entitled to offset Forde and Greaneys' benefits under those two plans against any judgment in this case for breach of fiduciary duty. In the body of the R&R, the magistrate judge's discussion of this issue expressly applies to both Forde and Greaney. (R&R at 49-53.) In the relevant portion of the summary of his rulings, however, the magistrate judge states only that "[t]he Funds should be granted partial summary judgment on their ability to offset any damages against <u>Greaney's</u> pension and annuity payments." (R&R at 56, emphasis added.) The magistrate judge appears to have unintentionally omitted Forde from that statement. It is apparently undisputed that that omission was unintentional. Indeed, at page 3 of his objections to the R&R, Forde states that the magistrate judge's "rulings and conclusions . . . *did* apply, and should apply, to Forde as well as Greaney." (Emphasis in original.) Accordingly, the Funds respectfully request that, in any order adopting

the R&R, the Court clarify that the Pension Fund and Annuity Fund are entitled to offset the pension and annuity benefits of both Forde and Greaney.

Prior to 1997, although there was a division of authority, several courts held that "[C]ongress did not intend to allow an individual . . . to collect pension benefits prior to satisfying his liabilities to the fund." *Coar v. Kazimir*, 990 F.2d 1413, 1423 (3d Cir. 1993). "Indeed, a contrary reading [of ERISA] would permit dishonest trustees . . . who . . . breached their fiduciary duties to the pension plan to evade their obligations to the fund and would result in [p]lan members and their families [having] to watch their pension monies disappear once again into the [dishonest trustees'] pockets." *Id.* "[I]t defies common sense to allow a breaching fiduciary to collect from the very fund he fraudulently depleted." *Friedlander v. Doherty*, 851 F. Supp. 515, 522 (N.D.N.Y. 1994). *See also Parker v. Bain*, 68 F.3d 1131, 1140-41 (9th Cir. 1995) (holding that fiduciary's interest in plan, as a participant, was extinguished when he embezzled plan assets exceeding the value of his benefit).

The courts have reached the same conclusion after the 1997 amendment of ERISA's anti-alienation provision. For example, in *Katzenberg v. Lazzari*, 2010 WL 680985, *6 (E.D.N.Y. Feb. 24, 2010), *aff'd*, 406 Fed. Appx. 559 (2d Cir. 2011), the court held that the plaintiff, a plan participant and fiduciary, had breached his fiduciary duties to the plan under ERISA, and that "the appropriate remedy . . . is for plaintiff . . . to forfeit his pension and be deprived of any pension benefits." *Id.* at *6. In an effort to explain away the *Katzenberg* case, Greaney wildly speculates, without investigation, that perhaps "counsel simply failed to raise the issue" of ERISA's anti-alienation provision. (Obj. at 9.) Greaney's hypothesis is false. A review of the record of the *Katzenberg* case on the PACER website of the United States District Court for the Eastern District of New York reveals that counsel for the participant/fiduciary, Katzenberg, expressly argued that

the relief sought against him was "barred by the anti-alienation provision of ERISA."  Plaintiff

Harvey Katzenberg's Post-Trial Reply Submission, Doc. 136, page 6 of 9, *Katzenberg v. Lazzari*,

No. 04-cv-5100 (E.D.N.Y. Dec. 29, 2009).

Section 206(d)(4)(A) of ERISA authorizes "any offset of a participant's benefits provided

under an employee pension benefit plan against an amount that the participant is ordered or

required to pay to the plan if . . . the order or requirement to pay arises . . .  under a judgment of

conviction for a crime involving such plan, under a civil judgment . . . [for] violation . . . of

[fiduciary duties] . . . or . . . pursuant to a settlement agreement . . . ."  29 U.S.C. § 1056(d)(4)(A).

Under this provision, the Pension Fund and Annuity Fund are entitled to enforce a judgment for

breach of fiduciary duty by offsetting any benefits to which Forde and Greaney may be entitled.

Forde and Greaney have argued that the word "or" is the most important part of the

foregoing statutory provision.  Forde and Greaney argue that, because Congress authorized an

offset stemming from "a judgment of conviction, . . . a civil judgment, . . . or a settlement

agreement," Congress cannot have intended to authorize an offset where the victimized plan is the

beneficiary of *both* a judgment of conviction *and* a civil judgment.

The magistrate judge correctly rejected that argument, which he aptly characterized as a

"strained and unnatural reading of the statute."  (R&R at 52.)  "In the construction of statutes, it is

the duty of the court to ascertain the clear intention of the legislature."  *United States v. Fisk*, 70

U.S. 445, 447 (1866).  "In order to do this, courts are often compelled to construe "*or*" as meaning

"*and*," and vice versa.  *Id.*  Thus, "[t]he word 'or' . . . is often interpreted to mean the conjunctive

if this is more consistent with the legal intent."  *Balko v. Ukrainian National Federal Credit Union*,

2014 U.S. Dist. LEXIS 42427, *107 (S.D.N.Y. Mar. 28, 2014) (quoting 1A *Sutherland Statutory*

*Construction* § 21:14 (7th ed. 2013)).  *See also De Sylva v. Ballentine,* 351 U.S. 570 (1956)

-14-

(construing "or" to mean "and"); *United States v. Moore*, 613 F.2d 1029, 1040 & nn.85-86 (D.C. Cir. 1979) (collecting cases); *United States v. Zahavi*, 2012 WL 5288743, at *4 (S.D.N.Y. Oct. 26, 2012); Local Civ. R. 26.3(d)(2).  "Both 'and' and 'or' are context-dependent, and each word 'is itself semantically ambiguous, and can be used in two quite different senses.'"  Larry M. Eig, *Statutory Interpretation and Recent Trends*, at 9 n.49 (Cong. Research Serv. 2014) (available at https://fas.org/sgp/crs/misc/97-589.pdf) (last visited June 28, 2018) (quoting Lawrence E. Filson, *The Legislative Drafter's Desk Reference*, § 21.10 (1992)).

Forde and Greaney seek to use Judge Marrero's criminal restitution orders as shields against the Funds' offset rights under ERISA.  Forde and Greaney argue that there are differences between the statutes involved in the cases cited by the magistrate judge and the ERISA provision at issue in the instant case.  However, any such differences do not undermine the main point that the word "or" often means "and," or "and/or."  The Court should adopt the magistrate judge's recommended conclusion that, to effectuate Congress's intention to protect pension and annuity benefit plans from wrongdoing by their trustees, section 206(d)(4)(A) of ERISA should be interpreted to apply to judgments resulting from criminal and/or civil proceedings, rather than just one or the other.

**J.      Imelda Greaney Is Not Entitled To Summary Judgment**

In 2012, after he was released from prison, John Greaney married Imelda Greaney. (Greaney Ex. 48 & Ex. B thereto.)  In the proceedings before the magistrate judge, Imelda Greaney argued that she is entitled to spousal benefits from both the Pension Fund and the Annuity Fund. (Doc. 249 at 120-21; Doc. 265 at 9-12.)  The Funds argued that she is entitled to no benefits.  (Doc. 242 at 17 n.3; Doc. 258 at 17-18.)  The magistrate judge concluded that neither side is entitled to summary judgment on this issue.  (R&R at 54-56.)

The Greaneys' objections to the R&R are internally inconsistent.  They argue at length that Imelda Greaney is entitled to spousal benefits as a matter of law.  (Obj. at 11-24.)  But they also state that they <u>do not</u> object to paragraph 6 of the summary of the magistrate judge's rulings, which states that "[b]oth sides must be denied summary judgment on the question of whether Imelda Greaney is entitled to benefits from the Fund."  (R&R at 56; Obj. at 69.)

The Greaneys argue that the magistrate judge improperly considered arguments pertaining to spousal benefits that the Funds advanced for the first time "in their reply brief."  (Obj. at 23.)  That assertion is misleading.  As detailed by the magistrate judge, each side filed two sets of summary judgment papers.  (R&R at 2 n.1)  First, in September 2017, the Funds filed their notice of motion, opening brief, and related materials.  Second, in December 2017, the Greaneys filed their cross-motion and an opening brief and related materials that both supported their cross-motion and responded to the Funds' motion.  Third, in January 2018, the Funds filed a brief and related materials that served as both a response to the Greaneys' motion and a reply in further support of the Funds' motion.  Fourth, in February 2018, the Greaneys filed their reply brief and related papers in further support of their motion.  The parties requested this procedure, and the magistrate judge approved it, because it streamlined the process by enabling the parties to file only two sets of papers each, rather than the three sets each that would otherwise be generated by two separate motions.

The arguments that the Greaneys are urging the Court to disregard were set forth in the Funds' January 2018 brief, which was the first and only brief filed by the Funds in connection with the Greaneys' cross-motion.  In their February 2018 reply brief, the Greaneys had a full and fair opportunity to respond – and did respond – to the arguments that the Funds had advanced in their

January 2018 brief.  Accordingly, contrary to the Greaneys' assertion, there is no valid reason for the Court to disregard the arguments set forth in the Funds' January 2018 brief.

There is, however, a valid reason for the Court to disregard evidence belatedly submitted by the Greaneys in June 2018.  Attached to the Greaneys' objections to the R&R are two documents signed by John Greaney – his pension application dated September 2, 2014 (Doc. 270-1), and his letter to the Annuity Fund dated June 5, 2018 (Doc. 270-2) – that the Greaneys had not submitted to the magistrate judge.  "'[C]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation' absent a compelling justification for failure to present such evidence to the magistrate judge."  *Azkour v. Little Rest Twelve, Inc.*, 2012 U.S. Dist. LEXIS 42210, at *12, 2012 WL 1026730 (S.D.N.Y. Mar. 27, 2012) (citation omitted).  There is no reason to depart from that general rule in this instance.

The Greaneys assert that the pension application "was inadvertently omitted from the Record."  (Obj. at 12.)  That is hardly a "compelling justification."  Furthermore, that supposedly "inadvertent" omission enabled the Greaneys to avoid calling unfavorable information to the magistrate judge's attention.  The pension application reveals that, as recently as September 2014, John Greaney provided materially false information to the Pension Fund.  At that time, as noted above, John and Imelda Greaney were already married.  The application instructions stated in unmistakable terms: "If married, please submit a copy of your marriage certificate and your spouse's proof of birth."  (Doc. 270-1.)  John Greaney did not submit these materials.  He also left blank the four spaces in which he was required to state his spouse's name, spouse's social security number, date of marriage, and spouse's date of birth.  (Doc. 270-1.)  John Greaney later denied that his purpose in failing to disclose his marriage to Imelda Greaney was to avoid the actuarial reduction in his monthly benefit that would be associated with a qualified joint-and-survivor

annuity.  He testified that he completed the form without the advice of counsel, and that he thought it sufficient to declare himself "widowed" because his previous wife had died.  (Funds Ex. 4 at 78-80.)

Now is not the appropriate time for the Greaneys to introduce the pension application into the summary judgment record merely because they now perceive that the advantages of doing so have come to outweigh the disadvantages.  Similarly, now is not the time to create new documents to supplement the summary judgment record, such as the letter that Greaney wrote four days <u>after</u> the magistrate judge issued the R&R.  (Doc. 270-2.)  The Greaneys falsely state that the magistrate judge "invite[d] further evidentiary showings" regarding the parties' summary judgment motions. (Obj. at 12.)  The magistrate judge merely stated that, "because neither side has presented the evidence on which the determination of the election period can be made, both sides must be denied summary judgment" regarding the issue of spousal benefits.  (R&R at 56.)  The next step should be a trial, not presentation of a new round of summary judgment evidence.

Even considering the new evidence proffered by the Greaneys, the finder of fact could reasonably determine that John Greaney, with Imelda Greaney's written consent, waived any form of benefit from the Annuity Fund under which an annuity could be paid to Imelda Greaney, and that this waiver became irrevocable before John Greaney attempted to revoke it.  In April 2015, John Greaney executed an application for a lump-sum distribution from the Annuity Fund, which he requested be rolled over to an individual retirement account.  (Greaney Ex. 49.)  At that time, John Greaney waived any joint-and-survivor annuity, and Imelda Greaney consented in writing to that waiver.  (*Id.*)  In May 2015, the Greaneys' counsel submitted those materials to the Pension Fund.  (*Id.*)  John Greaney was entitled to revoke that waiver within the 180-day period ending on the "annuity starting date."  29 U.S.C. § 1055(c)(1)(A)(i), (2)(A)(i).  ERISA defines the term

"annuity starting date" as "(i) the first day of the first period for which an amount is payable as an annuity, or (ii) in the case of a benefit not payable in the form of an annuity, the first day on which all events have occurred which entitle the participant to such benefit." 29 U.S.C. § 1055(h)(2)(A). John Greaney did not purport to revoke the waiver at any time prior to June 5, 2018.  (Doc. 270-2.)  Thus, if the "annuity starting date" was before June 5, 2018, then the revocation of the waiver was untimely and invalid.

The finder of fact could reasonably determine that the "annuity starting date" was long before June 5, 2018.  John Greaney applied for annuity benefits in May 2015, and it is undisputed that, but for his fiduciary breaches, he would have been entitled to benefits at that time.  Congress defined the term "annuity starting date" by reference to when "an amount is payable as an annuity" or when "all events have occurred which entitle the participant to [a] benefit" in another form.  29 U.S.C. § 1055(h)(2)(A).  Congress did not define the term "annuity starting date" by reference to the date upon which a benefit is actually paid.  Contrary to the Greaneys' assertion, Congress's definition is binding.  Under that definition, the finder of fact could reasonably determine that, by the time John Greaney purported to revoke the waiver – and, indeed, by the time Imelda Greaney purported to revoke her consent to the waiver – the "annuity starting date" was already in the past.

In any event, even if there had been a valid revocation of the waiver, there would still be absolutely no merit to the argument that Imelda Greaney would be entitled to 50% of John Greaney's account balance.  (Obj. at 23.)  At the most, in accordance with section 206(d)(4)(C)(iii) of ERISA, 29 U.S.C. § 1056(d)(4)(C)(iii), Imelda Greaney would be entitled to a "survivor annuity under a qualified joint and survivor annuity," which is a very different concept.

-19-

## **CONCLUSION**

For the reasons set forth above, all objections to the R&R should be overruled.

Dated: New York, New York                Respectfully submitted,
      June 29, 2018

                                       VIRGINIA & AMBINDER, LLP

                   By:    /s/ *Marc A. Tenenbaum*
                           Marc A. Tenenbaum, Esq.
                           40 Broad Street, 7th Floor
                           New York, New York 10004
                           (212) 943-9080

                           *Attorneys for the Funds*